# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

ZACHARY GRIFFIN,

    Plaintiff,

v.

MOTORSPORT GAMES INC.,

    Defendant.

Case No.

**JURY TRIAL DEMANDED**

## COMPLAINT

Plaintiff Zachary Griffin, by and through his attorneys, for his Complaint against Defendant Motorsport Games Inc., alleges, on knowledge as to his own actions, and otherwise on information and belief, as follows:

## PARTIES

1. Plaintiff Zachary Griffin ("Griffin") is an individual who resides in Australia. Griffin is a citizen of Australia.

2. Defendant Motorsport Games Inc. ("MSG") is a corporation that is incorporated in Delaware and has its principal place of business in Miami, Florida.

## JURISDICTION

3. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(2), in that this is a civil action between a citizen of a State and a citizen or subject of a foreign state, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

## VENUE

4. Venue is proper in this district under 28 U.S.C. § 1391(b)(2) since a substantial part of the events or omissions giving rise to the claim occurred in this district.

1

# FACTS

5. MSG is a racing videogames developer, publisher, and e-sports ecosystem provider of official motorsport racing series throughout the world.

6. In March 2021, MSG hired Griffin in order to form a new studio based in Australia.

7. On or about August 18, 2021, MSG's CEO Dmitry Kozko ("Mr. Kozko") requested Griffin's relocation from Australia to MSG's office in Miami, Florida.

8. On or around September 8, 2021, Mr. Kozko and Griffin orally agreed to the terms of Griffin's relocation to MSG's Miami office (the "Relocation Agreement").

9. Pursuant to the Relocation Agreement terms, Griffin was to be promoted to Director of Technology, with a base salary of $240,000 per year, plus an annual bonus of $70,000.

10. MSG also promised to sponsor the visas for Griffin and his wife provided they use the services of MSG's immigration attorney, Mark Katsman ("Mr. Katsman").

11. On or around September 10, 2021, MSG's General Counsel, Amanda LeCheminant ("Ms. LeCheminant"), expressed her concerns about using Mr. Katsman for Griffin's immigration needs based on her previous experiences.

12. Following Ms. LeCheminant's concerns, Griffin asked Mr. Kozko to utilize another immigration attorney. Mr. Kozko, however, dismissed Ms. LeCheminant's concerns, expressing that Ms. LeCheminant "shouldn't comment" because she was "not an immigration attorney" and Mr. Katsman "had done many visas" for Mr. Kozko.

13. On or about September 13, 2021, Mr. Katsman advised Griffin that he could qualify for either an E-3 visa or an L-1 visa.[1] However, Mr. Katsman stated that being granted an E-3 visa

---

[1] An E-3 visa is offered to Australian nationals coming to the U.S. to perform services in a specialty occupation. An L-1 visa enables a U.S. employer to transfer an executive or manager (L-1A) or a professional employee with specialized knowledge (L-1B) from a foreign office to the U.S.

would preclude Griffin from being granted an L-1 visa and that MSG could only file an L-1 visa petition for him after March 2022.

14. On or about October 1, 2021, MSG Vice-President Jack Griffin communicated that Griffin had been promoted to Director of Technology.

15. On or around April 20, 2022, MSG applied for a 15-month corporate lease with The Bozzuto Group for an apartment in Miami for Griffin and his wife.

16. On or around April 27, 2022, The Bozzuto Group denied MSG's lease application, following a report of a high probability of MSG's "imminent business failure."

17. On or about May 6, 2022, Mr. Kozko requested that Griffin agree to a reduced bonus of $48,000 rather than the previously agreed $70,000, considering MSG's financial position. As an incentive to accept the reduced bonus, it was split into two payments, with the first payable in June.

18. On or about June 8, 2022, during a video call with Griffin, Mr. Katsman stated he did not know that the income year for tax purposes in Australia (July 1 to June 30) and the United States (January 1 to December 31) were different.

19. Mr. Katsman told Griffin that he could not submit Griffin's FY20/21 tax return with his L-1 visa petition as it did not demonstrate 12 months of employment with MSG, and therefore the L-1 visa petition could only be filed once Mr. Katsman had Griffin's FY21/22 tax return.

20. Mr. Katsman represented to Griffin that there were no alternative methods available to demonstrate Griffin's 12 months of employment with MSG and that Griffin had no other choice than to wait to file the L-1 visa petition until he had his FY21/22 tax return.

21. Griffin informed Mr. Katsman that, depending on his accountant's availability, the earliest he could prepare his FY21/22 tax return would be following the end of the fiscal year on July 1, 2022, and it generally took three weeks for it to be processed by the Australian government.

22. Mr. Katsman never followed up, inquired, or otherwise communicated with Griffin in relation to his visa petition after June 8, 2022.

23. As a result of Mr. Katsman's mishandling of his visa petition, Griffin was not able to relocate to Miami. Consequently, Griffin sustained and continues to sustain significant damages, including but not limited to moving expenses; travel expenses; lodging expenses; utility expenses; insurance expenses; and paying an income tax rate of 45% in Australia, as opposed to an income tax rate of around 21% in Florida.

24. On or about October 12, 2022, Griffin informed Mr. Kozko of the losses that he had suffered because of MSG's failure to complete Griffin's transfer to Miami. Mr. Kozko asked Griffin to share the calculation of Griffin's losses with him.

25. On or around October 18, 2022, Griffin shared a spreadsheet with Mr. Kozko which detailed his losses.

26. On or about October 19, 2022, Griffin met with a second immigration attorney, who confirmed Mr. Katsman was mistaken as to the requirement of Griffin's FY21/22 tax return for his L-1 visa petition and offered an alternative pathway via the E-3 visa.

27. On or about October 21, 2022, Griffin and Mr. Kozko met to review the spreadsheet with Griffin's losses up to that point. At the end of the meeting, Mr. Kozko agreed that MSG would compensate Griffin for his loss, stating: "Submit these as expenses and the remainder I'll give you as a bonus for getting *NASCAR Heat 5* out." Mr. Kozko also agreed MSG would pay for the new immigration firm, Cammisa Markel PLLC, to prepare visa applications for Griffin and his wife.

28. On or about November 3, 2022, Griffin was asked if he was aware of anything that would have a material effect on MSG's financial condition, cash flows, or results of operations that

would be of importance to MSG stockholders, to which Griffin responded it was highly likely that the release of *INDYCAR 23* would be pushed to at least September 2023.

29. Mr. Kozko reprimanded Griffin after being asked to meet with MSG's finance team due to Griffin's disclosure, stating: "You shouldn't say things like that to finance."

30. On or about November 7, 2022, Mr. Kozko warned that MSG did not have enough cash to last to the end of the year.

31. On or around November 28, 2022, Griffin advised Mr. Kozko that because of salary delays and $438,000 in unpaid invoices, development across most MSG products was blocked.

32. On or around December 7, 2022, Griffin advised Mr. Kozko that the accountant for MSG in Australia had suspended all services due to unpaid invoices.

33. On or around December 8, 2022, Griffin advised Mr. Kozko that MSG was at risk of trading insolvent in Australia due to its mounting debts. On or around December 13, 2022, Mr. Kozko expressed to Griffin that this email had "caused some issues."

34. On or around December 16, 2022, Amber Studio, an external developer responsible for the 2022 Season Update to *NASCAR Heat 5*, notified MSG it had ceased all work until $191,000 in unpaid invoices had been paid, which prevented Griffin from receiving the bonus for its release.

35. On or about December 28, 2022, Griffin asked Mr. Kozko for a timeframe to receive the remaining compensation for his losses, as the *NASCAR Heat 5* update was outside his control. Mr. Kozko told Griffin he would "take a look at it again" and would give Griffin a response on the timeframe for payment.

36. On or around January 11, 2023, Mr. Kozko reneged on his prior agreement for MSG to pay for Griffin's losses due to MSG's failure to complete Griffin's relocation. Mr. Kozko stated,

"there's no way the company's going to have a half-million-dollar cost on you," referring to the estimated amount of Griffin's losses.

37. On or about January 14, 2023, Mr. Kozko proposed three bonuses totaling $250,000 to settle Griffin's losses, with a fourth bonus to be discussed later.

38. On or around February 27, 2023, Griffin received an email from MSG's Director of Human Resources, Dara M. Acker ("Ms. Acker"),[2] which offered "an increase to [Griffin's] overall compensation in order to help . . . with personal financial concerns," which not only distorted the circumstances leading to this offer, but also contradicted Mr. Kozko's offer of January 14, 2023.

39. While Griffin made multiple attempts to finalize in good faith the conditions of the newly proposed bonuses, negotiations stalled following Ms. Acker's email.

40. On or around April 14, 2023, Mr. Kozko was terminated as CEO of MSG.

## **COUNT I – BREACH OF CONTRACT**

41. Griffin incorporates and realleges paragraphs 1 to 40 as if fully set forth herein.

42. On or around September 8, 2021, Griffin and MSG entered into a valid, enforceable, and binding contract.

43. Pursuant to this contract, MSG requested and Griffin agreed to relocate from MSG's studio in Australia to MSG's office in Miami, Florida.

44. MSG has materially and substantially breached this contract. Specifically, MSG has failed to relocate Griffin from Australia to its office in Miami.

45. As a result of MSG's breach, Griffin has suffered general damages.

46. Griffin's damages flow directly from and are the natural and probable consequences of MSG's breach.

---

[2] Also known as Dara M. Malavolta.

47. As a result of MSG's breach, Griffin also has suffered consequential and incidental damages. Griffin's consequential and incidental damages include but are not necessarily limited to moving expenses; travel expenses; lodging expenses; utility expenses; insurance expenses; and paying an income tax rate of 45% in Australia, as opposed to a rate of around 21% in Florida.

48. Griffin's consequential or incidental damages were both foreseeable and within the contemplation of the parties before or at the time the contract was made.

WHEREFORE, Plaintiff Zachary Griffin demands judgment against Defendant Motorsport Games Inc. for damages, in an amount to be determined at trial, costs, interest, and all other relief that the Court deems just and proper.

## **COUNT II – BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING**

49. Griffin incorporates and realleges paragraphs 1 to 40 as if fully set forth herein.

50. On or around September 8, 2021, Griffin and MSG entered into a valid, enforceable, and binding contract.

51. Pursuant to this contract, MSG requested and Griffin agreed to relocate from MSG's studio in Australia to MSG's office in Miami, Florida.

52. MSG breached an express term of this contract by failing to relocate Griffin from Australia to its office in Miami.

53. MSG has breached its covenant of good faith and fair dealing by preventing Griffin from performing under the contract; unreasonably and knowingly delaying performance under the contract; and exercising the discretion afforded to it under the contract in an arbitrary or irrational manner contravening the parties' contractual expectations.

54. Specifically, MSG required Griffin to use the services of its immigration attorney, Mr. Katsman, to obtain a work visa to the U.S. However, as a result of Mr. Katsman's mishandling of his visa petition, Griffin was prevented from relocating to Miami.

55. As a result of MSG's breach, Griffin has suffered general damages.

56. Griffin's damages flow directly from and are the natural and probable consequences of MSG's breach.

57. As a result of MSG's breach, Griffin also has suffered consequential and incidental damages. Griffin's consequential and incidental damages include but are not necessarily limited to moving expenses; travel expenses; lodging expenses; utility expenses; insurance expenses; and paying an income tax rate of 45% in Australia, as opposed to a rate of around 21% in Florida.

58. Griffin's consequential or incidental damages were both foreseeable and within the contemplation of the parties before or at the time the contract was made.

WHEREFORE, Plaintiff Zachary Griffin demands judgment against Defendant Motorsport Games Inc. for damages, in an amount to be determined at trial, costs, interest, and all other relief that the Court deems just and proper.

## COUNT III – PROMISSORY ESTOPPEL

59. Griffin incorporates and realleges paragraphs 1 to 40 as if fully set forth herein.

60. From September 8, 2021, to January 14, 2023, MSG made several unambiguous, definite, and substantial written and oral promises to Griffin, as detailed above.

61. At all relevant times, MSG was in a position to fully perform, fulfill, and carry out the terms and conditions of the promises it made to Griffin.

62. It was foreseeable that MSG's promises to Griffin would cause or induce him to act in reasonable reliance on MSG's promises.

63. In reliance on MSG's promises, Griffin incurred numerous expenses in relation to his requested relocation from Australia to Miami, Florida.

64. Injustice can be avoided only by enforcement of MSG's promises.

WHEREFORE, Plaintiff Zachary Griffin demands judgment against Defendant Motorsport Games Inc. for damages, in an amount to be determined at trial, costs, interest, and all other relief that the Court deems just and proper.

## COUNT IV – BREACH OF FIDUCIARY DUTY

65. Griffin incorporates and realleges paragraphs 1 to 40 as if fully set forth herein.

66. At all relevant times, MSG had a fiduciary relationship with Griffin as Griffin placed his confidence in and relied upon MSG to complete his relocation from Australia to Miami.

67. MSG owed Griffin the fiduciary duties of care, good faith and fair dealing, and full and fair disclosure of all material facts.

68. MSG breached these duties by requiring Griffin to use its immigration attorney, Mr. Katsman, whose mishandling of Griffin's visa petition resulted in MSG's failure to relocate Griffin from Australia to Miami. Furthermore, Mr. Kozko also failed to disclose his longstanding personal relationship with Mr. Katsman at the time Griffin was required to use Mr. Katsman's services.

69. As a direct and proximate result of MSG's breach of these duties owed to Griffin, Griffin has suffered damages.

WHEREFORE, Plaintiff Zachary Griffin demands judgment against Defendant Motorsport Games Inc. for damages, in an amount to be determined at trial, costs, interest, and all other relief that the Court deems just and proper.

## JURY TRIAL DEMANDED

Plaintiff Zachary Griffin demands trial by jury of all issues so triable.

Dated: May 20, 2024

Respectfully submitted,

By: */s/Eduardo A. Maura*
Eduardo A. Maura, Esq.
Florida Bar No. 91303
eduardo@ayalalawpa.com
Luis F. Quesada Machado, Esq.
Florida Bar No. 1010305
lquesada@ayalalawpa.com
Ryan M. Sawal, Esq.
Florida Bar No. 1038500
rsawal@ayalalawpa.com
**Ayala Law, P.A.**
2490 Coral Way, Ste 401
Miami, FL 33145
P: (305) 570-2208
F: (305) 503-7206
*Counsel for Plaintiff Zachary Griffin*