UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Case No.: 1:24-cv-21929-Bloom

ZACHARY GRIFFIN,

    *Plaintiff*,

  v.

MOTORSPORT GAMES INC.,

    *Defendant*.

_____/

### REPLY IN SUPPORT OF MOTION TO DISMISS

 

**AXS LAW GROUP, PLLC**
2121 NW 2nd Avenue,
Suite 201
Miami, FL 33127
Tel:  305.297.1878

By:  */s/ Jeffrey W. Gutchess*
Jeffrey W. Gutchess
jeff@axslawgroup.com
eservice@axslawgroup.com

A comprehensive written Employment Agreement identifies Plaintiff Zachary Griffin's employer, establishes the amount of his compensation, and delineates all of the other conditions of his employment. Griffin's complaint improperly urges this Court to overlook his written Employment Agreement in favor of enforcing an amorphous and nonexistent oral agreement that supposedly covers the same ground while superseding its key terms, including the identity of Griffin's employer and the amount of his compensation. Griffin either completely disregards or inadequately addresses the arguments raised in Defendant Motorsport Games Inc.'s motion to dismiss. Griffin does not—and cannot—state any claim upon which relief can be granted as a matter of law.

## I. Griffin Cannot Dispute that a Written Employment Agreement Contradicts Any Claims Based on a So-Called Oral Relocation Agreement

In his complaint, Griffin referred to his written Employment Agreement, stating that he was hired "[i]n March 2021 . . . to form a new studio based in Australia." DE 1 at ¶ 6. But because the complaint inaccurately stated that "MSG hired Griffin," and contained other factual mischaracterizations, MSG properly attached Griffin's written Employment Agreement to its motion to dismiss.

In contrast to Griffin's complaint, the written Employment Agreement that was attached to MSG's motion to dismiss unambiguously shows that a different entity—Motorsport Games Australia Pty Ltd.—had actually hired Griffin. But that is not all: the written Employment Agreement also reflects all of the other conditions of Griffin's employment, including his salary and bonus structure, and underscores that any modifications or amendments must be "in writing and signed by both parties." DE 13-2. In his response to MSG's motion to dismiss, Griffin improperly demands that the Court ignore reality and the record by disregarding his written Employment Agreement.

First, Griffin gets things backwards by accusing MSG of "confound[ing] itself with its Australian subsidiary." DE 18 at 2. To the contrary, it is Griffin's complaint which inaccurately states that "MSG hired Griffin" in March 2021, when in fact the written Employment Agreement attached to the motion to dismiss demonstrates that it was MSG Australia which hired Griffin. *Compare* DE 1 (Complaint), *with* DE 13-2 (Employment Agreement).

And the identity of Griffin's employer is a critical fact in light of the gravamen of Griffin's complaint which alleges that, in September 2021, Griffin supposedly received a "promot[ion]" that

changed "his base salary" and "annual bonus" just six months after he was initially hired. DE 1 at ¶¶ 8-9. But the terms of this so-called "oral[ ] Relocation Agreement" cover the exact same ground as the terms of his written Employment Agreement—which reflect a different employer, a different base salary, and a different annual bonus—without being memorialized in any written contract, as the Employment Agreement requires. *Id*.

In short, Griffin "may not rewrite" the "terms of a contract [that] are clear[ ] and unambiguous"—including changing the identity of his employer—nor may Griffin sustain any claims that "conflict[ ] with the express language of the contract" for his employment. *DZB ANK AG Deutsche Zentral-Genossenschaftsbank, Frankfurt AM Main, New York Branch v. Lisa Francisque Ins. Agency, LLC*, 10-20731-CIV, 2010 WL 11597969, at *2 (S.D. Fla. July 28, 2010).

Second, because Griffin's claims are based on a purported oral agreement concerning the terms of his employment, MSG did not "attempt to escape the four corners of the Complaint" by alerting the Court to the existence of a written Employment Agreement. DE 18 at 4. Rather, the written Employment Agreement is necessary to evaluate the plausibility of Griffin's allegations and the viability of his claims as a matter of law. *Compare, e.g.*, DE 1 at ¶¶ 6-9 (Griffin alleging that MSG hired him before violating an oral Relocation Agreement providing him "a base salary of $240,000 per year, plus an annual bonus of $70,000), *with, e.g.*, DE 13-2 at (Griffin's written Employment Agreement providing him a base salary of "$170,000 USD per annum," and an annual bonus of "$70,000 USD").

Even the "Legal Standard" section of Griffin's brief acknowledges that the Court may consider extrinsic material attached to a motion to dismiss that is "central to the plaintiff's claim" and whose "authenticity is not challenged." DE 18 at 2 (quoting cases); *accord Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2002). And, by failing to apply that governing standard in any way in the "Argument" section of his brief, Griffin implicitly admits that his position lacks any merit. In fact, this Court and others routinely consider documents outside the four corners of the complaint when ruling on motions to dismiss without converting them to motions for summary judgment. *Okwen v. Am. Mar. Officers Plans*, 2015 WL 5320882, at *1 (S.D. Fla. Sept. 14, 2015) (Bloom, J.) (considering EEOC charges of discrimination because they were central to Plaintiff's claim and the authenticity of the document was undisputed); *Pinhasov v. Equifax Info. Servs., LLC*, 2022 WL 823886, at *3 (S.D. Fla. Mar. 18, 2022) (Bloom, J.) (considering an Equifax Credit

2

Report because it was central to Plaintiff's claims and undisputed in terms of authenticity, even though Defendant did not file the report contemporaneously with the motion to dismiss).

In sum, Griffin cannot artfully plead around the existence of his written Employment Agreement which is not only referenced in the complaint, but also pertains the same subject matter as the purported oral agreement underpinning all of the claims for relief in this action.

## II. Griffin Cannot Dispute the Inadequacy of the Allegations Concerning the Elements of Any Claims Based on a So-Called Oral Relocation Agreement

Although a comprehensive written Employment Agreement with a start date of March 16, 2021 covers all aspects of Griffin's job-related rights and obligations—including his title, his base salary, and his annual bonus—Griffin alleges that MSG supposedly breached a September 2021 oral Relocation Agreement that promised him a "promot[ion]," a "base salary of $240,000 per year, plus an annual bonus of $70,000." DE 1 at ¶ 9. And, contrary to Griffin's opposition to MSG's motion to dismiss, the complaint does not "unequivocally allege[ ]" the existence or breach of any terms of a so-called oral Relocation Agreement, other than those that are already covered in his written Employment Agreement, which could only be modified or amended in a subsequent writing signed by both parties. DE 18 at 4-5.

To state a claim that MSG breached any oral contract, Griffin must first establish the existence of "a clear and definite agreement with no essential terms left open." *PNCEF, LLC. v. Highlander Enters., LLC*, 2010 WL 11504754, at *3 (S.D. Fla. Mar. 2, 2010). Here, however, Griffin's allegations concerning the terms of any so-called oral Relocation Agreement fail to even approach that standard, much less demonstrate that MSG was proximately responsible for any alleged breach. In fact, the bulk of Griffin's complaint depicts the parties' unsuccessful multi-year "attempts to finalize" the essential terms of any agreement, which ultimately ended in "stalled negotiations." DE 1 at ¶ 39; *accord id.* at ¶¶ 17-38.

And the fact that Griffin argues that "'causation' is [not] an element of a claim for breach of contract" is a strong indication that his overarching legal position lacks any substantive merit. DE 18 at 6. For the avoidance of any doubt, of course "causation" is subsumed within the damages element of any breach of contract claim, which requires pleading and proving that the plaintiff "suffered damages *as a result* of the breach." *Underwriters at Interest v. All Logistics Group, Inc.*, 483 F. Supp. 3d 1199, 1204 (S.D. Fla. 2020) ("Under Florida law, "[t]he elements of an action for breach of contract are: (1) the existence of a contract, (2) a breach of the contract, and (3) damages

3

*resulting from* the breach.") (emphasis added); *accord id.* (citing *Crowley Am. Transp., Inc. v. Richard Sewing Mach. Co.*, 172 F.3d 781, 784 (11th Cir. 1999)) ("[Plaintiff] cannot recover damages for breach of contract unless it can prove that the damages were proximately caused by the breach").

Thus, contrary to Griffin's opposition to MSG's motion to dismiss, the complaint does not "unequivocally allege" the existence—much less MSG's breach—of any term covered by any so-called oral Relocation Agreement that is not already covered by Griffin's written Employment Agreement. For instance, according to Griffin, the complaint "unequivocally alleges" that an oral contract supposedly imposed an independent obligation on MSG to "sponsor the visas for Griffin and his wife provided they use the services of" a particular immigration attorney. DE 18 at 4-5 (citing DE 1 at ¶ 10). But there is nothing unequivocal about this allegation, as Griffin neither alleges that he fulfilled the condition precedent of "us[ing] the services of" the immigration attorney in the first instance, nor does Griffin allege that MSG breached any existing obligation to sponsor his visa. To the extent that this allegation is relevant at all, it is hardly illuminating for any purpose, much less does it comprise an unequivocal allegation of a clear and definite term of an enforceable oral agreement that MSG somehow breached.

Likewise, Griffin argues that the complaint also "unequivocally alleges" that the oral Relocation Agreement imposed an obligation on MSG to "compensate[ ]" Griffin for the immigration attorney's "mishandling of his visa petition," over and above the job-related terms of his written Employment Agreement. DE 18 at 4-5 (citing DE 1 at ¶ 27). But, as the Court can see for itself, the complaint alleges that the oral Relocation Agreement was formed in September 2021, while any remark about compensating Griffin for any expenses associated with any third party's mishandling of any visa application was not made until a year later, in October 2022. DE 1 at ¶ 27. Thus, once again, a unilateral remark one year removed from the purported oral agreement does not "unequivocally allege" any element—including an offer, acceptance, consideration, and specificity—necessary to state a claim that a definitive oral contract was breached, much less that an oral contract ever existed in the first place.

Tellingly, Griffin's brief in opposition to dismissal does not even mention *Rapar, LLC. v. Mansfield*, a case that represented the centerpiece of MSG's motion to dismiss, in which Judge Torres explained how a purported oral agreement similar to the one at issue in this case was "too amorphous to constitute a valid [oral] contract." DE 13 at 6-7 (quoting *Rapar*, 2020 WL 9549665

4

(S.D. Fla. Aug. 26, 2020) (Torres, J.)). There, as here, the plaintiff alleged that the parties agreed on compensation for "other personal expenses" without providing any "clarity as to what [was] included in this category" or "how that amount should be calculated." *Rapar, supra*, at *4. Thus, as Judge Torres concluded in *Rapar*, "given these shortfalls," Griffin has not "presented a viable breach of contract claim." *Id*.

In sum, Griffin at most alleges an archetypal "agreement to agree" that was contingent on future events outside of the parties' control, concerning payment obligations that were never defined, and could never state a claim for which relief can be granted as a matter of law. *Aldora Aluminum & Glass Prod., Inc. v. Poma Glass & Specialty Windows, Inc.*, 683 Fed. Appx. 764, 768 (11th Cir. 2017) (dismissing a breach a contract and breach of covenant of good faith claim based on a MOU, even though the parties intended to be legally bound because "[a] mere agreement to agree is unenforceable as a matter of law . . . And, similarly, a contract containing ambiguous material terms is unenforceable because the parties never reached a meeting of the minds regarding an essential term of the agreement.") (internal quotation omitted); *accord FI Real Estate Fund Two LP v. DONDA, LLC,* 23-80684-CIV, 2023 WL 6566479, at *4 (S.D. Fla. Oct. 10, 2023). To be sure, Griffin might have hoped to permanently relocate to Miami at some point in the future but, as the complaint admits, the parties failed to reach any firm agreement to that effect before that possibility was foreclosed by external forces. *See* DE 1 at ¶ 39 (explaining that the parties' "negotiations stalled" before "finaliz[ing] in good faith" the purported new terms governing Griffin's employment).

Griffin does not squarely challenge the precedents and principles cited in MSG's motion to dismiss, which bolster the allegations in the complaint, and explain that Griffin's inability "to relocate to Miami" occurred "[a]s a result of" an immigration attorney's alleged "mishandling of his visa petition," and not a breach of any clear and definitive term established by a firm oral contract. DE 1 at ¶ 23; *accord* DE 13 at 7-8 (citing, *inter alia*, *Sutherlin v. Wells Fargo & Co.*, 297 F. Supp. 3d 1271, 1278 (M.D. Fla. 2018)) ("[Griffin] alleges that his damages were caused not by MSG, but rather by either the U.S. Government's failure to issue a work visa or by a third-party attorney's failure to convince the U.S. Government to issue a work visa").[1]

---

[1] Griffin's false assertion that he was "not otherwise ineligible for a visa" only appears as an unadorned statement in opposition to dismissal (DE 18 at 5), and not in his complaint, which would trigger the applicability of sanctions for any false statements. *See* Fed. R. Civ. P. 11.

5

### III. Griffin Cannot Dispute the Applicability of the Statute of Frauds Which Precludes the Claims and Allegations of the Complaint

To the extent that any so-called "oral Relocation Agreement" does not impermissibly mirror, duplicate, amend, or modify the terms of Griffin's written Employment Agreement, it necessarily reflects an agreement to establish a relationship that the parties "intended . . . to last for more than one year," meaning that it is barred by the statute of frauds. *All Brand Imps., Inc. v. Tampa Crown Distribs., Inc.*, 864 F.2d 748, 750 (11th Cir. 1989).

Again, Griffin opposes dismissal without grappling with the substantive arguments raised in MSG's motion to dismiss. For instance, rather than citing any pertinent legal authorities or portions of the record that may be considered on a motion to dismiss, Griffin instead relies exclusively on the text of the statute of frauds to argue that "MSG's promises . . . *could be* performed in under one year." DE 18 at 6-7 (citing Fla. Stat. § 725.01) (emphasis added). But, as this Court and others have explained, the relevant question is not whether the oral agreement *could be* performed in under one year, but rather "whether the parties' *intent* was that the agreement be performed within a year." *Saeme v. Levine*, 2012 WL 13134604, at *4 (S.D. Fla. June 12, 2012) (emphasis added; citing cases); *accord Saeme v. Levine*, 502 F. App'x 849, 851 n.1 (11th Cir. 2012) ("Pursuant to well-settled Florida law, 'when the parties intended and contemplated that performance of their agreement would take longer than one year,' the Statute of Frauds requires that an action to enforce that agreement must depend on a written statement or memorandum, signed by the party to be charged") (brackets omitted; quoting cases).

As alleged in the complaint and explained in the motion to dismiss—but ignored in Griffin's opposition brief—the complaint cannot be construed to allege any oral agreement that the parties intended or contemplated to last under one year. For instance, the complaint alleges that in furtherance of the so-called "oral Relocation Agreement," MSG had "applied for a 15-month corporate lease . . . for an apartment in Miami for Griffin and his wife." DE 1 at ¶ 15; *All Brand Imps., Inc.*, 864 F.2d at 750 (the Statute of Frauds barred the parties' oral contract to create a company because they had entered into a three-year lease, which showed their intent for the business to continue for more than a year). Similarly, both the written Employment Agreement referenced in the complaint as well as the alleged oral Relocation Agreement that forms the basis

6

of the complaint allege that Griffin was entitled to collect "a base salary of $240,000 per year, plus an annual bonus of $70,000" for multiple years. DE 1 at ¶ 9; *accord* DE 13-2 at 8-9.[2]

### IV. Griffin Cannot Dispute that His Implied Contract Claims Impermissibly Duplicate His Express Contract Claims

In his complaint, Griffin alleges that the parties "entered into a valid, enforceable, and binding" *express* oral contract, which MSG breached by "fail[ing] to relocate Griffin from Australia to its office in Miami." DE 1 at ¶¶ 42-44. Settled principles of law prohibit Griffin from advancing materially identical allegations that masquerade as *implied* contract claims such as breach of an implied covenant of good faith (Count II) or promissory estoppel (Count III), and Griffin waived dispositive arguments raised in MSG's motion to dismiss by failing to rebut them in his opposition brief. *SRAM, LLC v. Princeton Carbon Works, Inc.*, 653 F. Supp. 3d 1186, 1191 (S.D. Fla. 2023), *reconsideration denied,* 21-80581-CIV, 2023 WL 5627047 (S.D. Fla. Feb. 7, 2023) (arguments not addressed in response are waived).

<u>First</u>, Griffin does not dispute, and thus waives any rebuttal to, MSG's argument that the dismissal of Griffin's claim for breach of an *express* oral contract would also require the dismissal of Griffin's claim for breach of an *implied* covenant of good faith. *Id.*; *Aldora Aluminum & Glass Prods., Inc.*, 683 Fed. Appx. at 769 (11th Cir. 2017) ("Florida law does not recognize a claim for the breach of the implied covenant of good faith and fair dealing absent the existence of a valid contract.").

Alternatively, even if Griffin had adequately stated a claim for breach of an *express* oral contract, it would nevertheless foreclose his duplicative claim for breach of an *implied* covenant of good faith. After all, the allegations underlying both claims are essentially identical. *Compare* DE 1 at ¶ 44 (alleging that MSG breached an express oral contract by "fail[ing] to relocate Griffin,"), *with id.* at ¶ 54 (alleging that MSG breached an implied covenant of good faith by "prevent[ing] [Griffin] from relocating"). And the alleged resulting damages are literally identical:

> As a result of MSG's breach, Griffin also has suffered consequential and incidental damages. Griffin's consequential and incidental damages include but are not necessarily limited to moving expenses; travel expenses; lodging expenses; utility

---

[2] Even though it is not within the purview of the Court's inquiry on a motion to dismiss, Griffin's Initial Disclosures request damages, including remuneration, rent, and expenses, covering a period of 17 months.

expenses; insurance expenses; and paying an income tax rate of 45% in Australia, as opposed to a rate of around 21% in Florida.

DE 1 at ¶¶ 47 & 57; *accord Sun Life Assurance Co. of Can. v. Imperial Holdings Inc.*, 13-80385-CIV, 2016 WL 10565034, at *5 (S.D. Fla. Sept. 22, 2016) ("[I]it is well-settled that a claim for a breach of the implied covenant of good faith and fair dealing cannot survive when the allegations underlying the claim are duplicative of the allegations underlying a breach of contract claim").

And, to the extent that Griffin argues that requiring him "to use the services of" a particular immigration attorney comprises MSG's bad faith, DE 18 at 7 (quoting DE 1 at ¶ 54), then his claim is futile. After all, the complaint alleges that using the services of MSG's immigration attorney was an express term of the purported oral Relocation Agreement, and the implied covenant of good faith does not apply "when the propriety of the conduct is . . . resolved by the terms of the contract." *Aldora Aluminum & Glass Prods, Inc.*, 2015 WL 4092781, at *5; *accord Shibata v. Lim*, 133 F. Supp. 2d 1311, 1321 (M.D. Fla. 2000) ("[An implied covenant is . . . a method used to fill gaps in a contract where the contract is ambiguous as to the permissibility of [a] conduct" not when the conduct complained of was done in accordance with an express term). Or, to put it another way, Griffin cannot state a claim for breach of an *implied* covenant that "contravene[s] the *express* terms of the agreement" at issue. *JF & LN, LLC v. Royal Oldsmobile-GMC Trucks Co.*, 292 So. 3d 500, 508 (Fla. 2d DCA 2020) (emphasis added).[3]

Second, Griffin cannot state a claim for promissory estoppel for similar reasons, including the fact that Griffin waived any counterarguments that may have otherwise been available to him by failing to address the issues raised in MSG's motion to dismiss. *SRAM, LLC*, 653 F. Supp. 3d at 1191, *reconsideration denied,* 21-80581-CIV, 2023 WL 5627047 (S.D. Fla. Feb. 7, 2023).

For instance, as MSG argued in its motion to dismiss—which Griffin does not rebut—promissory estoppel is unavailable to circumvent the statute of frauds. DE 13 at 8-9 (citing, *inter alia*, *OJ Commerce, LLC v. Ashley Furniture Indus., Inc.*, 359 F.Supp.3d 1163, 1174 (S.D. Fla. 2018)).

---

[3] The only other substantive allegation contained within Griffin's claim for breach of an implied covenant consists of a disjointed string of legal conclusions devoid of any facts, DE 1 at ¶ 53, which has no impact on the dismissal analysis at all. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) ("[L]egal conclusions . . . must be supported by factual allegations," and the Court will not "unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.")

Moreover, as MSG argued in its motion to dismiss—which Griffin does not rebut—"[p]romissory estoppel does not apply in situations where a promise is not "sufficiently definite in time or term or reasonableness." DE 13 at 11-12 (quoting, *inter alia*, *W.R. Grace & Co. v. Geodata Servs., Inc.*, 547 So. 2d 919, 924 (Fla. 1989)).

Additionally, as MSG argued in its motion to dismiss—which Griffin does not rebut—a party's truthful statement of present intentions regarding a future act does not give rise to a claim for promissory estoppel. DE 13 at 11-12 (citing, *inter alia*, *Remembrance Group, Inc. v. Centazzo*, No. 2:21-CV-675-JES-MRM, 2022 WL 1406673, at *6 (M.D. Fla. May 4, 2022) (*quoting Rekal Co. v. PGT Indus., Inc.,* No. 8:13-CV-1433-T-33TGW, 2013 WL 5487370, at *6 (M.D. Fla. Sept. 30, 2013) (dismissing promissory estoppel claims based on present intention of a party)).

Finally, Griffin is wrong that his written Employment Agreement "has no bearing in this case." DE 18 at 8-9. To the contrary, the doctrine of promissory estoppel "is unavailable when there is a written contract between the parties covering the disputed promises." *Hartel v. Unity Recovery Ctr., Inc.*, 2017 WL 1291952, at *4 (S.D. Fla. Jan. 26, 2017). And here, Griffin does not identify any disputed promises that are not covered by the terms of his written Employment Agreement. *Compare, e.g.*, DE 1 at ¶ 9. The doctrine of promissory estoppel is also unavailable when there is an oral contract covering the same promises. *Kritchman v. Wolk*, 152 So. 3d 628, 632 (Fla. 3d DCA 2014) (dismissing a promissory estoppel claim as duplicative of a breach of oral contract); *see also DK Arena, Inc. v. EB Acquisitions I, LLC*, 112 So. 3d 85, 97 (Fla. 2013) ("[P]romissory estoppel may not be used to circumvent [the] requirements [of the Statute of Frauds]" as applied to oral contracts).

V. **The Breach of Fiduciary Duty Claim Must Be Dismissed as Duplicative and Insufficiently Pled**

Griffin does not dispute that his claim for breach of fiduciary duty is duplicative of his breach of oral contract claim. DE 18 at 9-10; *Court Appointed Receiver of Lancer Offshore, Inc. v. Citco Group Ltd.*, 05-60080-CIV, 2011 WL 1233106, at *4 (S.D. Fla. Mar. 30, 2011) (dismissing a breach of fiduciary duty when the contract delineates the alleged duty). Griffin, however, argues he can maintain his claim in the alternative. But Griffin cannot do so because he did not, and could not, plead a fiduciary duty. The allegations in the Complaint are nothing more than a formulaic recitation of an alleged duty and fall short of being supported by factual allegations. DE 1 at ¶¶66-67; *SLM Fin. Corp. v. Castellano*, 2:11-CV-105-FTM-29, 2012 WL 717858, at *3 (M.D. Fla. Mar. 6, 2012) (allegation that the litigant "reposed confidence and trust"

9

in the other party, who "assumed a duty to advise, counsel and protect" are "conclusory allegations . . . insufficient to state a claim for breach of fiduciary duty"). The caselaw cited by Griffin is inapposite and refers to parties with special relationships (e,g, an escrow agent or a psychotherapist) or parties that were found to not have a fiduciary relationship at all (a banking institution). "[T]he fact that one party places its trust in the other does not create a confidential relationship in the absence of some recognition, acceptance, or undertaking of the duties of a fiduciary on the part of the other party." *Bankest Imps., Inc. v. ISCA Corp.,* 717 F. Supp. 1537, 1541 (S.D.Fla.1989); *Fin-S Tech, LLC v. Surf Hardware Int'l-USA, Inc.*, 13-CV-80645, 2014 WL 12461349, at *9 (S.D. Fla. Jan. 7, 2014) (declining to find, at the motion to dismiss stage, the existence of a fiduciary duty, because the parties had a "mutually beneficial" contractual relationship and the defendant had no obligation, outside the contract to advise or counsel plaintiff). And here, Griffin cannot allege any facts showing that MSG undertook a fiduciary duty under the circumstances, warranting a dismissal with prejudice. *In re Hussing*, 659 B.R. 609, 623 (Bankr. S.D. Fla. 2024) (dismissing count because the litigant did not owe, and therefore could not breach a fiduciary duty).

## VI. MSG's Motion to Dismiss Was Timely Filed

Because Griffin cannot prevail on the merits, he implies that MSG's motion to dismiss was due on July 5, 2024, and thus "belatedly" filed on July 8, 2024. DE 18 at 1. But Griffin fails to acknowledge that the Court was closed for Independence Day on July 5, 2024. *See* United States District Court, Southern District of Florida, Court Hours/Holidays, at https://www.flsd.uscourts.gov/court-hours-holidays. Thus, according to the Federal and Local Rules, "the time for filing is extended to the first accessible day that is not a Saturday, Sunday, or legal holiday," meaning that MSG's motion to dismiss was timely filed on July 8, 2024. Fed. R. Civ. P. 6(a)(3)(A); *accord* S.D. Fla. Local. Rule 7(1)(c)(1) ("Time shall be computed . . . in accordance with applicable federal rules of procedure").

Dated: August 5, 2024.

                                             Respectfully submitted,

                                             **AXS LAW GROUP, PLLC**
                                             2121 NW 2nd Avenue,
                                             Suite 201
                                             Miami, FL 33127
                                             Tel: 305.297.1878

> By: */s/ Jeffrey W. Gutchess*
> Jeffrey W. Gutchess
> jeff@axslawgroup.com
> eservice@axslawgroup.com

## CERTIFICATE OF SERVICE

WE HEREBY CERTIFY that a true and correct copy of the forgoing was served via CM/ECF on counsel of record of in this action on this 5th day of August, 2024.

> */s/ Jeffrey W. Gutchess*
> Jeffrey W. Gutchess