**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**Case No. 24-cv-21929-BLOOM/Elfenbein**

ZACHARY GRIFFIN,

      Plaintiff,

v.

MOTORSPORT GAMES INC.,

      Defendant.

_____/

**ORDER ON MOTION TO DISMISS**

**THIS CAUSE** is before the Court upon Defendant Motorsport Games Inc.'s ("MSG")

Motion to Dismiss, ECF No. [13], filed on July 8, 2024. Plaintiff Zachary Griffin ("Griffin") filed

a Response, ECF No. [18], to which MSG filed a Reply, ECF No. [19]. The Court has reviewed

the record, the supporting and opposing submissions, the applicable law, and is otherwise fully

advised. For the reasons that follow, MSG's Motion to Dismiss is granted in part and denied in

part.

**I. BACKGROUND**

On May 20, 2024, Plaintiff Griffin filed a Complaint against Defendant MSG, asserting

four claims: breach of contract (Count 1); breach of covenant of good faith and fair dealing (Count

2); promissory estoppel (Count 3); and breach of fiduciary duty (Count 4). ECF No. [1] at 6-9.

Plaintiff alleges that MSG is a racing video game developer and publisher that provides official

motorsport racing series worldwide. *Id.* at ¶ 5. In March 2021, MSG hired Griffin to form a new

studio based in Australia. *Id.* at ¶ 6. On August 18, 2021, Dmitry Kozko ("Kozko"), the CEO of

MSG, requested that Griffin relocate from Australia to MSG's office in Miami, Florida. *Id.* at ¶ 7.

On September 8, 2021, Kozko and Griffin orally agreed to the terms of Griffin's relocation to MSG's Miami office (the "Relocation Agreement"). *Id.* at ¶ 8. Pursuant to the Relocation Agreement's terms, Griffin was to be promoted to Director of Technology with a base salary of $240,000.00 per year plus an annual bonus of $70,000.00. *Id.* at ¶ 9. MSG also promised to sponsor the visas needed for Griffin and his wife provided they used the services of MSG's immigration attorney, Mark Katsman ("Katsman"). *Id.* at ¶ 10.

On September 10, 2021, MSG's General Counsel, Amanda LeCheminant ("LeCheminant"), expressed her concerns about using Katsman for Griffin's immigration needs based on her previous experiences. *Id.* at ¶ 11. As a result, Griffin asked Kozko to utilize another immigration attorney; however, Kozko dismissed LeCheminant's concerns, expressing that LeCheminant "shouldn't comment" because she was "not an immigration attorney" and Katsman "had done many visas" for Kozko. *Id.* at ¶ 12. On September 13, 2021, Katsman advised Griffin that he could qualify for either an E-3 visa or an L-1 visa. *Id.* at ¶ 13. However, Katsman stated that being granted an E-3 visa would preclude Griffin from being granted an L-1 visa, and MSG could only file an L-1 visa petition for him after March 2022. *Id.* On April 20, 2022, MSG failed to secure a 15-month corporate lease for an apartment in Miami for Griffin and his wife. *Id.* at ¶¶ 15-16. On May 6, 2022, Kozko requested that Griffin agree to a reduced bonus of $48,000.00, rather than the previously agreed $70.000.00, due to MSG's financial condition. *Id.* at ¶ 17.

On June 8, 2022, during a video call with Griffin, Katsman stated he did not know that the income year for tax purposes were different in Australia (July 1 to June 30) and the United States (January 1 to December 31). *Id.* at ¶ 18. Katsman told Griffin that he could not submit Griffin's FY20/21 tax return with his L-1 visa petition as it did not demonstrate 12 months of employment with MSG. *Id.* at ¶ 19. As such, the L-1 visa petition could only be filed once Katsman had Griffin's

FY21/22 tax return. *Id.* Griffin informed Katsman that the earliest he could prepare his FY21/22 tax return would be following the end of the fiscal year on July 1, 2022, and it generally took three weeks for it to be processed by the Australian government. *Id.* at ¶ 21. Katsman never followed up, inquired, or otherwise communicated with Griffin about his visa petition after June 8, 2022. *Id*. at ¶ 22.

As a result of Katsman mishandling Griffin's visa petition, Griffin was not able to relocate to Miami. *Id.* at ¶ 23. On October 19, 2022, Griffin met with a second immigration attorney, who confirmed Katsman was mistaken as to the requirement of Griffin's FY21/22 tax return for his L-1 visa petition and offered an alternative pathway through an E-3 visa. *Id.* at ¶ 26.

Griffin alleges he sustained numerous losses in connection with MSG's failure to relocate him, including "moving expenses, travel expenses, lodging expenses, utility expenses, insurance expenses, and paying an income tax rate of 45% in Australia, as opposed to an income tax rate of around 21% in Florida." *Id.* at ¶ 23. On October 12, 2022, Griffin informed Kozko of the losses that he had suffered because of MSG's failure to complete Griffin's transfer to Miami. *Id.* at ¶ 24. Kozko asked Griffin for a calculation of his losses and, on October 18, 2022, Griffin shared a spreadsheet with Kozko which detailed his losses. *Id.* at ¶ 25. On October 21, 2022, Griffin and Kozko met to review the spreadsheet, and Kozko agreed that MSG would compensate Griffin for his loss, stating: "Submit these as expenses and the remainder I'll give you as a bonus for getting NASCAR Heat 5 out." *Id* at ¶ 27. Kozko also agreed to pay for the new immigration firm, Cammisa Markel PLLC, to prepare visa applications for Griffin and his wife. *Id.*

On January 11, 2023, Kozko reneged on his agreement to pay for Griffin's losses due to MSG's failure to complete Griffin's relocation. *Id.* at ¶ 36. Kozko stated "there's no way the company's going to have a half-million-dollar cost on you," referring to the estimated amount of

Griffin's losses. *Id.* On January 14, 2023, Kozko proposed three bonuses totaling $250,000.00 to settle Griffin's losses, with a fourth bonus to be discussed later. *Id.* at ¶ 37. On February 27, 2023, MSG's Director of Human Resources Dara M. Acker ("Acker") emailed Griffin offering to "an increase to [Griffin's] overall compensation in order to help . . . with personal financial concerns[.]" *Id.* at ¶ 38. This contradicted Kozko's offer of January 14, 2023. *Id.* While Griffin made multiple attempts to finalize the conditions of the newly proposed bonuses, negotiations stalled following Acker's email. *Id.* at ¶ 39. On April 14, 2023, Kozko was terminated as CEO of MSG. *Id.* at ¶ 40. Griffin alleges that MSG's breach of the Relocation Agreement, breach of a covenant of good faith and fair dealing, promissory estoppel, and breach of its fiduciary duty has caused him to suffer damages. *See generally* ECF No. [1].

In the Motion, MSG argues that Griffin was not hired by MSG directly but rather by MSG's foreign subsidiary, Motorsport Games Australia PTY LTD ("MSG-AUS"). ECF No. [13] at 1. Griffin's employment with MSG-AUS was pursuant to a written employment agreement (the "Employment Agreement") outlining the specific terms of the alleged oral agreement. *Id.* MSG contends that Griffin's Complaint is defective because the Employment Agreement between Griffin and MSG-AUS requires amendments to be in writing and signed; the alleged Relocation Agreement is vague and lacks essential terms; there has been no breach of the alleged terms; and Griffin has stated that the failure to relocate to Miami was due to his inability to obtain a work visa from the U.S. Department of State, not due to any breach by MSG. *Id.* at 1-2.

There are two agreements at issue between the parties: (1) the Employment Agreement, which was a prior written agreement between MSG-AUS and Griffin; and (2) the Relocation Agreement, where MSG allegedly agreed to promote Griffin with a salary and bonus, to sponsor visas for Griffin and his wife, and to compensate Griffin for his losses.

## II. LEGAL STANDARD

"On a Rule 12(b)(6) motion to dismiss, '[t]he moving party bears the burden to show that the complaint should be dismissed.'" *Sprint Sols., Inc. v. Fils–Amie*, 44 F. Supp. 3d 1224, 1228 (S.D. Fla. 2014) (quoting *Mendez–Arriola v. White Wilson Med. Ctr. PA*, No. 09–495, 2010 WL 3385356, at *3 (N.D. Fla. Aug. 25, 2010)). A pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). While a complaint "does not need detailed factual allegations," it must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (explaining that Rule 8(a)(2)'s pleading standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation"). A complaint may not rest on "'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id*. (quoting *Twombly*, 550 U.S. at 557). "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. As a general rule, when reviewing a motion to dismiss, a Court must accept the plaintiff's allegations as true and evaluate all plausible inferences derived from those facts in favor of the plaintiff. *See Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1337 (11th Cir. 2012). Although the Court is required to accept all of the factual allegations as true, this tenet is inapplicable to legal conclusions. *Iqbal*, 556 U.S. at 678. In considering a Rule 12(b) motion to dismiss, the court is limited to the facts contained in the complaint and attached exhibits. *See Thaeter v. Palm Beach Cnty. Sheriff's Office*, 449 F.3d 1342, 1352 (11th Cir. 2006).

It is well-settled that "where the plaintiff refers to certain documents in the complaint and those documents are central to the plaintiff's claim, then the Court may consider the documents part of the pleadings for purposes of Rule 12(b)(6) dismissal, and the defendant's attaching such documents to the motion to dismiss will not require conversion of the motion into a motion for summary judgment." *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997); *see also Harris v. Ivax Corp.*, 182 F.3d 799, 802 n.2 (11th Cir. 1999) ("[A] document central to the complaint that the defense appends to its motion to dismiss is also properly considered, provided that its contents are not in dispute.") (citation omitted).

## III. DISCUSSION

### A. Breach of Contract (Count 1)

#### i. The Employment Agreement Between Griffin and MSG-AUS

MSG argues that this Court should consider the written Employment Agreement, ECF No. [13-2], which governs any alleged contractual relationship between MSG and Griffin. ECF No. [13]. Specifically, Section 19.8 of Plaintiff's Employment Agreement specifies that the "Agreement contains the entire agreement between the parties with respect to the subject matter of this Agreement" and Section 19.3 provides that "[a]ny amendment, change or modification of this Agreement is void unless in writing and signed by both parties." *Id.* at 3. Griffin responds that the Court should not consider the Employment Agreement because it was between Griffin and MSG's subsidiary, MSG-AUS, while the Relocation Agreement was between Griffin and MSG. ECF No. [18] at 2-3. MSG replies that MSG-AUS had hired Griffin but contends that the Employment Agreement governs any modifications or amendments to Griffin's employment. ECF No. [19] at 2.

Griffin's argument has merit. Under Florida law, "parent corporations and their wholly owned subsidiaries[] constitute separate and distinct legal entities." *Ferro v. ECI Telecom, Inc.*, 314 So. 3d 711, 713 (Fla. 3d DCA 2021). The Employment Agreement MSG seeks to introduce is a contract where MSG is not a party because MSG-AUS is its own separate legal entity. Essentially, MSG is attempting to enforce contractual rights in a contract to which it is not a party. *See Lawson v. Life of the S. Ins. Co.*, 648 F.3d 1166, 1167 (11th Cir. 2011) ("A rule of contract law is that one who is not a party to an agreement cannot enforce its terms against one who is a party.") (citations omitted).

Further, the Complaint lacks any specific reference to the Employment Agreement, and the resolution of the Motion does not require review of the Employment Agreement. The Employment Agreement is not a "document central to the complaint that the defense appends to its motion to dismiss" so the Court does not consider it. *Harris*, 182 F.3d at 802 n.2.

Here, the core issues stem from the alleged Relocation Agreement between MSG and Griffin, the actual parties to the case, not any prior agreements between Griffin and MSG-AUS, a non-party to the case.

### ii. The Oral Agreement's Essential Terms

MSG argues that the Complaint fails to allege the essential terms of an oral agreement. ECF No. [13] at 5. Griffin responds that so long as the essential terms are present, "not all of a contract's terms need to be alleged on a complaint." ECF No. [18] at 4. MSG replies that the Complaint "depicts the parties' unsuccessful multi-year 'attempts to finalize' the essential terms of any agreement." ECF No. [19] at 4. The Court analyzes the parties' alleged Relocation Agreement.

MSG relies upon *Fernandez v. CheckAlt Eras, Inc.,* No. 20-CV-22746-UU, 2020 WL 13016337, at *5 (S.D. Fla. Aug. 31, 2020), where the court stated that "to state a claim for breach of an oral contract, 'a plaintiff must allege that the "parties mutually assented to a certain and definite proposition and left no essential terms open."'" (citation omitted). The court in *Fernandez* found that the plaintiff failed to allege any facts regarding the formation or terms of the contract, only stating that he had an oral agreement with the defendant, and the defendant breached by not paying the agreed-upon wages. *Id.* Similarly, MSG contends that Griffin failed to include the contract's essential terms because Griffin only provided the Relocation Agreement's terms for salary and bonus — not the "duration or other employee benefits or any of the other 21 separate terms" of the Employment Agreement. ECF No. [13] at 6. MSG's argument lacks merit.

Here, Griffin's Complaint alleges that on September 8, 2021, Kozko, MSG's CEO, and Grifin agreed that "Griffin was to be promoted to Director of Technology, with a base salary of $240,000.00 per year, plus an annual bonus of $70,000.00. MSG also promised to sponsor the visas for Griffin and his wife provided they used the services of MSG's immigration attorney, Mark Katsman." ECF No. [1] at ¶¶ 8-10. The Complaint also alleges that on October 21, 2022, "Kozko agreed that MSG would compensate Griffin for his loss… [and that] MSG would pay for the new immigration firm, Cammisa Markel PLLC, to prepare visa applications for Griffin and his wife." *Id.* at ¶ 27. The Complaint sufficiently alleges the essential terms of an oral agreement because it sets forth when the parties mutually assented, the salary and bonus structure, that MSG agreed to sponsor the visa process for Griffin and his wife so long as they used Katsman's legal services, and that MSG agreed to compensate Griffin for his losses. While the Relocation Agreement's terms may not be fully set forth, "the fact that nonessential terms remain open is not fatal to an oral contract." *St. Joe Corp. v. McIver*, 875 So. 2d 375, 381 (Fla. 2004).

Accordingly, the Complaint's allegations regarding the Relocation Agreement contains sufficient essential terms to plausibly allege a valid oral contract. *See Iqbal*, 556 U.S. at 678.

### iii. Breach of Relocation Agreement and Failure to Obtain Work Visa

MSG argues that the Complaint fails to allege a breach of the Relocation Agreement's terms — MSG lived up to its obligations under the Relocation Agreement, and the United States Department of State's ("Department of State") failure to issue the work visa cannot form the basis of a breach. ECF No. [13] at 6-8. Griffin responds that MSG breached the contract when it failed to relocate Griffin because MSG is responsible for his inability to obtain a visa since "MSG and/or its attorneys failed to submit a visa application on Griffin's behalf—and Griffin is not otherwise ineligible for a visa," and compensate Griffin for his losses in connection with the failure to relocate. ECF No. [18] at 5. MSG replies that the Employment Agreement precludes any subsequent agreement between the parties from being valid, Griffin fails to allege that MSG breached any existing obligation to sponsor his visa, the alleged agreement for MSG to compensate Griffin lacks the essential terms to establish a contract that can be breached, and the failure to obtain a work visa is due to either the Department of State or the third-party attorney's inability to convince the Department of State to issue Griffin a visa. ECF No. [19] at 5-6.

The Eleventh Circuit has found it improper for a plaintiff to raise a new argument in the response to a motion to dismiss that is absent from the complaint. *See Huls v. Llabona*, 437 F. App'x 830, 832 (11th Cir. 2011) ("Because [the plaintiff] raised this argument for the first time in his response to [the defendant's] motion to dismiss, instead of seeking leave to file an amended complaint, pursuant to Fed. R. Civ. P. 15(a), it was not properly raised below."). Thus, the Court will not consider Griffin's argument that MSG breached due to reneging on the promise to compensate Griffin because Griffin improperly raised it in the Response — not in Count 1 of the Complaint.

Instead, the Complaint alleges that MSG "materially and substantially breached this contract[ s]pecifically [when] MSG [] failed to relocate Griffin from Australia to its office in Miami." ECF No. [1] ¶ 44. Under Florida law, in a breach of contract claim the plaintiff is required "to plead and establish: (1) the existence of a contract; (2) a material breach of that contract; and (3) damages resulting from the breach." *Merle Wood & Assocs., Inc. v. Trinity Yachts, LLC*, 857 F. Supp. 2d 1294, 1301 (S.D. Fla. 2012), *aff'd*, 714 F.3d 1234 (11th Cir. 2013). Further, to constitute a material breach, "a party's conduct must 'go to the essence of the contract; it must be the type of breach that would discharge the injured party from further contractual duty on his part.'" *Eclectic Synergy, LLC v. Seredin*, 347 So. 3d 27, 29 (Fla. 4th DCA 2022) (citation omitted). Additionally, a party's complaint must go beyond mere conclusory statements and provide underlying facts to plausibly allege a breach. *See PNCEF, LLC v. Highlander Enterprises, LLC*, No. 09-80974-CIV, 2010 WL 11504754, at *3 (S.D. Fla. Mar. 2, 2010) ("Defendants fail to sufficiently plead that Plaintiff breached the workout agreement because Defendants' sole allegation as to the breach is conclusory and because Defendants do not allege any underlying facts showing that Plaintiff breached the contract."). Here, contrary to MSG's assertion, the Complaint is not alleging that MSG did not pay Griffin the salary and bonus. ECF No. [13] at 6. Rather, the Complaint asserts that MSG breached the Relocation Agreement because MSG failed to relocate Griffin. ECF No. [1] at ¶¶ 44-47. The Complaint alleges that Griffin suffered damages as a result. *Id.*

The Complaint's conclusory allegation that MSG breached the Relocation Agreement when it failed to relocate Griffin to Miami is not supported by the underlying facts. ECF No. [1] at ¶ 44. The Complaint states that the terms of the Relocation Agreement were as follows: MSG "promised to sponsor the visas for Griffin and his wife provided they use [Katsman]." *Id.* at ¶ 10.

"Kozko also agreed MSG would pay for the new immigration firm, Cammisa Markel PLLC, to prepare visa applications for Griffin and his wife." *Id.* at ¶ 27. There are no facts to support that MSG did not fulfill its promise to sponsor and pay the attorneys to handle the visa process for Griffin and his wife. Griffin contends that he could not relocate to Miami because Katsman, who MSG hired, mishandled the visa process. ECF No. [18] at 6. However, Katsman is not a party to this case, and the underlying allegations fail to show how MSG's actions breached its promises to sponsor and pay for Griffin's immigration attorneys. Instead, the Complaint alleges that using Katsman was part of the Relocation Agreement itself, as evidenced by the fact that MSG "promised to sponsor the visas for Griffin and his wife provided they use [Katsman]." ECF No. [1] at ¶ 10. Nor is the Department of State a party to this case, and any failure of the Department of State to issue Griffin a visa does not support a breach by MSG.

Accordingly, the Complaint does not contain sufficient allegations to plausibly support that MSG breached the Relocation Agreement. Because Plaintiff does not allege a breach of contract, Plaintiff cannot recover under Count 1.

### iv. Causation

Since the Court finds that Plaintiff cannot recover for breach of contract, the Court does not reach the issue of whether Plaintiff sufficiently established causation.

### v. The Statute of Frauds Effect on the Breach of Contract

Since the Court finds that Plaintiff cannot recover for breach of contract, the Court does not reach the merits of the statute of frauds argument on Griffin's breach of contract claim.

Griffin fails to plausibly allege a breach of contract under Count 1. MSG's Motion to Dismiss is granted on Count 1.

**B. Breach of Good Faith and Fair Dealing (Count 2)**

MSG contends it did not breach any duty of good faith and fair dealing because: (1) the oral contract is not valid, and therefore, there cannot exist a duty of good faith and fair dealing for MSG to breach; and (2) Florida law does not permit a claim for breach of good faith and fair dealing when the breach of contract is impermissibly duplicative of the breach of contract. ECF No. [13] at 9-10. Griffin responds that MSG's requirement to use Katsman as Griffin's immigration attorney despite Katsman's "known incompetence" is a breach of good faith and fair dealing. ECF No. [18] at 7. MSG replies that if hiring Katsman was an express term of the oral contract, there could not be a breach of good faith since the basis for the breach would contravene an express term of the contract. ECF No. [19] at 7-8.

The implied covenant of good faith and fair dealing is present in all contracts. "Florida contract law recognizes the implied covenant of good faith and fair dealing in every contract. . . . This covenant is intended to protect 'the reasonable expectations of the contracting parties in light of their express agreement.'" *Ins. Concepts & Design, Inc. v. Healthplan Servs., Inc.*, 785 So. 2d 1232, 1234 (Fla. 4th DCA 2001) (citation omitted). The Complaint's allegations supporting the breach of good faith and fair dealing are that MSG required Griffin to use the services of Katsman and his mishandling of the visa petition prevented Griffin from relocating to Miami. ECF No. [1] at ¶¶ 18-21, 26, 54. Additionally, Griffin alleges that MSG was aware of Katsman's incompetence in handling immigration matters, refused to hire a different immigration attorney, and assured Griffin that Katsman "had done many visas." ECF No. [13] at ¶¶ 11-12.

As to MSG's first argument that there was no breach of good faith because the oral contract was not valid, the Complaint contains sufficient underlying facts to establish the validity of the Relocation Agreement, as discussed above. Thus, MSG's first argument has no merit.

Second, courts have found that a claim for breach of an implied covenant of good faith and fair dealing is invalid when it is based on the same facts as the breach of contract. "A breach of the implied covenant of good faith and fair dealing cannot be advanced when the allegations underlying that claim are duplicative of the allegations supporting the breach of contract claim, as they are here." *Regency Of Palm Beach, Inc. v. QBE Ins. Corp.*, No. 08-81442-CIV, 2009 WL 2729954, at \*5 (S.D. Fla. Aug. 25, 2009); *see also Sun Life Assurance Co. of Can. v. Imperial Holdings Inc.,* No. 13-80385-CIV, 2016 WL 10565034, at \*5 (S.D. Fla. Sept. 22, 2016). The allegations supporting the claim for breach of good faith are that MSG required Griffin to use Katsman's services to obtain the work visa, and Katsman's mishandling of the visa process prevented Griffin from relocating to Miami. ECF No. [1] at ¶ 54. Further, Griffin is precluded from raising a new argument in his Response that MSG "knew [] Katsman would not provide satisfactory service" as Griffin did not raise this in the Complaint. *See Huls*, 437 F. App'x at 832. Griffin's breach of an implied covenant of good faith and fair dealing is invalid because Griffin makes the same allegations supporting his breach of contract claim.

Accordingly, Griffin fails to plausibly allege a breach of an implied covenant of good faith and fair dealing. MSG's Motion to Dismiss is granted on Count 2.

### C. Promissory Estoppel (Count 3)

Griffin alleges that he is entitled to damages under the doctrine of promissory estoppel. ECF No. [1] at ¶¶ 59-64. MSG argues that Griffin cannot assert a promissory estoppel claim because: (1) the Employment Agreement precludes any claim under promissory estoppel; (2) a truthful statement as to the present intention of a party concerning his future act cannot support a claim for promissory estoppel; and (3) promissory estoppel does not apply where a promise is not definite in time or term or reasonableness. ECF No. [13] at 11-12. Griffin responds that promissory estoppel is warranted because MSG promised to relocate Griffin, agreed to compensate Griffin for

his losses, and MSG "could expect Griffin to rely on the promise of the sponsorship before accepting the position." ECF No. [18] at 8-9. MSG replies that promissory estoppel is not an exception to the statute of frauds. ECF No. [19] at 9-10.

Griffin contends that MSG made several promises to Griffin from September 8, 2021 to January 14, 2023, that caused Griffin to reasonably rely on MSG and that Griffin relied on MSG's promises to his detriment. ECF No. [1] at ¶¶ 60-63. Promissory estoppel applies when "there is (1) a promise which the promisor should reasonably expect to induce action or forbearance, (2) action or forbearance in reliance on the promise, and (3) injustice resulting if the promise is not enforced." *DK Arena, Inc. v. EB Acquisitions I, LLC*, 112 So. 3d 85, 96 (Fla. 2013). Griffin asserts that injustice can only be avoided by enforcing these promises. *Id.* at ¶ 64.

The Court addresses MSG's arguments against promissory estoppel. First, the Employment Agreement should not preclude any claim of promissory estoppel because the Employment Agreement is a contract between Griffin and MSG-AUS — not MSG and Griffin, so it is not applicable here, as discussed above. Second, MSG argues truthful statements made in the present for future acts cannot be used to support promissory estoppel. MSG cites to *Remembrance Group, Inc. v. Centazzo*, No. 2:21-CV-675-JES-MRM, 2022 WL 1406673, at *6 (M.D. Fla. May 4, 2022) where the court stated that "'a truthful statement as to the present intention of a party with regard to his future act' cannot support a claim for promissory estoppel." (quoting *Rekal Co. v. PGT Indus., Inc.*, No. 8:13-CV-1433-T-33TGW, 2013 WL 5487370, at *6 (M.D. Fla. Sept. 30, 2013)). The quote comes from a 1952 case before the Supreme Court of Florida. *S. Inv. Corp. v. Norton*, 57 So. 2d 1, 3 (Fla. 1952).

In *Norton*, the Florida Supreme Court analyzed what the promisor was promising, not whether the promise was a truthful statement as to the present intent of the promisor concerning a

future act. *Id.* Moreover, in *Centazzo*, the court did not consider the party's truthful statement in its analysis of the promissory estoppel claim. 2022 WL 1406673, at *6. Rather, the *Centazzo* court focused exclusively on the vagueness and indefiniteness of the promise when it dismissed the promissory estoppel claim. *Id.* The same is true for *Rekal Co.*, where the court focused exclusively on the promise's indefiniteness and lack of substance when it dismissed the promissory estoppel claim. 2013 WL 5487370, at *6. None of the courts in *Norton*, *Centazzo*, and *Rekal Co.* considered the truthfulness of the promisor's statement when they analyzed the promissory estoppel claims. Should this Court accept MSG's reading of the quote, the doctrine of promissory estoppel would be rendered virtually meaningless as any party could claim that they truthfully meant the statement when they promised something.

Third, MSG argues that its alleged promises to Griffin are too ambiguous for promissory estoppel to apply. *See Centazzo*, 2022 WL 1406673, at *6 ("Promissory estoppel does not apply in situations where a promise is not 'sufficiently definite in time or term or reasonableness.'") (citation omitted). MSG allegedly agreed to promote Griffin with a salary and bonus, to sponsor visas for Griffin and his wife, and to compensate Griffin for his losses. There is nothing indefinite about MSG's promise to promote Griffin with a salary and bonus and to sponsor visas for Griffin and his wife if they worked with Katsman. Further, the Complaint alleges that Kozko promised that "MSG would compensate Griffin for his loss" suffered "because of MSG's failure to complete Griffin's transfer to Miami." ECF No. [1] ¶¶ 24, 27. Taking the Complaint as true, those allegations are sufficiently definite promises in time, term, and reasonableness to support a claim of promissory estoppel. Accordingly, Griffin has alleged sufficiently defined promises to sustain his promissory estoppel claim.[1]

---

[1] MSG does not argue that the elements of promissory estoppel are not met as to these promises, so the Court does not analyze whether they are.

Lastly, MSG argues that the statute of frauds should preclude promissory estoppel from applying when it sought a 15-month lease in Miami for Griffin and his wife because that shows their intention of completing performance beyond a year. ECF No. [1] at ¶ 15. *See Doe v. Roe*, 500 F. Supp. 3d 1319, 1326 (S.D. Fla. 2020), *aff'd*, No. 20-14456, 2022 WL 1447378 (11th Cir. May 9, 2022) ("Florida law is clear that promissory estoppel is not an exception to the statute of frauds."). The Eleventh Circuit has interpreted that "Florida's statute of frauds requires contracts that cannot be performed within a year to be in writing." *OJ Com., LLC v. Ashley Furniture Indus., Inc.*, 817 F. App'x 686, 690 (11th Cir. 2020); Fla. Stat. § 725.01. The applicability of the statute of frauds necessitates a review of the parties' intent to the agreement. *All Brand Importers, Inc. v. Tampa Crown Distribs., Inc.,* 864 F.2d 748, 750 (11th Cir. 1989) ("[Pursuant to] Florida law the intent of the parties with regard to the time of performance (not the possibility of contingent termination) is the key factor in determining whether an oral agreement is enforceable.").

Griffin responds that the statute of frauds should not apply because "all of MSG's promises, such as the relocation to Miami and reimbursement for Griffin's expenses, could be performed in under one year." ECF No. [18] at 7. Griffin's argument has merit because the Complaint does not allege any facts to support that MSG's promise to pay Griffin's lease was structured so that payments would extend beyond a year. Griffin's Complaint only states that "MSG applied for a 15-month corporate lease with "The Bozzuto Group for an apartment in Miami for Griffin and his wife." ECF No. [1] at ¶ 15. Moreover, "Kozko agreed that MSG would compensate Griffin for his loss." *Id.* at ¶ 27. Griffin's Complaint alleges that "[a]t all relevant times, MSG was in a position to fully perform, fulfill, and carry out the terms and conditions of the promises it made to Griffin." *Id.* at ¶ 61. The 15-month lease, absent additional facts, does not preclude Griffin from plausibly

alleging that the parties intended to complete the agreement within a year. Thus, the Court finds that the statute of frauds does not preclude enforcement of Griffin's promissory estoppel claim.

Accordingly, Griffin plausibly alleges a claim for promissory estoppel and the Motion is denied on Count 3.

### D. Breach of Fiduciary Duty (Count 4)

Griffin's Complaint alleges that MSG owed him a fiduciary duty and breached that duty when it hired Katsman. ECF No. [1] at ¶¶ 67-68. MSG contends that there cannot be a fiduciary duty stemming from a contractual obligation, and the mere existence of a contract is insufficient to establish a fiduciary duty among the parties to the contract. ECF No. [13] at 10-11; ECF No. [19] at 10-11. Griffin asserts that MSG owed him a fiduciary duty because there is a fiduciary relationship in contracts such as the Relocation Agreement. ECF No. [18] at 9. Griffin alleges that Kozko failed to disclose his longstanding relationship with Katsman, who he knew was incompetent, which later resulted in the mishandling of Griffin's visa petition. *Id.* at 9-10.

To establish a breach of fiduciary duty, a plaintiff must prove three elements: "(1) the existence of a fiduciary duty; (2) breach of that duty; and (3) damage proximately caused by the breach." *Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 958 (11th Cir. 2009) (citation omitted). The case law does not support a finding of a breach of fiduciary duty when the breach of fiduciary duty rests on the contractual relationship itself. In *Tulepan v. Roberts*, No. 14-CV-80574, 2015 WL 235441, at *13 (S.D. Fla. Jan. 16, 2015), the court stated that "[a]lthough an employee-employer relationship sometimes creates a fiduciary relationship, '[u]nder Florida law, a cause of action for breach of fiduciary duty will not lie where the claim of breach is dependent upon the existence of a contractual relationship between the parties.'" (citation omitted)). The *Tulepan* court noted that "[t]his is true because the duty is owed only as a result of the existence of the contract." *Id.* The Eleventh Circuit has found no breach of fiduciary duty exists when the duty arises pursuant

to a term in the contract. *See The Michael Titze Co. Inc. v. Simon Prop. Grp., Inc.*, 400 F. App'x 455, 461 (11th Cir. 2010) ("Titze contends that Lamar 'assumed certain extra-contractual duties' by agreeing to obtain permits to install and maintain a billboard, but that duty is a term of its contract with Lamar."). Like in *Titze Co.*, MSG's alleged breach of fiduciary duty rests solely on utilizing Katsman to oversee the visa process. ECF No. [1] at ¶ 68.

Accordingly, Griffin does not plausibly a claim for breach of fiduciary duty. MSG's Motion to Dismiss is granted on Count 4.

**CONCLUSION**

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1. Defendant's Motion to Dismiss, ECF No. [13], is **GRANTED** as to Counts 1, 2, and 4.

2. Defendant's Motion to Dismiss, ECF No. [13], is **DENIED** as to Count 3.

3. Defendant shall file an Answer no later than **November 6, 2024**.

**DONE AND ORDERED** in Chambers at Miami, Florida on October 24, 2024.

_____
**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to:

Counsel of Record