UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 24-cv-21929-BLOOM/Elfenbein

ZACHARY GRIFFIN,

    Plaintiff,

v.

MOTORSPORT GAMES INC.,

    Defendant.

_____/

**DEFENDANT'S STATEMENT OF MATERIAL FACTS**

 

**AXS LAW GROUP, PLLC**
2121 NW 2nd Ave, Suite 201
Miami, Florida 33127
Telephone: (305) 297-1878

By: */s/ Alice Ferot*
Jeffrey W. Gutchess, Esq.
Florida Bar No. 702641
jeff@axslawgroup.com
Alice Ferot, Esq.
alice@axslawgroup.com
Florida Bar No. 101504
eservice@axslawgroup.com

Defendant Motorsport Games Inc. ("MSGM"), pursuant to Local Rule 56.1, files this Statement of Material Facts, which accepts as true certain allegations made by Plaintiff Zachary Griffin ("Griffin") as well as some of his testimony for the purpose of its Motion only.

## GRIFFIN'S EMPLOYMENT

1. Plaintiff Griffin an Australian citizen. Comp. DE 1 ¶1.

2. MSGM, a U.S. corporation, with its principal place of business in Miami, Florida, is a racing videogames developer, publisher, and e-sports ecosystem provider of official motorsport racing series throughout the world. DE 1 ¶¶2; 5.

3. On March 16, 2021, Motorsport Games Australia Pty Ltd ("MSGM Australia"), a subsidiary of MSGM, hired Griffin as "Director of Studio." **DE 42-1,** Griffin Tr. 21:2-12; 22:16-24:33-, **DE 42-5** Griffin's Employment Agreement at pp. 1; 4; 15; and 19 of 22**.**

4. Griffin's role was to build a studio in Australia. **DE 42-1**, Griffin Tr. 21:6-11.

5. Griffin's total compensation was $240,000, consisting of $170,000 USD base plus three bonuses totaling $70,000. **DE 42-5**, Employment Ag. p. 19 of 22; **DE 42-1**, Griffin Tr. 24:5-12.

6. That was the highest compensation at MSGM Australia. **DE 42-1**, Griffin Tr. 24:13-15.

7. During his employment with MSGM Australia, Griffin received regular paystubs until his last day as an employee, on November 1, 2023. **DE 42-6**, Paystubs issued by MSGM Australia.

8. Griffin's employment agreement contained a "Entire Agreement Clause," which stated as follows:

> 19.8   Entire agreement
>
> This Agreement contains the entire agreement between the parties with respect to the subject matter of this Agreement and supersedes and prevails over any prior agreement covenant or understanding (if any) between the parties.

**DE 42-5**, Employment Ag. p. 15 of 22; Ex. A, Griffin Tr. 24:16-26:1.

9. Griffin's employment agreement also contained a clause requiring that travel and expenses be approved by MSGM Australia prior to bookings for reimbursement:

2

> Employment Agreement
> **Motorsport Games Australia Pty Ltd**
>
> 4. **TRAVEL AND EXPENSES**
>
> 4.1   Any work-related travel must be approved by the Employer in writing prior to bookings or other arrangements being made.
>
> 4.2   Any necessarily incurred (and approved) reasonable travel, accommodation or other expense reimbursement will be made after you provide to the Employer satisfactory evidence of the expense being incurred by you in the performance of your duties.

**DE 42-5**, Employment Ag. p. 19 of 22; **DE 42-1**, Griffin Tr. 26:14-27:13.

10. Griffin never executed an employment contract with MSGM. **DE 42-1**, Griffin Tr. 27:14-17.

11. Griffin never received any compensation or paystubs from MSGM. **DE 42-1**, Griffin Tr. 28:1-5. ("Q: Did you receive any compensation that is not reflected in these paystubs? And I'm talking about compensation, not reimbursement of expenses. A Compensation -- not to my knowledge."); *id.,* Griffin Tr. 28:9-11 ("Q Did you ever receive any paystubs from Motorsport US? A No.").

12. When traveling for business during covid in August 2021, Griffin declared to the Australian Border Force that his employer was MSGM Australia. **DE 42-1**, Griffin Tr. 32:12-33:12. ("Q: And the letter says that you are a full-time employee of and director of Motorsport Games Australia. Is that what you see? A Yes." . . . "Q And the information is truthful in this letter, right? A Yes. Q Okay. Because otherwise you would face sanctions, right, with --A I believe so.").

13. Sometimes around August 2021, Griffin and Dmitry Kozko, MSGM's CEO, began orally discussing Griffin's possible relocation to the United States. **DE 42-1**, Griffin Tr. 33:13-34:25.

14. On September 9, 2021, Amanda LeCheminant, MSGM general counsel, introduced Mark Katsman, an immigration attorney, to Griffin to assist Griffin with applying for his visa. **DE 42-1**, Griffin Tr. 36:17-37:13.

15. Griffin never paid for Katzman's services. **DE 42-1**, Griffin Tr. 38:2-4.

16. On September 13, 2021, following a call between Katzman and Griffin, Griffin shared with Katzman his background information in support of preparing his visa application. **DE 42-1**, Griffin Tr. 38:18-40:3; **DE 42-10,** Sept. 20, 2021 emails between Katsman and Griffin p. 2.

17. On September 20, 2021, Kastman responded by stating that Griffin potentially qualified for two visa options, L-1 Intracompany transferee or E-3 Specialty Occupation Workers

visas, and went on to explain the requirements and procedure for each visa application. **DE 42-1**, Griffin Tr. 38:18-40:3; **DE 42-10,** Sept. 20, 2021 emails between Katsman and Griffin p. 1.

18. Around that time, Griffin agreed to pursue the process for potentially relocating to Miami, and on October 6, 2021, in connection with the relocation, Jack Griffin, MSGM's VP of Studios announced that Zachary Griffin was promoted to "Director of Technology." **DE 42-1**, Griffin Tr. 40:16-41-24; **DE 42-11,** Oct. 6, 2021 email from Jack Griffin p. 2**.**

19. The next day, Griffin's employment agreement with MSGM Australia was amended to reflect his new role as MSGM Australia's "Director of Technology." **DE 42-1**, Griffin Tr. 40:16-41-24; **DE 42-12,** Variation of Employment Agreement Letter**.**

20. The Letter stated "Please be advised that all other terms and conditions relating to your Employment Agreement dated March 16, 2021 remain the same." **DE 42-1**, Griffin Tr. 43:2-16; 44:10-12; **DE 42-12**, Variation of Employment Agreement Letter.

21. On October 12, 2021, three weeks after Katsman had laid out the potential visa options available to Griffin, Griffin emailed Katsman to advise him that he preferred to pursue the L-1 visa option because it was a quicker path for a green card. **DE 42-1**, Griffin Tr. 44:25-45:22; **DE 42-13** Oct. 12, 2021 email to Katzman p.1.

22. In response, on October 14, 2021, Katzman sent Griffin clarifications regarding the L-1 visa. **DE 42-1**, Griffin Tr. 47:14-48:4; **DE 42- 14,** Griffin Oct. 14, 2021 response from Katzman.

23. Around November 1, 2021, Francesca Holmes, Griffin's fiancée, gave her notice of termination to her employer in advance of Griffin's pursuit of relocating to Miami, even though neither Griffin nor Holmes had applied for a visa yet and despite the fact that they would not relocate until April 2022. **DE 42-1**, Griffin Tr. 54:21-56-3; **DE 42-16,** Nov. 1, 2021 Teams message from Griffin to Kozko.

24. On December 7, 2021, Griffin told Kozko that he planned to book a flight for early January, would stay in Miami until mid-February, then "head back to Australia to get married before coming back early March for good." **DE 42-17,** Dec. 7, 2021 email from Griffin to Kozko**.**

25. In January 2022, Griffin travelled to Miami under a visa waiver program (ESTA). **DE 42-1**, Griffin Tr. 58:10-59-11.

26. Indeed, Katsman had advised him that he needed to wait until his first work anniversary with MSGM Australia, i.e. March 16, 2022, to apply for the L-1. **DE 42-1**, Griffin Tr.

58:24-59:6 ("Q Okay. So you came under a visa waiver program, and . . . was it your plan to change then to an L-1? A It was -- not -- not during that trip, but we were informed, . . ., that we could file a change of status once in the U.S. After the 16th of March, that first year anniversary.").

27. Griffin's January 2022 trip to Miami was not his permanent relocation. **DE 42-1**, Griffin Tr. 64:14-19 ("Q Okay. Do you remember if you traveled with your fiancée, Ms. Holmes? A No, I did not. Q You did not, so that was not your permanent relocation to Miami; is that correct? A That's correct.); **DE 42-1**, Griffin Tr. 60:11-13 ("Q Are you looking forward to move to Miami then? A Yes.).

28. On January 4, 2022, three months after first being introduced to MSGM's immigration counsel, Griffin asked him what documentation he should gather to apply for the L-1 visa. **DE 42-19,** Jan. 4, 2022 email from Griffin to Katsman**; DE 42-1**, Griffin Tr. 62:13-17 ("Q . . . in this e-mail you are asking for the documents that are needed, so you didn't think you knew what documents were needed; is that correct? A I was just asking for, for clarification.").

29. On January 6, 2022, Kastman responded with the list of documents needed to file the application. **DE 42- 20,** Jan. 6, 2022 email from Katsman to Griffin**.**

30. On February 17, 2022, Dara Malavolta (now Dara Acker), who was in charge of the Human Resources, emailed Griffin to inquire as to whether he had "completed what [he] need[ed] with [his] lawyer" and to remind him that "when [Griffin] come[s] here to work at some point [she] will need to terminate [him] under the [Australian] company and hire [him] through MSG Inc. and complete[sic] the US right to work paperwork." **DE 42-22,** Feb. 17, 2022 email from Malavolta to Griffin; **DE 42-1**, Griffin Tr. 64:23-67:02. Based on advice of MSGM's immigration counsel, Griffin responded that he could not apply for a visa until March 16, 2022, his first work anniversary with MSGM Australia. **DE 42-22,** Feb. 16, 2022 email from Griffin to Malavolta.

31. On February 22, 2022, Griffin and Holmes got married. **DE 42-1**, Griffin Tr. 130:13-17. Part of the wedding costs were paid by the parents of Griffin's wife, who did not expect to be reimbursed. **DE 42-1,** Griffin Tr. 138:5-16 ("Q Did Francesca pay part of the wedding? A Her family and, yes. . . .Q Okay. Do they expect to be reimbursed? A It  was -- I don't believe so. I believe it was their contribution to, to us as a couple.").

32. On April 12, 2022, while still not having submitted any visa application, both Griffin and his fiancée Holmes moved to Miami. **DE 42-1**, Griffin Tr. 64:23 to 67:02 ("Q So April

5

you moved with Ms. Holmes. A That's correct, yes, we both flew over together. . . Q Okay. And then you're, you're relocating permanently. A That's correct."); **DE 42-1**, Griffin Tr. 69:1-4 ("Q - Okay. At the time had you filed your visa application? A No."); *see also* **DE 42-24,** e-ticket itinerary**.**

33. In April 2022, Griffin applied for a 15-month corporate lease in Miami on behalf of MSGM, but the application was rejected due to MSGM financial difficulties. **DE 42-25,** Lease application**; DE 42-1**, Griffin Tr. 69:14 -4 ("Q -Okay. At the time had you filed your visa application? A No.").

34. Soon after, Griffin reapplied individually, and was able to enter into the 15-month lease starting in May 2022 and ending in August 2023. **DE 42-1**, Griffin Tr. 71:6 to 74:6; *see also* generally **DE 42-26,** Griffin Second Lease Application**; DE 42-27,** Lease ¶3**.**

35. On April 27, 2022, Griffin emailed Katzman requesting that they start the visa application. **DE 42-1**, Griffin Tr. 87:1-3 ("Q Okay, so you want to start the application process. A Yes."); **DE 42-29,** Apr. 27, 2022 email.

36. In response, Katzman resent Griffin the same list of documents required that he had sent almost four months before. **DE 42-1**, Griffin Tr. 90:3-13; **DE 42-30,** May 4, 2022 Email Chain between Griffin and Kaztman**.**

37. Although Griffin had gathered some of the documents for the visa application, he had never sent any to his immigration counsel. **DE 42-1**, Griffin Tr. 90:22-25 (Q So why you didn't send them at the time? **. . .** A Because we were to start the, the process.").

38. On May 6, 2022, Malavolta sent a letter to Griffin amending his employment agreement with MSGM Australia as follows: a $288,000 total compensation consisting of $240,000 base salary plus a $48,000 bonus paid in two installments. **DE 42-1**, Griffin Tr. 90:3-13; **DE 42-31,** May 6, 2022 Employment Amendment Letter**;** *see also* **DE 42-31.** May 6, 2022 To Whom It May Concern Letter reflecting the same**.** This represented a $48,000 increase in his total compensation and the highest compensation at MSGM Australia. **DE 42-1**, Griffin Tr. 96:4-6.

39. The parties agreed to raise Griffin's compensation for relocation and amended his contract with MSGM Australia . **DE 42-1**, Griffin Tr. 92:14 to 93:3.

40. In June 2022, MSGM starts sending documents to Katzman in support of Griffin's visa application. **DE 42-1**, Griffin Tr. 97:6-21; **DE 42-33,** June 8, 2022 Email from Lecheminant**.**

41. By December 2022, Griffin had become frustrated with Katzman because he

believed that Kaztman mistakenly advised him that he needed one full year of before he could start his visa process. **DE 42-1**, Griffin Tr. 98:19 to 99: 5.

42. On December 30, 2022, Griffin sent to Kozko an engagement letter and wire instructions to retain the services of a new immigration firm, Cammisal Markel, which Griffin chose to replace Katzman as well as a spreadsheet of "the money …lost since moving**."** **DE 42-1**, Griffin Tr. 97:6-21; **DE 42-34,** Dec. 30, 2022 Email from Griffin to Kozko**.**

43. Despite the holidays, within 10 days, MSGM paid Cammisa Markel's retainer fee in full. **DE 42-1**, Griffin Tr. 100:16-21; **DE 42- 35,** Jan. 9, 2023 Email from Jason Potter to Griffin**.**

44. At that point, Griffin had decided to apply for an E-3 visa and no longer an L-1. **DE 42-1**, Griffin Tr. 102:16-18 ("Q Okay. So you were going to go with the E-3 option with that new immigration firm. A Yes.").

45. Ultimately, the visa petition was never filed and there are no records of any communications between Griffin and anyone at Cammisa Markel after Griffin had retained the law firm. **DE 42-1,** Griffin Tr. 124:15-16 ("A Nothing. Nothing. They didn't -- again, we -- we -- I -- the petition was never filed.").

46. On January 4, 2023, Griffin sent a letter to Kozko complaining of what he refers to his "losses" in connection with the relocation, including wedding costs, tax difference, and living costs. **DE 42-1**, Griffin Tr. 132:10 to 139:17; **DE 42-36,** Jan. 4, 2023 Email from Potter to Griffin.

47. During the course of January 2023 and in response to Griffin's requests for financial assistance, Griffin and Kozko started renegotiating Griffin's employment agreement with MSGM Australia, including his compensation and bonuses. **DE 42-38 ,**Feb. 15, 2023 email chain between Kozko and Griffin.

48. Griffin and Kozko did not reach an agreement. *Id;* **DE 42-1**, Griffin Tr. 144:13-16 ("Q Okay. And in response you do not accept his proposal. A No."); *id*. 146:6-21; *id. 148:17-18* ("A Perhaps we're at, at an impasse with the timing as to these financial metrics."); *Id.* 149:4-16.

49. The negotiations did not include reimbursement of any payment of his expenses incurred in connection with the potential relocation. *Id.*; **DE 42-1**, Griffin Tr. Griffin 144:3-8.

50. To be reimbursed by MSGM, expenses needed to be approved, either orally or in writing. **DE 42-1**, Griffin Tr. 142:5-11.

51. On May 22, 2023, MSGM Australia made an $11,900 advance payment on Griffin's bonus normally due on June 30, 2023. **DE 42-1**, Griffin Tr. 150:4-17; **DE 42-42,** May

22, 2023 Email from Potter to Griffin.

52. On June 21, 2023, Griffin sent an email to Potter "outlining [his] circumstances" and recapping the history of communications between him and Kozko. **DE 42-43,** Jun. 21, 2023 email from Griffin to Potter pp.1 and 1; 7-23 of 23.

53. On paragraph 94 in the table, Griffin took notes of a *January 11, 2023 conversation* with Kozko in which, according to Griffin, Kozko said: "You're asking for stuff we never agreed on. We never agreed it would be company's liability to cover these items. Why would you do this?" *Id.* at p. 21 of 23. He continued: "So I think it is unfair to keep referencing your sustaining that loss. That is not the loss that I believe [sic] the company cost. So there a big disagreement we have here…theirs [sic] is no way the company's going to have a half a million dollar cost on you. You would be in every disclosure if that was the case. So before we even agreed, I would have had to jump through a whole bunch of legal hoops and double checks." *Id.* at p. 22 of 23. "I get your logic, but I can't agree from a company's perspective. There's no way I'm going to send a check and tell Jason, accounting and the auditors that this check for Zach is for the delta he would have incurred if he had 21% tax rate in Florida. They will look at me like I'm an idiot, I can't do that." *Id.* Kozko also tells Griffin that he can stay in Australia. *Id.*; **DE 42-1** Griffin Tr. 165:13-14 ("Q -- 2023, he's basically telling you you no longer have to be in Miami. A He's saying you're more than welcome to stay there if you want.").

54. In early August, 2023, Potter approved Griffin's request for reimbursement from MSGM of three nights of hotel prior to his departure to Australia. **DE 42-1**, Griffin Tr. 170:4-19; **DE 42-45,** Aug. 11, 2023 Email from Potter to Griffin. Potter also approved the reimbursement of Griffin's and his wife's return flights to Australia but not a temporary accommodation in Melbourne and not the remainder of the Miami lease if he returned prior to the lease term. **DE 42-45,** Aug. 1, 2023 Email from Potter to Griffin; **DE 42-1**, Griffin Tr. 166:10 to 167:15.

55. On August 16, 2023, Griffin moved back to Australia. **DE 42-46,** I-94 Travel History**.**

56. On November 2, 2023, MSGM Australia notified Griffin that he was terminated effective November 3, 2023 because his role had become redundant. **DE 42-1**, Griffin Tr. 170:4-19; **DE 42-45,** November 2, 2023 Email from Acker to Griffin pp. 1-3**.**

57. Over the course of his employment, MSGM paid for approximately $100,000 of business expenses submitted by Griffin, including $42,000 to cover his Miami lease. **DE 42-1**,

Griffin Tr. 183:18 to 184:21; **DE 42-50,** Excel spreadsheet reflecting Griffin's paid expenses and supporting documentation**.**

## THE INSTANT LITIGATION

58. On May 20, 2024, Griffin filed a complaint against MSGM alleging the following counts: Breach of Contract (Count I); Breach of Covenant of Good Faith and Fair Dealing (Count II); Promissory Estoppel (Count II); and Breach of Fiduciary Duty (Count V). Comp. **DE 1.** On October 24, 2022, this Court dismissed all counts except the promissory estoppel count. **DE 22**.

59. As part of his damages, Griffin requests the difference between what he spent by relocating in Miami versus what he would have spent in Australia, had he not moved to Miami. **DE 42-52,** Spreadsheet attached to Initial Disclosures at p. 3. Griffin includes expenses such as tax bracket difference, cost of his wedding, loss of his wife's income, among other expenses. *Id.*

## THE ORAL PROMISES[1]

60. The sole remaining promissory estoppel count, as alleged, only states that MSGM "made several unambiguous, definite, and substantial written and oral promises to Griffin, as detailed above" without specifying which ones. DE 1 ¶60.

61. However, Griffin testified that MSGM made two oral promises.

62. The first oral promise was made around September 8, 2021 and was a promise to relocate to Miami. **DE 42-1**, Griffin Tr. 105:17-20 ("Q Mr. Griffin, what exactly was the promise that Dimitri Kozko made? A So we agreed that I would relocate to the Miami office"); DE 1 ¶8.

**63.** Griffin and Kozko intended that his relocation be permanent. **DE 42-1**, Griffin Tr. 68:11-13("Q Okay. And then you're, you're relocating permanently. A That's correct."); *Id*. 68:23-25 ("Would that be the flight you took with Ms. Holmes to move permanently --A Yes."); *Id*. 74:21-25 ("Q And when you entered into this lease you thought you were going to be in Miami on a permanent --A That's correct. Q -- basis. Okay. So you thought you would stay for the fifteen months [of the lease]"); *see also* Jan. 5, 2022 email from Kozko to Griffin forwarding Teams message from Kozko to Hood, **DE 42-47** ("I asked him to come, and he's moving here permanently"); **DE 42-53** Beckley Tr. Tr. 23:6-11 ("Q And the move to Miami . . .was a permanent relocation. It wasn't a temporary thing, was it? . . .10 A My understanding is that it was

---

[1] As noted above, MSGM has accepted as true certain allegations made by Griffin in his Complaint or statements made during his testimony. However, MSGM denies that oral promises were ever made to Griffin. This is further supported by the fact that none of the thousands of pages of records and communications produced in this case mention or discuss these promises.

going to be a permanent relocation.").

64. Griffin alleges that in exchange for this permanent relocation, MSGM would provide the following:

- A $240,000 base compensation plus $70,000 as a guaranteed bonus **DE 42-1**, Griffin Tr. 105:20-24;
- A promotion as Director of Technology; *id*. 114:5-11;
- Medical care for Griffin and his wife under MSGM's health care plan; *id*. 105:25 to 106:5;
- sponsorship of Griffin and his wife's visa with the use of MSGM immigration attorney Kaztman; *id*. 106:6-8;
- financial guarantees until Griffin would have a credit rating; *id*.106:8-9; and
- coverage of Griffin's accommodation costs until the obtention of his visa; *id*. 106:9-10; *see also* Ex. P, table at ¶ 4 p. 7 of 23.

*See also* DE 1 ¶9-10.

65. The September 2021 promise did not cover the reimbursement of any expenses. *Id*. 117:7-12 ("Q Okay. And that's September 2021.A Yes. Q So was a promise made regarding a particular expense? A Other than what I've stated there were no particular [expense,] that was their terms.").

66. Griffin admitted to receiving the $240,000 base compensation. *Id*. 119:12-17 ("A So the $240,000.00 base I received.").

67. Griffin also agreed to reduce the $70,000 bonus to $48,000 to be paid in two payments of $24,000, one of which would be received earlier on. *Id.*119:17 to 120:5 ("Q Okay. And you agreed to that., A I agreed to the, to that lower amount"); *see also* **DE 42-31,** May 6, 2022 Employment Amendment Letter.

68. Griffin also obtained the new role as Director of Technology. Both the title and his new duties were "consistent" with what he had "envisioned had the time [MSGM made] the promise." **DE 42-1**, Griffin Tr. 122:5 to 123-23.

69. As to the sponsorship, MSGM [fulfilled its promise] to provide immigration services through Katzman and also paid for the law firm, Cammisa Markel, that Griffin chose to represent him for the visa application. **DE 42-1**, Griffin Tr. 38:2-4; *id*. 97:6-21; **DE 42- 34**, Dec. 30, 2022 Email from Griffin to Kozko.

70. As to medical coverage, Griffin alleges that MSGM promised to give Griffin and his wife what was standard "for U.S employees." **DE 42- 35, Griffin Tr.** 120:6 to 121:15.

71. However, MSGM and Griffin never discussed if Griffin and his wife would receive

medical coverage from MSGM before Griffin would become a US employee. **DE 42- 1**, Griffin Tr. 120:19 to 121:7 ("Q Right, after you received the visa. A Well, that wasn't -- that wasn't discussed.").

72. Finally, Griffin testified that he does not recall requesting any guaranty from MSGM that MSGM refused to provide. **DE 42- 1**, Griffin Tr. 124:4-8.

73. The second oral promise was on October 21, 2022, when Kozko agreed to cover certain of Griffin's relocation expenses. **DE 42- 1**, Griffin Tr. 127:16 to 128:8; **DE 1 ¶27**.

74. However, Griffin's own notes--which he qualifies as "quite accurate"-- of the conversation in question, *id.* 162:1-3, only show that they agreed to Griffin's compensation, but not as to any reimbursement of his relocation expenses, which Griffin still had to "submit" for approval. **DE 42- 43**. ¶72 of the table, p. 17 of 23; **DE 1 ¶27**.

75. Nonetheless, Kozko did agree to cover the legal fees for Cammisa Markel's services, *id.*, and MSGM paid those expenses. **DE 42- 35**, Griffin Tr. 164:13-18; **DE 1 ¶27**.

76. However, by January 11, 2024, Kozko made it very clear that he was not going to pay the expenses requested by Griffin. **DE 42- 1**, Griffin Tr. 160:8-11 ("Okay. So by January 11th you know [Kozko] doesn't want to reimburse this, the stuff you're asking, right? A Well, he didn't want to"). [Kozko also let Griffin know that he could go back to Australia. *Id.* ; **DE 1 ¶36**.

77. Between mid-October 2022, when Griffin alleges that Kozko made the second promise, to January 2023, when Kozko broke the second promise, Griffin does not recall to have done *any* act in reliance of the promise. **DE 42- 1**, Griffin Tr. 128:20 to 129:23 ("Q So from mid-October 2022 to January 2023 what did you do in reliance of this promise to cover your losses? A What do you mean by that? Q Did you rely on this promise to change anything in your situation? A I don't recall.").

Respectfully submitted,

**AXS LAW GROUP, PLLC**
2121 NW 2nd Ave, Suite 201
Miami, Florida 33127
Telephone: (305) 297-1878

By: */s/ Alice Ferot*
Jeffrey W. Gutchess, Esq.

11

Florida Bar No. 702641
jeff@axslawgroup.com
Alice Ferot, Esq.
alice@axslawgroup.com
Florida Bar No. 101504
eservice@axslawgroup.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on March 19, 2025, all parties of record were served via filing of the above Motion on the CM/ECF system.

                                                               */s/ Alice Ferot*
                                                                Alice Ferot