**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**Case No. 24-cv-21929-BLOOM/Elfenbein**

ZACHARY GRIFFIN,

      Plaintiff,

v.

MOTORSPORT GAMES INC.,

      Defendant.

_____/

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

In March 2021, Plaintiff Zachary Griffin signed an exhaustive written employment agreement governing the terms of his employment with nonparty Motorsport Games Australia Pty Ltd. ("MSGM Australia"), before his employment was ultimately terminated in November 2023. There is no merit to his lawsuit seeking damages against Defendant Motorsport Games Inc. ("MSGM")—MSGM Australia's parent company—based upon the existence of any purported oral employment agreements. In October 2024, this Court dismissed all of Plaintiff's claims, except for one. *See* DE 22. Now, because there are no material facts supporting Plaintiff's sole remaining claim for promissory estoppel, final summary judgment is warranted.

In short, Plaintiff's sole remaining claim for promissory estoppel alleges that MSGM—his former employer's parent company—supposedly made two oral promises over and above the terms of his March 2021 written employment agreement with Motorsport Australia. These alleged oral promises are neither clearly identified in the complaint nor corroborated by any objective evidence in the record, other than Plaintiff's conclusory assertions. But, according to Plaintiff, they entitle him to recover preposterous damages, including the cost of his wedding ceremony; the income tax

difference between Florida and Australia; and other expenses supposedly incurred by Plaintiff's wife, a foreign nonparty whose rights Plaintiff has no standing to enforce.

As for the alleged first oral promise in September 2021, Plaintiff alleges that MSGM agreed to give him a *permanent* promotion and increase in salary in exchange for his *permanent* relocation from Australia to Miami. But even if MSGM had made such a promise—which MSGM did not do—it would not be capable of performance within a year and is thus barred by the statute of frauds. *Butterworth v. Lab. Corp. of Am. Holdings*, 581 Fed. Appx. 813, 820 (11th Cir. 2014).

As for the purported second oral promise in October 2022, Plaintiff alleges that MSGM agreed to cover certain expenses associated with his relocation from Australia to Miami. But even if MSGM had made such an additional, independent promise—which MSGM did not do—it was repudiated within three months and did not result in any detrimental reliance as a matter of undisputed fact and settled law. *Pinnacle Port Community Ass'n, Inc. v. Orenstein,* 872 F.2d 1536, 1543 (11th Cir.1989).

## LEGAL STANDARD

"Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986). Summary judgment should be granted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The parties may support their positions by citations to materials in the record, including depositions, documents, affidavits, or declarations. *See* Fed. R. Civ. P. 56(c). "A factual dispute is 'material' if it would affect the outcome of the suit under the governing law, and 'genuine' if a reasonable trier of fact could return judgment for the non-moving party."

*Miccosukee Tribe of Indians of Fla. v. United States*, 516 F.3d 1235, 1243 (11th Cir. 2008) (citing

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986)).

The moving party shoulders the initial burden of showing the absence of a genuine issue

of material fact. *Shiver v. Chertoff*, 549 F.3d 1342, 1343 (11th Cir. 2008). The moving party can

either (1) produce evidence negating an essential element of the non-movant's claim and/or (2)

show that the non-movant lacks evidence of an essential element to carry its ultimate burden of

persuasion at trial. *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos, Inc.*, 210 F.3d 1099, 1105 (9th

Cir. 2000).

Once the defendant meets these requirements, the burden then shifts to the plaintiff to set

forth specific facts establishing that there is a genuine issue for trial. *Matsushita Elec. Indus. Co.*

*v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Accordingly, the non-moving party must produce

evidence, going beyond the pleadings, and by its own affidavits, or by depositions, answers to

interrogatories, and admissions on file, designating specific facts to suggest that a reasonable jury

could find in the non-moving party's favor. *Shiver*, 549 F.3d at 1343.

The mere existence of a scintilla of evidence in support of the plaintiff's position will be

insufficient to withstand a motion for summary judgment. *Anderson*, 477 U.S. at 252. "If the

evidence is merely colorable, or is not significantly probative, summary judgment may be granted."

*Id*. at 249-50 (internal citations omitted).

A court will not, "in the absence of any proof, assume that the non-moving party could or

would prove the necessary facts." *Lujan v. National Wildlife Federation*, 497 U.S. 871, 888 (1990).

Instead, a plaintiff must establish sufficient evidence in his favor so that a reasonable jury could

return a verdict in his favor. *Haves v. City of Miami*, 52 F.3d 918, 921 (11th Cir. 1995). Further,

the non-moving party may not simply rest on pleadings or allegations to satisfy his or her summary

judgment burden, but must designate evidence that indicates there is a genuine issue for trial. *Celotex Corp.*, 477 U.S. at 324.

## FACTUAL BACKGROUND

The terms of Plaintiff's employment relationship with one of MSGM's subsidiaries—MSGM Australia—are governed by an exhaustive written employment agreement, as this Court noted in its Order dismissing all of Plaintiff's claims except for a single count asserting a claim for promissory estoppel. DE 22. Even if MSGM had made any additional so-called oral promises to Plaintiff, there is no genuine dispute of material fact that those promises are not enforceable and did not cause any recoverable damages as a matter of law.

Although MSGM denies making a single oral promise to Plaintiff at any time at all, the complaint admits that any alleged promises *only* could have been made between September 8, 2021 and January 14, 2023. *See* DE 1 at ¶ 60. That is, by January 2023, Plaintiff alleges that MSGM had "reneged" on its most recent so-called oral promise, and by February 2023 any further negotiations between the parties had "stalled." DE 1 at ¶ 36 (MSGM "reneged"); *id*. at ¶¶ 38-39 (negotiations "stalled"). *Accelerant Specialty Ins. Co. v. Klotz*, No. 22-CV-62292, 2024 WL 4003729, at *3 (S.D. Fla. July 26, 2024*), report and recommendation adopted sub nom. Accelerant Specialty Ins. Co. v. Klotz*, No. 0:22-CV-62292, 2024 WL 4523826 (S.D. Fla. Oct. 18, 2024) ("[F]actual assertions in pleadings and pretrial orders are considered to be judicial admissions conclusively binding on the party who made them.")

Other than that lone point of specificity, however, the complaint's allegations are hazy with respect to the details of the "several unambiguous, definite, and substantial written and oral promises" that MSGM supposedly made to Plaintiff. DE 1 at ¶ 60. For instance, the complaint does not specify how many oral promises were supposedly made. Nor does the complaint specify

"the terms and conditions" of those oral promises; how Plaintiff "act[ed] in reasonable reliance" on those oral promises; or the "numerous expenses" Plaintiff incurred. DE 1 at ¶¶ 61-63.

In his deposition, however, Plaintiff clarified that the "several" oral promises alleged in the complaint in fact consisted of merely two distinct promises, which MSGM denied ever making.[1] There is no substantial, objective record evidence corroborating those so-called oral promises—which are not enforceable, which did not induce any detrimental reliance, and which thus did not give rise to any recoverable damages as a matter of law.

**I.    There Is No Genuine Dispute of Material Fact that the First So-Called Oral Promise Is Unenforceable and Does Not Give Rise to Recoverable Damages**

According to Plaintiff's deposition testimony, the first of MSGM's two alleged oral promises was made on September 8, 2021. Statement of Facts ("SOF") at ¶¶62-65. Specifically, Plaintiff testified that Motorsports Games orally promised to provide the following benefits in exchange for him permanently relocating from Australia to Miami:

- Annual $240,000 salary as base compensation plus $70,000 as a guaranteed bonus;

- A promotion to Director of Technology;

- Medical care for Plaintiff and his wife under MSGM's health care plan;

- Sponsorship of Plaintiff's and his wife's visa with the use of MSMG's immigration attorney;

- Financial guarantees until Plaintiff obtained a credit rating; and

- Accommodation costs until Plaintiff obtained his visa."

SOF at ¶ 63 (citing Pl.'s Dep. Tr. at 105 ("[W]hat exactly was the promise that [was] made?")).

---

[1] Griffin allegedly took notes of oral communications between him and Kozko, which he compiled in a table attached to a demand letter to induce a settlement. SOF at ¶¶ 52-53. Undersigned counsel asked in discovery for all notes and other evidence corroborating the incidents and events listed, to which Griffin insisted, including in open Court, that nothing additional existed.

A.    *There Is No Genuine Dispute of Material Fact that the First So-Called Oral Promise is Barred by the Statute of Frauds*

While MSGM denies making any oral promises to supplement the terms of Plaintiff's written employment agreement or induce his relocation from Australia to Miami, Plaintiff alleges an oral promise that accompanied a *permanent* relocation, *permanent* promotion, and *permanent* increase in compensation. Accordingly, by its terms, this so-called oral promise is barred by the statute of frauds because it could not be—and was not intended to be—performed within a year.

Specifically, according to Plaintiff's deposition testimony, MSGM supposedly made an oral promise based upon his "relocating permanently" from Australia to Miami. SOF at ¶ 63 (citing Pl.'s Dep. at 68 ("Q Okay. And then you're, you're relocating permanently. A That's correct."); Griffin Dep. 68:23-25 ("Would that be the flight you took with Ms. Holmes to move permanently— A Yes."); Griffin Dep. 74:21-25 ("Q And when you entered into this lease you thought you were going to be in Miami on a permanent— A That's correct. Q -- basis. Okay.")); SOF at ¶ 63 MSGM Dep. Tr. 23:6-11 ("Q And the move to Miami . . .was a permanent relocation. It wasn't a temporary thing, was it? . . .10 A My understanding is that it was going to be a permanent relocation.").

Near-contemporaneous emails sent long before the parties' dispute and litigation likewise reflect that MSGM's CEO "asked [Plaintiff] to come" to Miami, "and he's moving here permanently," albeit without implying the existence of any additional oral promises. SOF at ¶ 63 DE 42-47 (citing Jan. 5, 2022 email from Kozko to Griffin).

The record also reflects that any other so-called oral promises were necessarily linked to permanent promotions and increased compensation terms that were similarly intended to be permanent and not capable of completion within a year. For instance, the parties only dispute whether Plaintiff's promotion and increased compensation was part of a *quid pro quo* that formed an oral promise. But, the parties do not dispute that Plaintiff's promotion was permanent, *see* SOF at ¶¶18-19

(citing Variation of Employment Agreement Letter ("Your job title has been changed to Director

of Technology . . .as of October 4th, 2021.")); as was his increased compensation. *See* SOF at ¶ 38

(citing to Employment Amendment Letter amending remuneration without any time restriction).

Thus, to the extent that Plaintiff's promotion and increased compensation were part of an alleged

oral promise, they were not intended to expire within a year for purposes of the statute of frauds.

Plaintiff also expressed his preference for an L-1 visa because it "provided a more

straightforward pathway" to a permanent residency, SOF at ¶ 21, and stated to Kozko that he would

get married in Australia before "coming back early March *for good*." SOF at ¶24 (emphasis added).

Also, both Plaintiff and MSGM understood at the time of the alleged promise, based on advice of

immigration counsel, that Plaintiff could not apply for a visa before March 19, 2022, his first work

anniversary, and therefore the process and relocation would take a number of months, if not years,

and depended on the fulfillment of a series of contingencies, such as the issuance of a visa, which

never transpired. Finally, consistent with a permanent relocation, Plaintiff entered in a long-term

lease of fifteen months, which Kozko personally guaranteed, and testified that because he was

moving permanently, he expected to stay for the duration of the lease. SOF ¶ 63, citing to Griffin

Dep. 74:21-25 ("Q And when you entered into this lease you thought you were going to be in

Miami on a permanent --A That's correct. Q -- basis. Okay. So you thought you would stay for the

fifteen months [of the lease]).

The Statute of Frauds bars an oral contract even if the parties could have terminated the

contract at any time, including within a year. *K3 Enterprises, Inc. v. Sasowski*, No. 20-24441-CIV,

2022 WL 1499894, at *3 (S.D. Fla. Mar. 14, 2022) (finding that a provision allowing for a

termination of a contract within a first year did not make the contract "fall outside the ambit of the

statute of frauds" because the Eleventh Circuit has long recognize that "permit[ing] a contingency

of early termination to remove an oral contract from the statute of frauds would rob the statute of its force."). And because the parties never reduced the oral promise described by Plaintiff into a writing "signed by the party to be charged therewith," Plaintiff's claim is not actionable. *K3 Enterprises, Inc. v. Sasowski*, No. 20-24441-CIV, 2022 WL 1499894, at *4 (S.D. Fla. Mar. 14, 2022).

"Florida law is clear that promissory estoppel is not an exception to the statute of frauds." *Doe v. Roe*, 500 F. Supp. 3d 1319, 1326 (S.D. Fla. 2020), *aff'd*, No. 20-14456, 2022 WL 1447378 (11th Cir. May 9, 2022). The Eleventh Circuit has interpreted the Florida's statute of frauds as requiring that "contracts that cannot be performed within a year [] be in writing." *OJ Com., LLC v. Ashley Furniture Indus., Inc.*, 817 F. App'x 686, 690 (11th Cir. 2020); Fla. Stat. § 725.01. The applicability of the statute of frauds necessitates a review of the parties' intent to the agreement. *All Brand Importers, Inc. v. Tampa Crown Distribs., Inc.*, 864 F.2d 748, 750 (11th Cir. 1989) ("[Pursuant to] Florida law the intent of the parties with regard to the time of performance (not the possibility of contingent termination) is the key factor in determining whether an oral agreement is enforceable."). The intent of the parties may be inferred from the "surrounding circumstances" or the "object to be accomplished." *Dwight v. Tobin*, 947 F.2d 455, 459 (11th Cir. 1991). In particular, if the contract involves a long-term scheme, the statute of frauds apply. *Id.* (finding that the statute of frauds covered a contract to purchase and develop properties in Florida). The Eleventh Circuit has interpreted these promises in the context of employment and found that the statute of fraud barred promissory estoppel claims similar to Griffin's claim. In *Butterworth v. Lab. Corp. of Am. Holdings*, the plaintiff claimed that her employer had promised her yearly stock options. *Butterworth v. Lab. Corp. of Am. Holdings*, 581 Fed. Appx. 813, 820 (11th Cir. 2014). The Eleventh Circuit found that the promise was a multi-year agreement because the "promise would continue perpetually" and

did not apply to only her first year of employment. *Id.* As such the district court could find that that the "[plaintiff]'s intent at the time she negotiated the stock options agreement with [her employer] was to enter into a contract that would be performed over a series of years, and [her employer] had the same intent. *Id.* For this reason, the employer was entitled to summary judgment.

        B.       *There Is No Genuine Dispute of Material Fact that the First So-Called Oral Promise Was Not Breached by MSGM*

Even if the first oral promise was not covered by the statute of frauds, Plaintiff admitted that MSGM complied with each term of the promise. Griffin admitted to receiving the $240,000 base compensation. SOF at ¶ 66, citing to Griffin Depo. 119:12-17 ("A So the $240,000.00 base I received."). Regarding the $70,000 bonus, Plaintiff agreed in writing to reduce it to $48,000 in two payments, one of which would be received earlier on. *Id.*119:17 to 120:5 ("Q Okay. And you agreed to that., A I agreed to the, to that lower amount"); *see also* SOF at ¶ 5; DE 42-5 May 6, 2022 Employment Amendment Letter**.** Griffin also obtained the new role as Motorsport Australia's Director of Technology. Both the title and his new duties were "consistent" with what he had "envisioned had the time [MSGM made] the promise." Ex. A, Griffin Dep. 122:5 to 123:23.

As to the visa sponsorship, MSGM fulfilled his promise to provide immigration services through Katzman and also paid for Griffin's chosen firm, Cammisa Markel. SOF at ¶ 15; DE 42-1 Griffin Dep. 38:2-4, Griffin Dep. 97:6-21; SOF at ¶ 42, Dec. 30, 2022 Email from Griffin to Kozko; SOF at ¶ 43, Jan. 9, 2023 Email from Potter to Griffin. As the Court noted in its Order Granting in Part MSGM's Motion to Dismiss, "[t]he Complaint's conclusory allegation that MSG breached the Relocation Agreement when it failed to relocate Griffin to Miami is not supported by the underlying facts." DE 22 p.10. Specifically, the Court notes "[t]here are no facts to support that MSG did not fulfill its promise to sponsor and pay the attorneys to handle the visa process for

Griffin and his wife." *Id.* p. 11. Whether Kastman, the immigration attorney, mishandled the visa petition, is of no relevance because Kastman is not a party to this case and the complaint alleges that "that using Katsman was part of [the promise]." *Id.* "Nor is the Department of State a party to this case, and any failure of the Department of State to issue Griffin a visa does not support a breach by MSG." *Id.*

With respect to financial guaranty, Griffin testified that he does not recall requesting any guaranty from MSGM that MSGM refused to provide. DE 42-1, Griffin Dep. 124:4-8. In addition, Kozko guaranteed Plaintiff's lease personally. SOF at ¶ 34.

As to medical care coverage, the alleged promise was to give Griffin and his wife what was standard "for U.S. employees." DE 42-1, Griffin Depo. 120:6 to 121:15. However, MSGM and Griffin never discussed if Griffin and his wife would receive medical coverage before Griffin would become a US employee. DE 42-1, Griffin Dep. 120:19 to 121:7 ("Q Right, after you received the visa. A Well, that wasn't -- that wasn't discussed."). Accordingly, Plaintiff cannot now allege the promise included medical care coverage before he would become employed by MSGM, when he simultaneously recognizes that it was never discussed with MSGM.

Finally, Plaintiff unequivocally testified that the alleged September 2021 promise did not cover the reimbursement of any expenses. SOF at ¶ 65 117:7-12 ("Q Okay. And that's September 2021. A Yes. Q So was a promise made regarding a particular expense? A Other than what I've stated there were no particular [expense,] that was their terms.").

Therefore, MSGM fulfilled every aspect of his purported first oral promise and MSGM is entitled to summary judgment on this issue.

II.     **There Is No Genuine Dispute of Material Fact that the Second So-Called Oral Promise Is Unenforceable and Does Not Give Rise to Recoverable Damages**

According to Plaintiff's deposition testimony, the second of MSGM's two alleged oral promises was made on October 21, 2022. But, by this time, Plaintiff had already relocated from Australia to Miami and could not move back to Australia because he had committed to a fifteen-month lease in Miami. SOF at ¶ 54, citing Griffin Dep. 166:10 to 167:15 ("Q Okay. And [MSGM] didn't approve the end of the lease. A Yes.").

Indeed in his complaint, Griffin alleges that on January 11, 2023, "Kozko reneged on his prior promise" to pay Plaintiff's expense. DE 1 ¶36; *see also* SOF at ¶ 76 citing Griffin Dep. 160:8-11 ("Okay. So by January 11th you know [Kozko] doesn't want to reimburse this, the stuff you're asking, right? A Well, he didn't want to"). Griffin took, by his own admission "very accurate" notes of this conversation. SOF ¶¶ 52; 74. According to Griffin's notes, Kozko said:

> "You're asking for stuff we never agreed on. We never agreed it would be company's liability to cover these items. Why would you do this?" . . . "So I think it is unfair to keep referencing your sustaining that loss. That is not the loss that I believe [sic] the company cost. So there a big disagreement we have here…theirs [sic] is no way the company's going to have a half a million dollar cost on you. You would be in every disclosure if that was the case. So before we even agreed, I would have had to jump through a whole bunch of legal hoops and double checks.". . . "I get your logic, but I can't agree from a company's perspective. There's no way I'm going to send a check and tell Jason, accounting and the auditors that this check for Zach is for the delta he would have incurred if he had 21% tax rate in Florida. They will look at me like I'm an idiot, I can't do that." *Id.*

Between mid-October 2022, when Kozko made the second purported promise, to January 2023, when he broke the second alleged promise, Plaintiff does not recall to have done *any* act in reliance of the so-called promise. SOF at ¶77, citing Griffin Dep. 128:20 to 129:23 ("Q So from mid-October 2022 to January 2023 what did you do in reliance of this promise to cover your losses? A What do you mean by that? Q Did you rely on this promise to change anything in your situation? A I don't recall."). Indeed, Plaintiff was already in Florida and even after the January

11

11, 2023 conversation stayed for seven more months, until August 16, 2023, in Miami. SOF at ¶ 55. And Plaintiff's testimony makes sense since the record is devoid of any substantial objective evidence of reliance.

Promissory estoppel applies when "there is (1) a promise which the promisor should reasonably expect to induce action or forbearance, (2) action or forbearance in reliance on the promise, and (3) injustice resulting if the promise is not enforced." *DK Arena, Inc. v. EB Acquisitions I, LLC*, 112 So. 3d 85, 96 (Fla. 2013).

Accordingly, to properly state a claim for promissory estoppel under Florida law, Plaintiff must prove an action or forbearance in reliance on the promise. *Pinnacle Port Cmty. Ass'n, Inc. v. Orenstein*, 872 F.2d 1536, 1543 (11th Cir. 1989) (summary judgment was appropriate when there was no genuine issue of material facts on the issue of absence of detrimental reliance). In addition, Plaintiff's reliance or forbearance must cause "a detrimental change of position." *Eclipse Med., Inc. v. Am. Hydro-Surgical Instruments, Inc.*, 262 F. Supp. 2d 1334, 1351 (S.D. Fla. 1999), *aff'd sub nom. Eclipse Med., Inc. v. Am. Hydro-Surgical*, 235 F.3d 1344 (11th Cir. 2000) (citing *Pinnacle Port Community Ass'n, Inc.,* 872 F.2d at 1543.

In this case, Griffin did not change anything in his situation in reliance of the promise, nor did he suffer a detrimental change of position.

### III.    Griffin Lacks Standing to Bring Claims on Behalf of His Wife, a Non-Party.

Plaintiff requests a variety of damages allegedly incurred from April 2022 to August 2023, which are reflected in an excel spreadsheet produced with his Initial Disclosures. SOF ¶¶ 59. Among these damages, many relates to his wife: including his wife's loss of income after she resigned from her job in Australia. Plaintiff's wife, Francesca Holmes, gave her employer her termination notice on November 1, 2021, five months before moving from Australia to Miami and she did not work

while in Miami. SOF ¶ 23. Many of the damages are also damages that typically would be paid by both, including the rent, the purchase of furniture, the phones lines both in the US and in Australia. Plaintiff also requests damages for personal costs such as his wedding costs, even though he admits that Holmes's parents paid for part of it and did not expect to be reimbursed. *Id.* Holmes' parents are also not parties to this action.

Francesca Holmes is not a party to this action and resides in Australia. Therefore, she is outside of any subpoena power. MSGM has not been able to depose her because of her alleged health issues, even though Plaintiff had agreed to produce her remotely. As a result, MSGM could not compel her testimony.

Damages to be awarded "should be limited to the actual damages sustained by the aggrieved party." *Hanna v. Martin*, 49 So. 2d 585, 587 (Fla. 1950). Under Florida law, an award of compensatory damages must be based on actual loss, grounded in competent evidence, and proven with some degree of certainty. *See, e.g., In re Xavier's of Beville, Inc.,* 172 B.R. 667, 672 (Bankr. M.D. Fla. 1994). *In re Jet 1 Ctr., Inc.*, 335 B.R. 771, 788 (Bankr. M.D. Fla. 2005). Accordingly, the Court should grant summary judgment as to the damages suffered by Ms. Holmes.

WHEREFORE, Defendant, Motorsport Games Inc. respectfully requests that the Court enter an order granting its Motion for Summary Judgment, dismissing Plaintiff's remaining claim, and any other relief as this Court deems just and proper under the circumstances.

Respectfully submitted,

**AXS LAW GROUP, PLLC**
2121 NW 2nd Ave, Suite 201
Miami, Florida 33127
Telephone: (305) 297-1878

By: */s/ Alice Ferot*
Jeffrey W. Gutchess, Esq.

Florida Bar No. 702641
jeff@axslawgroup.com
Alice Ferot, Esq.
alice@axslawgroup.com
Florida Bar No. 101504
eservice@axslawgroup.com

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on March 19, 2025, all parties of record were served via filing

of the above Motion on the CM/ECF system.


<u>/s/ *Alice Ferot*</u>
Alice Ferot