# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

### Case No. 24-cv-21929-BLOOM/Elfenbein

ZACHARY GRIFFIN,                          |
                                          |
     Plaintiff,   |
                                          |
v.                                        |
                                          |
MOTORSPORT GAMES INC.,                    |
                                          |
     Defendant.   |
_____   |

## <u>PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT</u>

Eduardo A. Maura, Esq.
Florida Bar No. 91303
eduardo@ayalalawpa.com
Luis F. Quesada Machado, Esq.
Florida Bar No. 1010305
lquesada@ayalalawpa.com
**Ayala Law, P.A.**
2490 Coral Way, Ste 401
Miami, FL 33145
P: (305) 570-2208
F: (305) 503-7206
*Counsel for Plaintiff*

### <u>TABLE OF CONTENTS</u>

**BACKGROUND** ................................................................................................................ 1

**LEGAL STANDARD** ...................................................................................................... 5

**ARGUMENT** .................................................................................................................... 6

   **I.**   **Griffin is entitled to summary judgment on Count III for promissory estoppel.** ........ 6

   **II.**   **Griffin is entitled to summary judgment on MSG's "Affirmative" Defenses.** ............. 9

      a.   First "Affirmative" Defense ........................................................................ 9

      b.   Second Affirmative Defense ........................................................................ 9

      c.   Third Affirmative Defense ......................................................................... 10

      d.   Fourth, Fifth, Sixth, Seventh, and Eighth Affirmative Defenses .................................. 10

      e.   Ninth Affirmative Defense ......................................................................... 12

      f.   Tenth Affirmative Defense ......................................................................... 12

      g.   Eleventh Affirmative Defense .................................................................... 13

      h.   Twelfth "Affirmative" Defense .................................................................. 14

      i.   Thirteenth Affirmative Defense .................................................................. 14

      j.   Fourteenth and Fifteenth Affirmative Defenses ........................................... 15

      k.   Sixteenth Affirmative Defense ................................................................... 16

      l.   Seventeenth Affirmative Defense ............................................................... 16

      m.   Eighteenth Affirmative Defense ................................................................. 17

      n.   Nineteenth Affirmative Defense ................................................................. 17

   **CONCLUSION** ............................................................................................................. 18

## <u>TABLE OF CITATIONS</u>

### <u>CASES</u>

*AmBrit, Inc. v. Kraft, Inc.*,
   812 F.2d 1531 (11th Cir. 1986) --------------------------------------------------------------13

*Bailey v. TitleMax of Georgia, Inc.*,
   776 F.3d 797 (11th Cir. 2015) --------------------------------------------------------------10

*Bank of Am., N.A. v. Rodriguez*,
   558 B.R. 945 (S.D. Fla. 2016) --------------------------------------------------------------13

*Black Warrior Riverkeeper, Inc. v. U.S. Army Corps of Eng'rs*,
   781 F.3d 1271 (11th Cir. 2015) ------------------------------------------------------------13

*Bloch v. Wells Fargo Home Mortg.*,
   755 F.3d 886 (11th Cir. 2014) -------------------------------------------------------------- 6

*BPI Energy Holdings, Inc. v. IEC (Montgomery), LLC*,
   664 F.3d 131 (7th Cir. 2011) ---------------------------------------------------------------15

*Brucker v. City of Doraville*,
   38 F.4th 876 (11th Cir. 2022)-------------------------------------------------------------- 5

*Drew v. Tenet St. Mary's, Inc.*,
   46 So. 3d 1165 (Fla. Dist. Ct. App. 2010) -----------------------------------------------15

*Griffin v. Motorsport Games Inc.*,
   2024 WL 4564330 (S.D. Fla. Oct. 24, 2024) ------------------------------------------ 10, 11

*Havana Docks Corp. v. Carnival Corp.*,
   592 F. Supp. 3d 1088 (S.D. Fla. 2022)---------------------------------------------------- 9

*Hernandez v. Ticketmaster, LLC*,
   2018 WL 2198457 (S.D. Fla. May 14, 2018) ---------------------------------------------17

*Hornsby-Culpepper v. Ware*,
   906 F.3d 1302 (11th Cir. 2018) ------------------------------------------------------------ 5

*In re Blunt*,
   210 B.R. 626 (Bankr. M.D. Fla. 1997)---------------------------------------------------- 9

*Knepfle v. J-Tech Corp.*,
   48 F.4th 1282 (11th Cir. 2022) ------------------------------------------------------------10

*Loren v. Sasser*,
   309 F.3d 1296 (11th Cir. 2002) ------------------------------------------------------ 6

*Marchisio v. Carrington Mortg. Servs., LLC*,
   919 F.3d 1288 (11th Cir. 2019) ------------------------------------------------------ 6

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
   475 U.S. 574 (1986) -------------------------------------------------------------------- 6

*Progressive Express Ins. Co. v. Star Painting & Waterproofing, Inc.*,
   333 F.R.D. 600 (S.D. Fla. 2019) --------------------------------------------------- 14

*S. Miami Holdings, LLC v. Fed. Deposit Ins. Corp.*,
   2011 WL 13220688 (S.D. Fla. Aug. 1, 2011) ------------------------------------ 10

*Sema Logistics Inc. v. Alternative Heavy Towing Inc.*,
   2025 WL 460525 (D. Ariz. Feb. 11, 2025) --------------------------------------- 15

*Servicios de Almacen Fiscal Zona Franca y Mandatos S.A. v. Ryder Int'l, Inc.*,
   264 F. App'x 878 (11th Cir. 2008) ------------------------------------------------ 15

*Sotolongo v. Ethicon, Inc.*,
   591 F. Supp. 3d 1242 (S.D. Fla. 2022) -------------------------------------------- 6

*Sys. Components Corp. v. Fla. Dep't of Transp.*,
   14 So. 3d 967 (Fla. 2009) ---------------------------------------------------------- 18

*Tillman v. C.R. Bard, Inc.*,
   96 F. Supp. 3d 1307 (M.D. Fla. 2015) -------------------------------------------- 15

*Treminio v. Crowley Mar. Corp.*,
   649 F. Supp. 3d 1223 (M.D. Fla. 2023) ------------------------------------------ 17

*Victor Elias Photography, LLC v. ICE Portal, Inc.*,
   43 F.4th 1313 (11th Cir. 2022) ----------------------------------------------------- 5

*Walters v. Fast AC, LLC*,
   60 F.4th 642 (11th Cir. 2023) ------------------------------------------------------ 16

*Winborn v. Supreme Beverage Co. Inc.*,
   572 F. App'x 672 (11th Cir. 2014) ------------------------------------------------- 6

*Witt v. Metro. Life Ins. Co.*,
   772 F.3d 1269 (11th Cir. 2014) ---------------------------------------------------- 17

*Woodburn v. State of Fla. Dep't of Child. & Fam. Servs.*,
   854 F. Supp. 2d 1184 (S.D. Fla. 2011) ------------------------------------------------------------- 13

*ZSR Patlayici Sanayi A.S. v. Sarac Distributors LLC*,
   2020 WL 3895709 (M.D. Fla. July 10, 2020) ----------------------------------------------------- 16

## S<small>TATUTES</small>

Fla. Stat. § 95.11 ----------------------------------------------------------------------------------------- 13

## R<small>ULES</small>

Fed. R. Civ. P. 9 ------------------------------------------------------------------------------------------- 9

Fed. R. Civ. P. 56 ----------------------------------------------------------------------------------------- 5

Pursuant to Fed. R. Civ. P. 56 and S.D. Fla. L.R. 56.1, Plaintiff Zachary Griffin ("Griffin"), by and through undersigned counsel, moves for summary judgment against Defendant Motorsport Games Inc. ("MSG") on Count III of the Complaint for promissory estoppel [D.E. 1] and MSG's "affirmative" defenses [D.E. 23], and in support thereof states:

## BACKGROUND

Defendant is a racing videogames developer, publisher, and e-sports ecosystem provider of official motorsports racing series throughout the world. SOMF, ¶ 1.[1] In March 2021, MSG acquired the rights to the videogame *KartKraft* from Black Delta, an Australian company where Griffin was a shareholder. SOMF, ¶ 2. Prior to the close of the acquisition, MSG set up a local entity named Motorsport Games Australia Pty Ltd ("MSG-Aus"). SOMF, ¶ 2. On March 16, 2021, Griffin was hired by MSG as Director of Studio of MSG-Aus. SOMF, ¶ 2. On August 9, 2021, Griffin traveled to Miami, Florida at the request of MSG's CEO, Dmitry Kozko ("Kozko"). SOMF, ¶ 3. On August 18, 2021, while in Miami, Kozko requested that Griffin relocate from Australia to Florida to work in MSG's Miami office. SOMF, ¶ 4. On September 8, 2021, Kozko and Griffin orally agreed to the terms of Griffin's relocation to MSG's office in Miami (the "Relocation Agreement"). SOMF, ¶ 5. The terms of the Relocation Agreement included Griffin's promotion to Director of Technology; a base salary of $240,000 per year; an annual bonus of $70,000; and visa sponsorship for Griffin and his wife. SOMF, ¶ 6. The very next day, on September 9, 2021, MSG's General Counsel, Amanda LeCheminant ("LeCheminant"), sent an email introducing Griffin to Mark Katsman ("Katsman"), the immigration lawyer recommended by MSG to handle the relocation to Miami. SOMF, ¶ 7. On October 6, 2021, MSG's VP of Studios, Jack Griffin, then sent an email to several MSG executives to announce Griffin "w[ould] become our MSGM Studios' Director of Technology." SOMF, ¶ 8.

---

[1] In this brief, "SOMF" refers to Plaintiff's Statement of Material Facts [D.E. 44].

1

On January 5, 2022, Kozko forwarded Griffin a text conversation between Kozko and then MSG President, Stephen Hood, discussing Griffin's relocation to Miami, where Kozko stated he had "asked [Griffin] to come and . . . mov[e] here permanently." SOMF, ¶ 9. On January 6, 2022, Katsman provided Griffin with a checklist of documents required for relocation to Miami. SOMF, ¶ 10. On February 7, 2022, Dara Malavolta ("Malavolta"), MSG's Director of Human Resources, sent an email to ADP, copying Griffin, informing ADP that "one of [MSG's] Directors, is moving to the US from Australia with his wife in March." SOMF, ¶ 11. The next day, on February 8, 2022, Malavolta sent an email to Griffin providing documents to explain health coverage plans offered to US employees. SOMF, ¶ 12. On March 12, 2022, Kozko sent an email to Anne Dongois, MSG's Head of Communications, and to Andy Stack, MSG's Executive Producer, introducing Griffin as MSG's new "Global Director of Technology," and stating that Griffin was "on his way to relocate to Miami with his family." SOMF, ¶ 13.

On April 6, 2022, Griffin and his wife traveled to Miami, with supporting documents for their relocation, as instructed by Katsman. SOMF, ¶ 14. On or around April 20, 2022, with Kozko's approval, Griffin applied for a 15-month lease on behalf of MSG for him and his wife with The Bozzuto Group. SOMF, ¶ 15. On or around April 27, 2022, The Bozzuto Group denied the lease application. SOMF, ¶ 16. On or around May 6, 2022, Griffin requested from Kozko and MSG a letter stating that Griffin would be "receiving a paycheck with [his] new move to Florida." SOMF, ¶ 17. On May 6, 2022, Kozko requested that Griffin agree to a reduction in his bonus to $48,000, from the previously agreed $70,000, based on MSG's financial position. SOMF, ¶ 18. As incentive to accept the reduced bonus, Kozko offered that the reduced bonus be split into two payments, with the first payable in June. SOMF, ¶ 19. On May 9, 2022, Malavolta, who works in MSG's United States operation out of the Miami office, sent Griffin a revised employment agreement, including

the revision to the bonus and a cover letter to be submitted to HOA, which misrepresented the date of the relocation request as being May 6, 2022. SOMF, ¶ 20. On or around May 21, 2022, Griffin secured a 15-month lease with The Bozzuto Group, aided by the cover letter provided by Malavolta and Kozko serving as guarantor, providing paystubs in support of Griffin. SOMF, ¶ 21. On June 8, 2022, Katsman, LeCheminant, Malavolta,[2] and Griffin had a video call, where Katsman told Griffin that he did not know that the income years for tax purposes in Australia were different than in the United States. SOMF, ¶ 22. Katsman also told Griffin that Griffin's FY20/21 tax returns could not be submitted with the L-1 visa petition because it did not demonstrate 12 months of employment. SOMF, ¶ 23. Based on Katsman's statement, Griffin believed that he had no other choice than to wait to file the L-1 visa petition until he had his FY21/22 tax return. SOMF, ¶ 24. Katsman did not follow up or otherwise communicate with Griffin following this June 8 call. SOMF, ¶ 25.

On or around October 12, 2022, Griffin informed Kozko of the losses Griffin had suffered because of MSG's failure to complete his transfer to Miami. SOMF, ¶ 26. On or about October 18, 2022, Griffin shared a spreadsheet with Kozko that detailed the losses Griffin had suffered. SOMF, ¶ 27. On or around October 19, 2022, Griffin then met with a second immigration attorney, who confirmed that Katsman was mistaken as to the requirement of Griffin's FY21/22 tax return for his L-1 visa petition and offered an alternative pathway via the E-3 visa, which was not disclosed by Katsman. SOMF, ¶ 28. On October 21, 2022, Kozko and Griffin met to review the spreadsheet, and Kozko instructed Griffin to "submit the [losses] as expenses" so that MSG could cover them, through both reimbursement and a bonus due on release of one of the game updates. SOMF, ¶ 29. Kozko also told Griffin MSG would pay for a new immigration firm to prepare visa applications for Griffin and his wife. SOMF, ¶ 30.

---

[2] At some point between 2022 and 2023, Malavolta changed her last name to "Acker."

3

On November 3, 2022, Griffin was asked if he was aware of anything that would have a material effect on MSG's financial condition, cash flows, or results of operation that would be of importance to MSG shareholders. SOMF, ¶ 31. Griffin responded that it was highly likely that the release of the game *INDYCAR23* would be pushed to at least September 2023. SOMF, ¶ 31. Kozko reprimanded Griffin after being asked to meet with MSG's finance team due to Griffin's disclosure. SOMF, ¶ 32. On or about November 7, 2022, Kozko informed Griffin the company did not have enough cash to last to the end of the year. SOMF, ¶ 33. On or around November 28, 2022, Griffin advised Kozko that because of salary delays and $428,000 in unpaid invoices, development across most MSG products was blocked. SOMF, ¶ 34. On or around December 7, 2022, Griffin advised Kozko that the account for MSG in Australia had suspended all services due to unpaid invoices. SOMF, ¶ 35. On December 8, 2022, Griffin informed Kozko MSG was at risk of trading insolvent in Australia due to mounting debts. SOMF, ¶ 36. On or about December 13, 2022, Kozko expressed to Griffin that the December 8 email had "caused some issues." SOMF, ¶ 37.

On December 28, 2022, Griffin then asked Kozko for a timeframe on when Griffin would receive the agreed-upon compensation for his losses. SOMF, ¶ 38. On January 11, 2023, Kozko reneged on his prior agreement for MSG to pay for Griffin's losses, stating "there's no way the company's going to have a half-million-dollar cost on you," referring to the estimated amount of Griffin's losses. SOMF, ¶ 39. On or around January 14, 2023, Kozko then sent an email to Griffin proposing three bonuses, totaling $250,000, to settle Griffin's losses. SOMF, ¶ 40. On or around February 27, 2023, Griffin then received an email from Malavolta offering an increase in Griffin's compensation, different from the offer made by Kozko on January 14, 2023. SOMF, ¶ 41. While Griffin made multiple attempts to finalize in good faith the conditions of the new proposed bonuses, negotiations stalled following Malavolta's email. SOMF, ¶ 42.

On May 20, 2024, Griffin filed his Complaint against MSG for (i) breach of contract; (ii) breach of the covenant of good faith and fair dealing; (iii) promissory estoppel; and (iv) breach of fiduciary duty. *See* D.E. 1. On July 8, 2024, MSG filed a Motion to Dismiss, arguing that Griffin had failed to state a claim upon which relief could be granted. *See* D.E. 13. On October 24, 2024, the Court dismissed Griffin's claims for breach of contract; breach of the covenant of good faith and fair dealing; and breach of fiduciary duty. *See* D.E. 22. On November 6, 2024, MSG filed its Answer to the Complaint, which asserts nineteen (19) boilerplate "affirmative" defenses. *See* D.E. 23. As explained below, Griffin is entitled to summary judgment on Count III of the Complaint for promissory estoppel as well as MSG's "affirmative" defenses.

## **LEGAL STANDARD**

"A party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact is 'material' only if it has the potential to affect the outcome of the case, and a dispute is 'genuine' only if a reasonable jury could return a verdict for the non-moving party." *Victor Elias Photography, LLC v. ICE Portal, Inc.*, 43 F.4th 1313, 1319 (11th Cir. 2022). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Hornsby-Culpepper v. Ware*, 906 F.3d 1302, 1311 (11th Cir. 2018). "If no reasonable jury could return a verdict in favor of the non-moving party, there is no genuine issue of material fact and summary judgment will be granted." *Brucker v. City of Doraville*, 38 F.4th 876, 881 (11th Cir. 2022).

When the moving party has carried its burden under Rule 56, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec.*

*Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). When the movant satisfies the burden of production showing there is no genuine dispute of fact, "the non-moving party must present evidence beyond the pleadings showing that a reasonable jury could find in its favor." *Winborn v. Supreme Beverage Co. Inc.*, 572 F. App'x 672, 674 (11th Cir. 2014). "A mere scintilla of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." *Loren v. Sasser*, 309 F.3d 1296, 1302 (11th Cir. 2002). Under this standard, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Sotolongo v. Ethicon, Inc.*, 591 F. Supp. 3d 1242, 1248 (S.D. Fla. 2022).

## ARGUMENT

**I.       Griffin is entitled to summary judgment on Count III for promissory estoppel.**

In Count III of his Complaint, Griffin brings a claim for promissory estoppel against MSG. See D.E. 1, ¶¶ 59-64. "In Florida, the doctrine of promissory estoppel applies when there is (1) a promise which the promisor should reasonably expect to induce action or forbearance, (2) action or forbearance in reliance on the promise, and (3) injustice resulting if the promise is not enforced." *Bloch v. Wells Fargo Home Mortg.*, 755 F.3d 886, 889 (11th Cir. 2014). Here, there is no genuine dispute that there was a promise which MSG should have reasonably expected to induce action or forbearance. Indeed, it will be difficult for MSG to argue that there was not a promise in this case. It is undisputed that on or about August 18, 2021, Kozko—who was MSG's CEO[3]—asked Griffin to relocate from Australia to Miami. SOMF, ¶ 4. On September 8, 2021, Kozko and Griffin orally agreed to the terms of Griffin's relocation to MSG's office in Miami, which included (i) Griffin's

---

[3] It is well settled law that "the principal is bound by the acts of his agent." *Marchisio v. Carrington Mortg. Servs., LLC*, 919 F.3d 1288, 1313 (11th Cir. 2019).

promotion to Director of Technology; (ii) a base salary of $240,000 per year; (iii) an annual bonus of $70,000; and (iv) visa sponsorship for Griffin and his wife. SOMF, ¶¶ 5-6. While the discussions were not in writing, there is ample evidence of MSG agents corroborating the promises made to Griffin. For example, on September 9, 2021, LeCheminant—who was MSG's General Counsel— sent an email introducing Griffin to Katsman, the immigration lawyer recommended by MSG to handle Griffin's relocation to Miami. SOMF, ¶ 7. Then, on October 6, 2021, Jack Griffin—who was MSG's Vice President of Studios—sent an email to several MSG executives to announce that Griffin "w[ould] become our MSGM Studios' Director of Technology." SOMF, ¶ 8.

On January 5, 2022, Kozko himself, in response to an inquiry from one of MSG's directors as to why Griffin was traveling to the United States confirmed the promise, responding: "Because I asked him to come and he is moving here permanently, so he is in a process of searching for a place." SOMF, ¶ 9. There is hardly any ambiguity in Kozko's representation to his MSG colleague. A few weeks later, on February 7, 2022, Malavolta—who is MSG's Director of Human Resources and based in MSG's Miami office—sent an email to inform ADP that "one of [MSG's] Directors, is moving to the US from Australia with his wife in March." SOMF, ¶ 11. The next day, Malavolta sent an email to Griffin providing documents to explain the health coverage plans offered to U.S. employees. SOMF, ¶ 12. Then, on March 12, 2022, Kozko sent an email to Andy Stack—who was MSG's Executive Producer—introducing Griffin as MSG's new "Global Director of Technology," and stating that Griffin was "on his way to relocate to Miami with his family." SOMF, ¶ 13.

MSG's corporate representative, Mr. Stanley Beckley, corroborated during his deposition the promise made to Griffin to relocate. When shown emails discussing paperwork Griffin needed to travel to the U.S., Mr. Beckley testified:

> Q.     And it appears to me that Mr. Kozko on behalf of Motorsport USA was
>        willing and able to help with the documentation, right?

A.      Yes, he was assisting Zach with gathering . . . letters from the company or from the parent company to assist him getting to Miami . . . from Australia.

Q.      Correct. And this was for the purpose of employment in Miami, correct?

A.      Yeah, I believe this was all part of his proposed move to Miami, right, relocating to Miami. [. . .]

Q.      Did you in whatever you have reviewed or even if you have personal knowledge was there any evidence of resistance to the relocation that someone in the company objected to the relocation?

A.      I'm not aware of any objections to the relocation.

D.E. 44-2, 22:18-23:18. There appears never to have been an objection to the relocation until this lawsuit began. In its Answer to Requests for Admissions, MGS "denies" that it "requested [Griffin] to relocate from Australia to MSG's office in Miami." **Ex. 1**, ¶ 3. The reason for MGS's denial is that the relocation "was part of a joint discussion and not a unilateral request." *Id.* It is strange that MSG would deny that it requested Griffin to relocate simply because the relocation was consensual or agreed upon by both parties. Unless MSG believes that a "request" can only exist when it is not discussed with the other party, it is difficult to see the logic in its denial.

There is no dispute either that Griffin acted in **<u>reliance</u>** on the promise to relocate. First off, Griffin and his wife traveled to Miami on April 6, 2022, with documents to support their relocation, as instructed by Katsman. SOMF, ¶ 14. Griffin also secured a 15-month lease in Miami with The Bozzuto Group, on the belief that he would be relocating to Miami to work in MSG's Miami office. SOMF, ¶ 21. Griffin incurred numerous other losses, such as moving expenses; travel expenses; lodging expenses; utility expenses; insurance expenses; and paying an income tax rate of 45% in Australia, as opposed to a rate of ~21% in Florida. SOMF, ¶ 27. These losses, caused by Griffin's reliance on MSG's promise to relocate him to Miami, totaled almost $350,000.00. SOMF, ¶ 27. It should be noted that Kozko promised Griffin that MSG would cover the losses he suffered, through

both reimbursement and a bonus due on release of one of the game updates. SOMF, ¶ 29. However, Kozko later reneged on his agreement for MSG to pay for Griffin's losses. SOMF, ¶ 39. In Florida, "the award of damages in a case utilizing the doctrine of promissory estoppel should be the amount necessary to avoid injustice." *In re Blunt*, 210 B.R. 626, 633 (Bankr. M.D. Fla. 1997). Here, the only way to avoid injustice is for MSG to pay for Griffin's losses totaling $345,471. *See* D.E. 44-1, Ex. N. Because there is no genuine dispute that MSG made a promise and that Griffin acted in reliance on that promise, which resulted in injustice, Griffin is entitled to judgment as a matter of law on his claim for promissory estoppel.

## II.     Griffin is entitled to summary judgment on MSG's "Affirmative" Defenses.

### a.  First "Affirmative" Defense

In its First "Affirmative" Defense, MSG alleges that "[t]he Complaint should be dismissed, in whole or in part, for failure to state a claim upon which relief can be granted." D.E. 23, p.5. However, "[f]ailure to state a claim is not an affirmative defense, and this case survived the motion-to-dismiss stage." *Havana Docks Corp. v. Carnival Corp.*, 592 F. Supp. 3d 1088, 1194 (S.D. Fla. 2022). Accordingly, Griffin is entitled to judgment as a matter of law on MSG's First "Affirmative" Defense. See id.

### b.  Second Affirmative Defense

In its Second Affirmative Defense, MSG alleges "Griffin's claim(s) are barred, in whole or in part, to the extent he failed to satisfy jurisdictional prerequisites, and other conditions precedent, to bringing suit." D.E. 23, p.5. Rule 9(c) is clear that "when denying that a condition precedent has occurred or been performed, a party must do so with particularity." Fed. R. Civ. P. 9(c). MSG does not identify which "jurisdictional prerequisites" or "conditions precedent" Griffin allegedly did not satisfy. Therefore, Griffin is entitled to judgment as a matter of law on MSG's Second Affirmative

Defense. *Cf. S. Miami Holdings, LLC v. Fed. Deposit Ins. Corp.*, 2011 WL 13220688, at *8 (S.D. Fla. Aug. 1, 2011).

### c. Third Affirmative Defense

In its Third Affirmative Defense, MSG alleges "Griffin's claim(s) are barred, in whole or in part, by the doctrine of unclean hands." D.E. 23, p.5. To assert an unclean hands defense, MSG must show that "(1) the plaintiff's wrongdoing is directly related to the claim, and (2) the defendant was personally injured by the wrongdoing." *Bailey v. TitleMax of Georgia, Inc.*, 776 F.3d 797, 801 (11th Cir. 2015). Not only does MSG fail to allege any wrongdoing on the part of Griffin, nothing in the record suggests Griffin's actions personally injured MSG. Indeed, the only person injured as a result of MSG's broken promises was Griffin. Because MSG can present no evidence that it was personally injured by any wrongdoing directly related to Griffin's claim for promissory estoppel, Griffin is entitled to judgment as a matter of law on MSG's Third Affirmative Defense. *See Knepfle v. J-Tech Corp.*, 48 F.4th 1282, 1297 (11th Cir. 2022) (summary judgment movant may satisfy its burden "establishing that there is an absence of evidence to support the nonmoving party's case").

### d. Fourth, Fifth, Sixth, Seventh, and Eighth Affirmative Defenses

MSG's Fourth, Fifth, Sixth, Seventh, and Eighth Affirmative Defenses were all rejected by this Court when ruling on MSG's Motion to Dismiss. *See* D.E. 22. First, this Court rejected MSG's Fourth Affirmative Defense that a "truthful statement of present intentions regarding a future act does not give rise to a claim for promissory estoppel," because it was based on a misreading of the case law, stating: "Should this Court accept MSG's reading of the quote, the doctrine of promissory estoppel would be rendered virtually meaningless as any party could claim that they truthfully meant the statement when they promised something." *Griffin v. Motorsport Games Inc.*, 2024 WL 4564330, at *7 (S.D. Fla. Oct. 24, 2024).

MSG's Fifth Affirmative Defense that "MSG's alleged promise was not sufficiently definite in time and terms, or was susceptible of multiple interpretations," was also rejected by the Court. It is undisputed that MSG promised to relocate Griffin to Miami, and that as part of that relocation, MSG promised to promote Griffin to Director of Technology; a base salary of $240,000 per year; an annual bonus of $70,000; and visa sponsorship for Griffin and his wife. SOMF, ¶ 6. It is also undisputed that Kozko promised that MSG would compensate Griffin for his losses. SOMF, ¶ 29. The Court found MSG's promises were "sufficiently definite . . . in time, term, and reasonableness to support a claim of promissory estoppel." *Griffin*, 2024 WL 4564330, at *8.

MSG's Sixth Affirmative Defense that "promissory estoppel is not available when a written contract between the parties covers the disputed promises and contains an integration clause" was rejected by the Court's finding that "the Employment Agreement should not preclude any claim of promissory estoppel because the Employment Agreement is a contract between Griffin and MSG-AUS—not MSG and Griffin, so it is not applicable here." *Griffin*, 2024 WL 4564330, at *7. In its Eighth Affirmative Defense, MSG argues that "reliance is unreasonable and unjustifiable when the promisee enters into a subsequent written contract, which contains a customary integration clause." D.E. 23, p.6. MSG's Eighth Affirmative Defense is duplicative of its Sixth Affirmative Defense and fails for the same reasons.

MSG's Seventh Affirmative Defense based on the statute of frauds was also rejected by the Court, who found that "the statute of frauds does not preclude enforcement of Griffin's promissory estoppel claim." *Griffin*, 2024 WL 4564330, at *8. MSG can present no evidence that the parties could not complete their oral agreement within a year. Indeed, all of MSG's promises, such as the relocation to Miami and reimbursement for Griffin's losses could be performed in under one year.

Accordingly, Griffin is entitled to judgment as a matter of law on MSG's Fourth, Fifth, Sixth, Seventh, and Eighth Affirmative Defenses.

### e.   Ninth Affirmative Defense

In its Ninth Affirmative Defense, MSG alleges "Griffin had knowledge of, or the reasonable ability to learn the true facts." D.E. 23, p.6. Assuming this is a valid defense, the "true facts" that would bar Griffin's reliance on MSG's promises would be if he knew that MSG did not intend to fulfill those promises. MSG can present no evidence to support this claim. Because Griffin did not have knowledge of MSG's intention to break its promises until after he had relied on the promises and incurred expenses, his claim cannot be barred. Consequently, Griffin is entitled to judgment as a matter of law on MSG's Ninth Affirmative Defense.

### f.   Tenth Affirmative Defense

In its Tenth Affirmative Defense, MSG claims that "Griffin's claim(s) are barred, in whole or in part, to the extent that, if any employee of MSG acted in a manner that caused Griffin harm, any such actions were committed outside the scope or course of the employee's employment and without the consent, knowledge, or ratification of MSG or MSG Australia." D.E. 23, p.6. MSG's Tenth Affirmative Defense has no factual support in the record. Indeed, not only were the promises made to Griffin by an agent with actual authority (MSG's CEO), but the decision to relocate Griffin was shared with and discussed among the higher echelons of the company, as described in detail above. Considering Kozko's role as CEO, and the involvement of several of MSG's executives in the relocation, MSG can present no evidence to support this defense. Therefore, Griffin is entitled to judgment as a matter of law on MSG's Tenth Affirmative Defense.

///

### g. Eleventh Affirmative Defense

In its Eleventh Affirmative Defense, MSG alleges "Griffin's claim(s) are barred, in whole or in part, by the doctrine of laches or statute of limitations." D.E. 23, p.6. In Florida, a claim for promissory estoppel must be commenced within four years, because it is an "equitable action on a contract, obligation, or liability not founded on a written instrument." Fla. Stat. § 95.11(3)(j); *see also Woodburn v. State of Fla. Dep't of Child. & Fam. Servs.*, 854 F. Supp. 2d 1184, 1207 (S.D. Fla. 2011) ("The Eleventh Circuit has held that the statute of limitations for an action for estoppel is four years."). The last element of Griffin's promissory estoppel claim occurred in January 2023, when Kozko reneged on his prior agreement for MSG to pay for Griffin's losses. SOMF, ¶ 39. This action was commenced on May 20, 2024, clearly within the statute of limitations. *See* D.E. 1.

To establish laches, MSG must demonstrate "1) a delay in asserting a right or a claim, 2) that the delay was not excusable, and 3) that there was undue prejudice to the party against whom the claim is asserted." *AmBrit, Inc. v. Kraft, Inc.*, 812 F.2d 1531, 1545 (11th Cir. 1986). MSG can do nothing of the sort. First, there is no evidence of delay in asserting a right or a claim. As noted above, Griffin's promissory estoppel claim was filed within the applicable statute of limitations, and "there is a strong presumption that a plaintiff's suit is timely if it is filed before the statute of limitations has run." *Black Warrior Riverkeeper, Inc. v. U.S. Army Corps of Eng'rs*, 781 F.3d 1271, 1286 (11th Cir. 2015). Second, MSG can show no undue prejudice by the lapse of less than a year, and "[t]he mere lapse of time does not constitute prejudice." *Bank of Am., N.A. v. Rodriguez*, 558 B.R. 945, 949 (S.D. Fla. 2016). Further, during that one-year period, Griffin sent a letter to Jason Potter, as a representative of MSG, informing him both of Griffin's potential claims and Griffin's willingness to seek litigation if a resolution could not be reached. *See* **Ex. 2**. Therefore, because

13

MSG cannot show Griffin's delay in asserting a right or a claim, or that there was undue prejudice to MSG, Griffin is entitled to judgment as a matter of law on MSG's Eleventh Affirmative Defense.

### h.   Twelfth "Affirmative" Defense

In its Twelfth "Affirmative" Defense, MSG alleges it "fully performed, fulfilled and carried out, the alleged promise." D.E. 23, p.6. First of all, this is simply a denial of Griffin's allegations and not an affirmative defense. *See Progressive Express Ins. Co. v. Star Painting & Waterproofing, Inc.*, 333 F.R.D. 600, 602 (S.D. Fla. 2019) ("A defense that denies an allegation in the plaintiff's complaint also is not an affirmative defense."). Second, there is ample evidence in the record that demonstrates MSG did not perform, fulfill, or carry out its promises, as plainly shown above. It is undeniable that Griffin was not relocated to Miami. It is also undisputed that Griffin was not paid for his losses. Consequently, Griffin is entitled to judgment as a matter of law on MSG's Twelfth "Affirmative" Defense.

### i.   Thirteenth Affirmative Defense

In its Thirteenth Affirmative Defense, MSG alleges that Griffin's claims are barred by the doctrine of accord and satisfaction. D.E. 23, p.6. "An accord and satisfaction results when: (1) the parties mutually intend to effect a settlement of an existing dispute by entering into a superseding agreement; and (2) there is actual performance in accordance with the new agreement." *Oriole Gardens Condo. Ass'n I v. Aspen Specialty Ins. Co.*, 875 F. Supp. 2d 1379, 1383 (S.D. Fla. 2012). MSG can present no evidence of the parties entering into a superseding agreement to settle Griffin's claims because none exists. While Griffin tried to settle his claims before brining suit, it is not in dispute that those negotiations led to nothing. SOMF, ¶ 42. Therefore, there has not been any accord and satisfaction of Griffin's claims, and Griffin is entitled to judgment as a matter of law on MSG's Thirteenth Affirmative Defense.

14

### j. Fourteenth and Fifteenth Affirmative Defenses

In its Fourteenth Affirmative Defense, MSG alleges "Griffin assumed the risk of moving to Florida." D.E. 23, p.6. The affirmative defense of assumption of risk "precludes recovery where a plaintiff voluntarily and unreasonably exposes herself to a known risk, albeit a risk created by a defendant's negligence." *Tillman v. C.R. Bard, Inc.*, 96 F. Supp. 3d 1307, 1353 (M.D. Fla. 2015). However, Griffin's claim is not for negligence but promissory estoppel. As noted, a promissory estoppel claim is an "equitable action on a contract, obligation, or liability not founded on a written instrument." *Servicios de Almacen Fiscal Zona Franca y Mandatos S.A. v. Ryder Int'l, Inc.*, 264 F. App'x 878, 881 (11th Cir. 2008). "The theory of implied assumption of risk has no bearing on a breach of contract claim." *Sema Logistics Inc. v. Alternative Heavy Towing Inc.*, 2025 WL 460525, at *2 (D. Ariz. Feb. 11, 2025). MSG has presented no authority that assumption of risk is a valid defense to promissory estoppel.

Similarly, in its Fifteenth Affirmative Defense, MSG alleges that Griffin's claims are barred "because Griffin was negligent." D.E. 23, p.6. "Comparative negligence is conduct on the part of the plaintiff which falls below the standard to which he should conform for his own protection." *Drew v. Tenet St. Mary's, Inc.*, 46 So. 3d 1165, 1167 (Fla. Dist. Ct. App. 2010). Again, however, Griffin's claim is not for negligence but promissory estoppel. Like assumption of risk, comparative negligence is not a valid defense to promissory estoppel. *Cf. Sema Logistics*, 2025 WL 460525, at *2 (finding affirmative defense of contributory negligence did not apply to claim for promissory estoppel); *BPI Energy Holdings, Inc. v. IEC (Montgomery), LLC*, 664 F.3d 131, 138 (7th Cir. 2011) (holding contributory negligence is not a defense to claim for promissory estoppel based upon fraudulent promise"). Thus, Griffin is entitled to judgment as a matter of law on MSG's Fourteenth and Fifteenth Affirmative Defenses.

### k.  Sixteenth Affirmative Defense

In its Sixteenth Affirmative Defense, MSG alleges that Griffin's claims are barred "by lack of standing." D.E. 23, p.6. "Lack of standing is not an affirmative defense but rather is a matter implicating the court's subject matter jurisdiction over an action." *ZSR Patlayici Sanayi A.S. v. Sarac Distributors LLC*, 2020 WL 3895709, at *4 (M.D. Fla. July 10, 2020). In any case, MSG provides no factual or legal support for Griffin's alleged lack of standing. The elements of standing include "an injury in fact that is concrete, particularized, and actual or imminent"; that the injury was "likely caused" by the defendant; and "that the injury would likely be redressed by judicial relief." *Walters v. Fast AC, LLC*, 60 F.4th 642, 647 (11th Cir. 2023). In this case, Griffin suffered a concrete injury in fact, shown by the losses documented in the spreadsheet shared with Kozko. SOMF, ¶ 27. Kozko's instruction to Griffin to submit his losses as company "expenses" displays his recognition of the injuries as having been caused by MSG's failure to relocate Griffin. SOMF, ¶ 29. The relief requested, monetary damages, would specifically remedy the losses incurred by Griffin. Further, Griffin's standing to bring this claim was implicitly affirmed in the Court's Order on the Motion to Dismiss, which found Griffin properly alleged a claim for promissory estoppel. *See* D.E. 22. Therefore, Griffin possesses the requisite standing to bring this claim for promissory estoppel and is entitled to judgment as a matter of law on MSG's Sixteenth Affirmative Defense.

### l.  Seventeenth Affirmative Defense

In its Seventeenth Affirmative Defense, MSG alleges that Griffin's claims are barred by the doctrine of waiver. D.E. 23, p.6. In order to succeed on a waiver defense, MSG must prove "(1) the existence, at the time of the waiver, of a right, privilege, advantage, or benefit which may be waived; (2) the actual or constructive knowledge thereof; and (3) an intention to relinquish such right, privilege, advantage, or benefit." *Witt v. Metro. Life Ins. Co.*, 772 F.3d 1269, 1279 (11th Cir.

2014). However, there is nothing in the record to suggest that Griffin intentionally relinquished any of his claims. Because MSG can present no evidence to support this defense, Griffin is entitled to judgment as a matter of law on MSG's Seventeenth Affirmative Defense.

### m. Eighteenth Affirmative Defense

In its Eighteenth Affirmative Defense, MSG alleges the doctrine of estoppel bars Griffin's claims. D.E. 23, p.6. To establish estoppel is warranted, the following elements must be shown "1) a representation as to a material fact that is contrary to a later-asserted position; 2) reliance on that representation; and 3) a change in position detrimental to the party claiming estoppel, caused by the representation and reliance thereon." *Treminio v. Crowley Mar. Corp.*, 649 F. Supp. 3d 1223, 1238 (M.D. Fla. 2023). However, there is no evidence that Griffin made a representation to MSG that is contrary to a later-asserted position, or that MSG relied on any representation of Griffin to its detriment when failing to complete the relocation agreement. Accordingly, Griffin is entitled to judgment as a matter of law on MSG's Eighteenth Affirmative Defense.

### n. Nineteenth Affirmative Defense

Lastly, in its Nineteenth Affirmative Defense, MSG alleges that Griffin's claims are "barred to the extent he failed to reasonably mitigate any damages he may have suffered." D.E. 23, p.7. First, MSG's defense is entirely conclusory and devoid of any facts detailing how Griffin allegedly failed to mitigate his damages and is therefore legally insufficient. *Cf. Hernandez v. Ticketmaster, LLC*, 2018 WL 2198457, at *5 (S.D. Fla. May 14, 2018) (striking defense where defendant failed to explain how plaintiff failed to mitigate her damages). Besides, in Florida, "[t]here is no actual duty to mitigate, because the injured party is not compelled to undertake any ameliorative efforts. The doctrine simply prevents a party from recovering those damages inflicted by a wrongdoer that the injured party *could have* reasonably avoided." *Sys. Components Corp. v. Fla. Dep't of Transp.*,

14 So. 3d 967, 982 (Fla. 2009). Here, Griffin could not have reasonably avoided the damages he suffered, and MSG does not present any evidence to the contrary. Therefore, Griffin is entitled to judgment as a matter of law on MSG's Nineteenth Affirmative Defense.

## CONCLUSION

WHEREFORE, Plaintiff Zachary Griffin respectfully requests that the Court enter an order granting Plaintiff's Motion for Summary Judgment; enter judgment against Defendant Motorsport Games Inc.; and grant any and all other relief this Court deems just, proper, and equitable.

Dated: March 19, 2025

Respectfully submitted,

By: */s/Eduardo A. Maura*
    Eduardo A. Maura, Esq.
    Florida Bar No. 91303
    eduardo@ayalalawpa.com
    Luis F. Quesada Machado, Esq.
    Florida Bar No. 1010305
    lquesada@ayalalawpa.com
    **Ayala Law, P.A.**
    2490 Coral Way, Ste 401
    Miami, FL 33145
    P: (305) 570-2208
    F: (305) 503-7206
    *Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I certify that on March 19, 2025, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will serve a copy of it by Notice of Electronic Mail to all counsel of record.

By: */s/Eduardo A. Maura*
    Eduardo A. Maura, Esq.
    Florida Bar No. 91303