## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### Case No. 24-cv-21929-BLOOM/Elfenbein

| | |
|---|---|
| ZACHARY GRIFFIN, | \| |
| | \| |
| Plaintiff, | \| |
| | \| |
| v. | \| |
| | \| |
| MOTORSPORT GAMES INC., | \| |
| | \| |
| Defendant. | \| |
| _____ | \| |

### PLAINTIFF'S RESPONSE TO DEFENDANT'S STATEMENT OF MATERIAL FACTS

Pursuant to Fed. R. Civ. P. 56 and S.D. Fla. L.R. 56.1, Plaintiff Zachary Griffin ("Griffin"), through his undersigned counsel, hereby submits the following response to Defendant Motorsport Games Inc.'s ("MSG") Statement of Material Facts [D.E. 42]:

1.      Undisputed.

2.      Undisputed.

3.      Undisputed.

4.      Undisputed.

5.      Undisputed.

6.      Undisputed.

7.      Disputed. Griffin's employment with MSG-Aus did not end on November 3, 2023, because the company has not been shut down in accordance with the notice of termination provided by MSG-Aus. *See* Griffin Decl., ¶ 37, at **Exhibit 1**; D.E. 42-1, 178:10-25, 180:21-181:6.

8.      Undisputed as to the quoted language.

9.      Undisputed as to the quoted language.

1

10.    Undisputed that Griffin never executed a written employment contract with MSG. Disputed that Griffin did not have an oral employment agreement with MSG. *See* **Ex. 1**, **¶¶** 7, 8.

11.    Undisputed.

12.    Undisputed.

13.    Undisputed.

14.    Undisputed.

15.    Undisputed.

16.    Undisputed.

17.    Undisputed.

18.    Undisputed that Jack Griffin, MSG's VP of Studios announced Griffin's promotion to "Director of Technology." Disputed that Griffin unilaterally "agreed to pursue the process for potentially relocating to Miami," as opposed to being asked to relocate by MSG. *See* **Ex. 1**, ¶ 8.

19.    Disputed. The agreement was amended to reflect his new dual role, which included his role as Director of Technology with MSG. *See* **Ex. 1**, ¶ 8.

20.    Undisputed as to the quoted language.

21.    Undisputed.

22.    Undisputed.

23.    Undisputed.

24.    Undisputed as to the quoted language.

25.    Undisputed.

26.    Undisputed.

27.    Undisputed.

28.    Undisputed.

29.     Undisputed.

30.     Undisputed as to the quoted language.

31.     Undisputed.

32.     Undisputed.

33.     Undisputed.

34.     Undisputed.

35.     Undisputed.

36.     Undisputed.

37.     Undisputed.

38.     Undisputed that Malavolta sent a letter to Griffin. Disputed that the agreement being amended was between Griffin and MSG-Aus, rather than MSG. *See* **Ex. 1**, ¶ 9.

39.     Undisputed that the parties agreed to raise Griffin's compensation. Disputed that the contract being amended was between Griffin and MSG-Aus, rather than MSG. *See* **Ex. 1**, ¶ 9.

40.     Undisputed.

41.     Undisputed.

42.     Undisputed.

43.     Undisputed.

44.     Undisputed.

45.     Undisputed that the visa petition was not filed. Disputed that there were never any communications between Griffin and Cammisa Markel. *See* **Ex. 1**, ¶ 22.

46.     Undisputed.

47.     Undisputed that Griffin and Kozko renegotiated Griffin's employment agreement. Disputed that the agreement being renegotiated was with MSG-Aus. *See* **Ex. 1**, ¶¶ 8, 9.

48.     Undisputed.

49.     Disputed. The negotiations, and Kozko's offers of incentives, were in response to, and in satisfaction of, Griffin's demand for the agreed-upon reimbursement. *See* D.E. 43-1, 144:8-13; **Ex. 1**, ¶¶ 23, 33.

50.     Undisputed.

51.     Undisputed.

52.     Undisputed.

53.     Undisputed as to the quoted language.

54.     Undisputed.

55.     Undisputed.

56.     Undisputed.

57.     Objection. The material cited to support this fact cannot be presented in a form that would be admissible in evidence because it is unauthenticated. *See* Fed. R. Civ. P. 56(c)(2); *Migdal Ins. Co., Ltd. v. Schenker Int'l Inc.*, No. 07-21011-CIV, 2009 WL 10669109, at *4, n.2 (S.D. Fla. Feb. 20, 2009) (noting "unauthenticated documents or hearsay evidence should not be considered on summary judgment").

58.     Undisputed.

59.     Undisputed that Griffin requests the difference between what he spent by relocating in Miami versus what he would have spent in Australia and that Griffin includes expenses for tax bracket difference and loss of wife's income. Disputed that Griffin included the cost of his wedding as part of his damages. *See* **Ex. 1**, ¶ 21, Ex. J; D.E. 42-1, 202:10-22.

60.     Undisputed as to the quoted language. Disputed that the Complaint does not specify which written and oral promises were made. *See* D.E. 1, ¶¶ 9, 17, 27.

61.     Undisputed.

62.     Undisputed that an oral promise was made around September 8, 2021, and included Griffin relocating to Miami. Disputed that other terms were not included; the oral promise included $240,000 as a base compensation, $70,000 as a guaranteed annual bonus, and visa sponsorship for Griffin and his wife. *See* D.E. 42-1, 105:19-106:24.

63.     Undisputed as far as neither party terminated the at-will employment relation early.

64.     Undisputed.

65.     Undisputed that the promise made by MSG on September 8, 2021, did not cover reimbursement of expenses because no expenses had been incurred.

66.     Undisputed.

67.     Undisputed.

68.     Undisputed.

69.     Objection. The material cited to support this fact cannot be presented in a form that would be admissible in evidence because it is a legal conclusion. *See* Fed. R. Civ. P. 56(c)(2). "The evidence presented cannot consist of conclusory allegations, legal conclusions or evidence which would be inadmissible at trial." *Jerome v. Hertz Corp.*, 15 F. Supp. 3d 1225, 1232 (M.D. Fla. 2014). MSG did not fulfill its promise to provide immigration services through Katsman because Katsman provided false advice regarding the visa process which led to Griffin being unable to secure a visa. *See* **Ex. 1**, ¶¶ 18, 20.

70.     Undisputed.

71.     Undisputed.

72.     Undisputed that Griffin testified that he did not recall, at the time of his deposition, requesting any guaranty from MSG that MSG refused to provide.

73.     Undisputed.

74.     Disputed. Kozko agreed that MSG would cover the losses that Griffin had suffered. *See* **Ex. 1**, ¶ 23.

75.     Undisputed.

76.     Undisputed.

77.     Undisputed that Griffin testified that he did not recall, at the time of his deposition, actions which he had done in reliance on the promise made on October 21, 2022.

## ADDITIONAL FACTS

78.     In March 2021, MSG acquired the rights to the game *KartKraft* from Black Delta, an Australian company where Griffin was a shareholder. Prior to the close of the acquisition, MSG set up a local entity called Motorsport Games Australia Pty Ltd ("MSG-Aus"). On March 16, 2021, Griffin was hired by MSG as Director of Studio of MSG-Aus. *See* **Ex. 1**, ¶ 2.

79.     Griffin's employment contract with MSG-Aus allowed termination by MSG-Aus with only eight weeks' notice for "ordinary and customary turnover of business or other operational requirements of the Employer's business." *See* **Ex. 1**, ¶ 3, Ex. A.

80.     Likewise, all MSG's employment agreements include clauses allowing termination by either the employee or MSG "at any time and without notice, for any lawful reason." *See* **Ex. 1,** ¶ 4, Ex. B.

81.     On August 9, 2021, Griffin traveled to Miami at the request of MSG's CEO, Dmitry Kozko ("Kozko"). *See* **Ex. 1,** ¶ 5, Ex. C.

82.     On or about August 18, 2021, while in Miami, Kozko requested that Griffin relocate from Australia to Miami, Florida to work in MSG's Miami office. *See* **Ex. 1**, ¶ 6.

83.     On September 8, 2021, Mr. Kozko and Griffin orally agreed to the terms of Griffin's relocation to MSG's Miami office (the "Relocation Agreement"). *See* **Ex. 1**, ¶ 7.

84.     The terms of the Relocation Agreement included Griffin's promotion to Director of Technology; a base salary of $240,000 per year; an annual bonus of $70,000; and visa sponsorship for Griffin and his wife. *See* **Ex. 1**, ¶ 8.

85.     On January 5, 2022, Kozko forwarded Griffin a text conversation between Kozko and then MSG President, Stephen Hood, discussing Griffin's relocation to Miami, where Kozko stated he had "asked [Griffin] to come and . . . mov[e] here permanently." *See* **Ex. 1**, ¶ 9, Ex. D.

86.     On February 7, 2022, Dara Malavolta ("Malavolta"), MSG's Director of Human Resources, sent an email to ADP, copying Griffin, informing ADP that "one of [MSG's] Directors, is moving to the US from Australia with his wife in March." *See* **Ex. 1**, ¶ 10.

87.     On March 12, 2022, Kozko sent an email to MSG's Head of Communications, Anne Dongois, and MSG's Executive Producer, Andy Stack, introducing Griffin as MSG's new "Global Director of Technology," and stating that he was "on his way to relocate to Miami with his family." *See* **Ex. 1**, ¶ 11, Ex. E.

88.     On or around May 6, 2022, Griffin requested from Kozko and MSG a letter stating that Griffin would be "receiving a paycheck with [his] new move to Florida." *See* **Ex. 1**, ¶ 12.

89.     On May 9, 2022, Malavolta, who works in MSG's United States operation out of the Miami office, sent Griffin a revised employment agreement, including the revision to the bonus and a cover letter to be submitted to HOA, which misrepresented the date of the relocation request as being May 6, 2022. *See* **Ex. 1**, ¶ 13, Exs. F-G.

90.     On or around May 21, 2022, Griffin secured a fifteen-month lease with The Bozzuto Group, aided by the cover letter provided by Malavolta and Kozko serving as guarantor, providing paystubs in support of Griffin. *See* **Ex. 1**, ¶ 14, Exs. H-I.

91.     Griffin selected a fifteen-month lease, rather than a twelve-month lease, because the fifteen-month lease was $1,000 cheaper than the twelve-month lease. *See* **Ex. 1**, ¶ 15.

92.     Under the lease agreement, terminating the lease early would have cost Griffin two month's rent, or nearly $20,000, and an additional $9,600 lease break fee. *See* **Ex. 1**, ¶ 16.

93.     On June 8, 2022, Katsman, LeCheminant, Malavolta,[1] and Griffin had a video call, where Katsman told Griffin that he did not know that the income years for tax purposes in Australia were different than in the United States. *See* **Ex. 1**, ¶ 17.

94.     Katsman also told Griffin that his FY20/21 tax returns could not be submitted with the L-1 visa petition because it did not demonstrate 12 months of employment. *See* **Ex. 1**, ¶ 18.

95.     Based on Katsman's statement, Griffin believed that he had no other choice than to wait to file the L-1 visa petition until he had his FY21/22 tax return. *See* **Ex. 1**, ¶ 19.

96.     Katsman did not follow up or otherwise communicate with Griffin following this June 8 call. *See* **Ex. 1**, ¶ 20.

97.     On or around October 18, 2022, Griffin shared a spreadsheet that detailed the losses Griffin had suffered with Kozko. The costs of Griffin's wedding were deducted from the damage's calculation. *See* **Ex. 1**, ¶ 21, Ex. J; D.E. 42-1, 202:10-22.

98.     On or around October 19, 2022, Griffin met a second immigration attorney, Camissa Markel, who confirmed that Katsman was mistaken as to the requirement of Griffin's FY21/22 tax return for his L-1 visa petition. *See* **Ex. 1**, ¶ 22.

_____

[1] At some point between 2022 and 2023, Malavolta changed her last name to "Acker."

99.     On October 21, 2022, Kozko and Griffin met to review the spreadsheet, and Kozko instructed Griffin to "submit the [losses] as expenses" so that MSG could cover them, through both reimbursement and a bonus due on release of one of the game updates. During this meeting, Kozko edited the spreadsheet. *See* **Ex. 1**, ¶ 23.

100.    On November 3, 2022, Griffin was asked if he was aware of anything that would have a material effect on MSG's financial condition, cash flows, or results of operation that would be of importance to MSG shareholders. Griffin responded that it was highly likely that the release of the game *INDYCAR23* would be pushed to at least September 2023. *See* **Ex. 1**, ¶ 24.

101.    Kozko reprimanded Griffin after being asked to meet with MSG's finance team due to Griffin's disclosure, stating: "You shouldn't say things like that to finance." *See* **Ex. 1**, ¶ 25.

102.    On or about November 7, 2022, Kozko informed Griffin that the company did not have enough cash to last to the end of the year. *See* **Ex. 1**, ¶ 26.

103.    On or around November 28, 2022, Griffin advised Mr. Kozko that because of salary delays and $428,000 in unpaid invoices, development across most of MSG products was blocked. *See* **Ex. 1**, ¶ 27.

104.    On or around December 7, 2022, Griffin advised Kozko that the account for MSG in Australia had suspended all services due to unpaid invoices. *See* **Ex. 1**, ¶ 28.

105.    On December 8, 2022, Griffin emailed Kozko to inform him that MSG was at risk of trading insolvent in Australia due to its mounting debts. *See* **Ex. 1**, ¶ 29.

106.    On or around December 13, 2022, Kozko expressed to Griffin that the December 8, 2022, email had "caused some issues." *See* **Ex. 1**, ¶ 30.

107.    On December 28, 2022, Griffin asked Kozko for a timeframe on when Griffin would receive the agreed-upon compensation for his losses. *See* **Ex. 1**, ¶ 31.

108.    On January 11, 2023, Kozko reneged on his prior agreement for MSG to pay for Griffin's losses, stating "there's no way the company's going to have a half-million-dollar cost on you," referring to the estimated amount of Griffin's losses. *See* **Ex. 1**, ¶ 32.

109.    On or around January 14, 2023, Mr. Kozko offered Griffin a plan of three bonuses, totaling $250,000, to settle Griffin's losses. *See* **Ex. 1**, ¶ 33, Ex. K.

110.    On or around February 27, 2023, Griffin received an email from Malavolta offering an increase in Griffin's compensation, different from the offer made by Kozko on January 14, 2023. *See* **Ex. 1**, ¶ 34, Ex. L.

111.    While Griffin made multiple attempts to finalize in good faith the conditions of the new proposed bonuses, negotiations stalled following Malavolta's email. *See* **Ex. 1**, ¶ 35.

112.    On November 3, 2023, Griffin was relieved from his role as Director of Technology with MSG. *See* **Ex. 1**, ¶ 36; D.E. 42-49.

113.    Griffin still holds the position of Director of Motorsport Games Australia Pty Ltd, as the company has not been shut down in accordance with the notice of termination provided by MSG-Aus. *See* **Ex. 1**, ¶ 37; D.E. 42-1, 178:10-25.

114.    At all relevant times, Griffin and his wife shared the costs of living, including rent. *See* **Ex. 1**, ¶ 38.

Dated: April 4, 2025

Respectfully submitted,

By: */s/Eduardo A. Maura*
    Eduardo A. Maura, Esq.
    Florida Bar No. 91303
    eduardo@ayalalawpa.com
    Luis F. Quesada Machado, Esq.
    Florida Bar No. 1010305
    lquesada@ayalalawpa.com
    **Ayala Law, P.A.**
    2490 Coral Way, Ste 401

Miami, FL 33145
P: (305) 570-2208
*Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on April 4, 2025, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will serve a copy of it by Notice of Electronic Mail to all counsel of record.

By: */s/Eduardo A. Maura*
Eduardo A. Maura, Esq.
Florida Bar No. 91303