UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

**Case No. 24-cv-21929-BLOOM/Elfenbein**

ZACHARY GRIFFIN,

    Plaintiff,

v.

MOTORSPORT GAMES INC.,

    Defendant.

_____

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S
<u>MOTION FOR SUMMARY JUDGMENT</u>**

Eduardo A. Maura, Esq.
Florida Bar No. 91303
eduardo@ayalalawpa.com
Luis F. Quesada Machado, Esq.
Florida Bar No. 1010305
lquesada@ayalalawpa.com
**Ayala Law, P.A.**
2490 Coral Way, Ste 401
Miami, FL 33145
P: (305) 570-2208
F: (305) 503-7206
*Counsel for Plaintiff*

**TABLE OF CONTENTS**

**BACKGROUND** ................................................................................................................... 1

**LEGAL STANDARD** .......................................................................................................... 5

**ARGUMENT** ........................................................................................................................ 6

I.  There is a genuine dispute of material fact that MSG's promise to relocate Griffin is enforceable. ........................................................................................................................ 6

    a.  Griffin's promissory estoppel claim consists of only one promise. ............................... 6

    b.  The oral agreement does not fall within the statute of frauds. ....................................... 6

    c.  There is a genuine dispute of material fact that the oral promise was not fulfilled. ... 9

II. There is a genuine dispute of material fact that MSG's promise to compensate Griffin for his expenses was enforceable. ........................................................................................ 10

III. Griffin has standing to recover lost wages for both him and his wife. .............................. 12

**CONCLUSION** .................................................................................................................. 13

## **TABLE OF CITATIONS**

### CASES

*All Brand Importers, Inc. v. Tampa Crown Distributors, Inc.*,
    864 F.2d 748 (11th Cir. 1989) ................................................................................ 8

*Avisena, Inc. v. Santalo*,
    65 So. 3d 14 (Fla. Dist. Ct. App. 2011) ..................................................................11

*Baxter v. Roberts*,
    54 F.4th 1241 (11th Cir. 2022) ................................................................................ 6

*Bloch v. Wells Fargo Home Mortg.*,
    755 F.3d 886 (11th Cir. 2014) ................................................................................10

*Butterworth v. Lab'y Corp. of Am. Holdings*,
    581 F. App'x 813 (11th Cir. 2014) ..................................................................... 7, 8

*Diaz v. Carnival Corp.*,
    555 F. Supp. 3d 1302 (S.D. Fla. 2021) ..................................................................... 6

*First Realty Inv. Corp. v. Gallaher*,
    345 So. 2d 1088 (Fla. Dist. Ct. App. 1977) ............................................................. 7

*Gregory v. Miami-Dade Cnty.*,
    2015 WL 12001281 (S.D. Fla. Aug. 21, 2015) ......................................................11

*In re Blunt*,
    210 B.R. 626 (Bankr. M.D. Fla. 1997) ...................................................................10

*MacIntyre v. Lender Processing Servs. Inc.*,
    2014 WL 12689881 (M.D. Fla. Apr. 29, 2014) ....................................................... 8

*Merle Wood & Assocs., Inc. v. Trinity Yachts, LLC*,
    714 F.3d 1234 (11th Cir. 2013) ............................................................................... 6

*Sierra v. City of Hallandale Beach, Fla.*,
    996 F.3d 1110 (11th Cir. 2021) ..............................................................................12

*Taxinet Corp. v. Leon*,
    114 F.4th 1212 (11th Cir. 2024) .............................................................................. 7

*TransUnion LLC v. Ramirez*,
    594 U.S. 413 (2021) ...............................................................................................12

*Trichell v. Midland Credit Mgmt., Inc.*,
    964 F.3d 990 (11th Cir. 2020) ------------------------------------------------------------------------------------12

*Victor Elias Photography, LLC v. ICE Portal, Inc.*,
    43 F.4th 1313 (11th Cir. 2022) ------------------------------------------------------------------------------------ 5

S<span style="font-size:smaller">TATUTES</span>

Fla. Stat. § 725.01 ------------------------------------------------------------------------------------------------ 7

R<span style="font-size:smaller">ULES</span>

Fed. R. Civ. P. 56 ------------------------------------------------------------------------------------------------ 5

Pursuant to Fed. R. Civ. P. 56 and S.D. Fla. L.R. 56.1, Plaintiff Zachary Griffin ("Griffin"), by and through his undersigned counsel, hereby submits this response in opposition to Defendant Motorsport Games Inc.'s ("MSG") Motion for Summary Judgment [D.E. 43], and states:

## BACKGROUND

Defendant is a racing videogames developer, publisher, and e-sports ecosystem provider of official motorsports racing series throughout the world. SOMF, ¶ 2.[1] In March 2021, MSG acquired the rights to the videogame *KartKraft* from Black Delta, an Australian company where Griffin was a shareholder. AF, ¶ 78. Prior to the close of the acquisition, MSG set up a local company named Motorsport Games Australia Pty Ltd ("MSG-Aus"). AF, ¶ 78. On March 16, 2021, Griffin was hired by MSG as Director of Studio of MSG-Aus. AF, ¶ 78. Griffin's employment contract with MSG-Aus allowed termination with only eight weeks' notice for "ordinary and customary turnover of business or other operational requirements of the Employer's business." AF, ¶ 79.

On August 9, 2021, Griffin traveled to Miami at the request of MSG's CEO, Dmitry Kozko ("Kozko"). AF, ¶ 81. On August 18, 2021, while in Miami, Kozko requested that Griffin relocate from Australia to Miami, Florida to work in MSG's Miami office. AF, ¶ 82. On September 8, 2021, Kozko and Griffin orally agreed to the terms of Griffin's relocation to MSG's office in Miami (the "Relocation Agreement"). AF, ¶ 83. The Relocation Agreement terms included Griffin's promotion to Director of Technology; a base salary of $240,000.00 per year; an annual bonus of $70,000.00; and visa sponsorship for Griffin and his wife. AF, ¶ 84. The next day, on September 9, 2021, MSG's General Counsel, Amanda LeCheminant ("LeCheminant"), introduced Griffin to Mark Katsman ("Katsman"), the immigration lawyer recommended by MSG to handle the relocation to Miami.

---

[1] In this brief, "SOMF" refers to Defendant's Statement of Material Facts [D.E. 42]; "AF" refers to Additional Facts in Plaintiff's Response to Defendant's Statement of Material Facts [D.E. 52].

1

SOMF, ¶ 14. On October 6, 2021, MSG's VP of Studios, Jack Griffin, then sent an email to MSG executives to announce that Griffin would "become our MSGM Studios' Director of Technology." SOMF, ¶ 18.

On January 5, 2022, Kozko forwarded Griffin a text conversation between Kozko and then MSG President, Stephen Hood, discussing Griffin's relocation to Miami, where Kozko stated that he had "asked [Griffin] to come and . . . mov[e] here permanently." AF, ¶ 85. On January 6, 2022, Katsman provided Griffin with a checklist of documents required for relocation to Miami. SOMF, ¶ 29. On February 7, 2022, Dara Malavolta ("Malavolta"), MSG's Director of Human Resources, sent an email to ADP, copying Griffin, informing ADP that "one of [MSG's] Directors, is moving to the US from Australia with his wife in March." AF, ¶ 86. On March 12, 2022, Kozko sent an email to MSG's Head of Communications, Anne Dongois, and MSG's Executive Producer, Andy Stack, introducing Griffin as MSG's new "Global Director of Technology," and stating that he was "on his way to relocate to Miami with his family." AF, ¶ 87.

In April 2022, Griffin and his wife traveled to Miami, with supporting documents for their relocation. SOMF, ¶ 32. On or around April 20, 2022, with Kozko's approval, Griffin applied for a 15-month lease on behalf of MSG for him and his wife with The Bozzuto Group. SOMF, ¶ 33. On or around April 27, 2022, The Bozzuto Group denied the lease application. SOMF, ¶ 33. On or around May 6, 2022, Griffin requested from Kozko and MSG a letter stating that Griffin would be "receiving a paycheck with [his] new move to Florida." AF, ¶ 88. On or about May 6, 2022, Kozko requested that Griffin agree to a reduction in his bonus to $48,000.00, from the previously agreed $70,000.00, based on MSG's financial position. SOMF, ¶ 38. As an incentive to accept the reduced bonus, Kozko offered that the reduced bonus be split into two payments, with the first payable in June. SOMF, ¶ 38. On May 9, 2022, Malavolta, who works in MSG's United States operation out

2

of the Miami office, sent Griffin a revised employment agreement, including the revision to the bonus and a cover letter to be submitted to HOA, which misrepresented the date of the relocation request as being May 6, 2022. AF, ¶ 89. On or around May 21, 2022, Griffin secured a 15-month lease with The Bozzuto Group, aided by the cover letter provided by Malavolta and Kozko serving as guarantor, providing paystubs in support of Griffin. AF, ¶ 90. Griffin selected a 15-month lease, rather than a 12-month lease, because the 15-month lease was $1,000 cheaper than the 12-month lease. AF, ¶ 91.

On June 8, 2022, Katsman, LeCheminant, Malavolta,[2] and Griffin had a video call, where Katsman told Griffin that he did not know that the income years for tax purposes in Australia were different than in the United States. AF, ¶ 93. Katsman also told Griffin that his FY20/21 tax returns could not be submitted with the L-1 visa petition because it did not demonstrate twelve months of employment. AF, ¶ 94. Based on Katsman's statement, Griffin believed that he had no other choice than to wait to file the L-1 visa petition until he had his FY21/22 tax return. AF, ¶ 95. Katsman did not follow up or otherwise communicate with Griffin following this June 8 call. AF, ¶ 96.

On or around October 18, 2022, Griffin shared a spreadsheet that detailed the losses he had suffered with Kozko. AF, ¶ 97. The costs of Griffin's wedding were deducted from the calculation of damages. AF, ¶ 97. On or around October 19, 2022, Griffin met a second immigration attorney, Camissa Markel, who confirmed Katsman was mistaken as to the requirement of Griffin's FY21/22 tax return for his L-1 visa petition. AF, ¶ 98. On October 21, 2022, Kozko and Griffin met to review the spreadsheet, and Kozko instructed Griffin to "submit the [losses] as expenses" so that MSG could cover them, through both reimbursement and a bonus due on release of one of the game updates. AF, ¶ 99. During this meeting, Kozko edited the spreadsheet. AF, ¶ 99.

---

[2] At some point between 2022 and 2023, Malavolta changed her last name to "Acker."

3

On November 3, 2022, Griffin was asked if he was aware of anything that would have a material effect on MSG's financial condition, cash flows, or results of operation that would be of importance to MSG shareholders. AF, ¶ 100. Griffin responded that it was highly likely that the release of the game *INDYCAR23* would be pushed to at least September 2023. AF, ¶ 100. Kozko reprimanded Griffin after being asked to meet with MSG's finance team due to Griffin's disclosure, stating: "You shouldn't say things like that to finance." AF, ¶ 101. On or about November 7, 2022, Kozko informed Griffin that the company did not have enough cash to last to the end of the year. AF, ¶ 102. On or around November 28, 2022, Griffin advised Mr. Kozko that because of salary delays and $428,000 in unpaid invoices, development across most of MSG products was blocked. AF, ¶ 103. On or around December 7, 2022, Griffin advised Kozko that the account for MSG in Australia had suspended all services due to unpaid invoices. AF, ¶ 104. On December 8, 2022, Griffin emailed Kozko to inform him that MSG was at risk of trading insolvent in Australia due to its mounting debts. AF, ¶ 105. On or around December 13, 2022, Kozko expressed to Griffin that the December 8, 2022, email had "caused some issues." AF, ¶ 106.

On December 28, 2022, Griffin asked Kozko for a timeframe on when he would receive the agreed-upon compensation for his losses. AF, ¶ 107. On January 11, 2023, Kozko reneged on his prior agreement for MSG to pay for Griffin's losses, stating "there's no way the company's going to have a half-million-dollar cost on you," referring to the estimated amount of Griffin's losses. AF, ¶ 108. On or about January 14, 2023, Mr. Kozko offered Griffin a plan of three bonuses, totaling $250,000, to settle Griffin's losses. AF, ¶ 109. On or around February 27, 2023, Griffin received an email from Malavolta offering an increase in Griffin's compensation, different from the offer made by Kozko on January 14, 2023. AF, ¶ 110. While Griffin made multiple attempts to finalize in good faith the conditions of the new proposed bonuses, negotiations stalled following

4

Malavolta's email. AF, ¶ 111. On November 3, 2023, Griffin was relieved from his role as Director of Technology with MSG. AF, ¶ 112. Griffin still holds the position of Director of Motorsport Games Australia Pty Ltd, as the company has not been shut down in accordance with the notice of termination provided by MSG-Aus. AF, ¶ 113. At all relevant times, Griffin and his wife shared the costs of living, including rent. AF, ¶ 114.

On May 20, 2024, Griffin filed his Complaint against MSG for (i) breach of contract; (ii) breach of the covenant of good faith and fair dealing; (iii) promissory estoppel; and (iv) breach of fiduciary duty. *See* D.E. 1. On July 8, 2024, MSG filed a Motion to Dismiss, arguing that Griffin had failed to state a claim upon which relief could be granted. *See* D.E. 13. On October 24, 2024, the Court dismissed Griffin's claims for breach of contract; breach of the covenant of good faith and fair dealing; and breach of fiduciary duty. *See* D.E. 22. On November 6, 2024, MSG filed its Answer to the Complaint, which asserts nineteen (19) boilerplate "affirmative" defenses. *See* D.E. 23. On March 19, 2025, the parties filed cross-motions for summary judgment. *See* D.E. 43, 45. As explained below, MSG is not entitled to summary judgment on Count III of the Complaint for promissory estoppel.

## **LEGAL STANDARD**

Under Rule 56(a), the Court may grant summary judgment only when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if "it has the potential to affect the outcome of the case," and a dispute is "genuine" when "a reasonable jury could return a verdict for the non-moving party." *Victor Elias Photography, LLC v. ICE Portal, Inc.*, 43 F.4th 1313, 1319 (11th Cir. 2022). "At the summary judgment stage, the Court's function is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Diaz*

5

*v. Carnival Corp.*, 555 F. Supp. 3d 1302, 1304 (S.D. Fla. 2021). On summary judgment, the Court must "view the evidence, draw all reasonable factual inferences, and resolve all reasonable doubts in favor of the non-movant." *Baxter v. Roberts*, 54 F.4th 1241, 1253 (11th Cir. 2022).

## ARGUMENT

**I.   There is a genuine dispute of material fact that MSG's promise to relocate Griffin is enforceable.**

  **a.  Griffin's promissory estoppel claim consists of only one promise.**

In Count III of his Complaint, Griffin brings a claim for promissory estoppel against MSG. *See* D.E. 1, ¶¶ 59-64. As a threshold matter, it is important to note that Griffin's promissory estoppel claim consists of one single promise, Kozko's promise to Griffin to relocate him from Australia to the U.S. so that Griffin could work in MSG's Miami office as Director of Technology. This structure of the promise is the one used by Griffin when he pled his claim for promissory estoppel. *See id.* While MSG attempts to frame Kozko's later agreement to reimburse Griffin's losses as a second, separate promise, Kozko's undertaking to reimburse Griffin's losses was done in substitution of the original promise. Therefore, Kozko's actions are closer to a proposed settlement of a potential dispute related to the original promise rather than an entirely separate promise. Hence, Griffin's promissory estoppel claim should be analyzed using the structure of the promise Griffin has plead in his Complaint. *Cf. Merle Wood & Assocs., Inc. v. Trinity Yachts, LLC*, 714 F.3d 1234, 1237 (11th Cir. 2013) ("Plaintiffs are the masters of their claims. [. . .] [B]ecause a plaintiff may not amend her complaint through argument in a brief opposing summary judgment, we do not simply ignore the allegations in the complaint.").

  **b.  The oral agreement does not fall within the statute of frauds.**

Florida's statute of frauds provides, in pertinent part, that: "No action shall be brought . . . upon any agreement that is not to be performed within the space of 1 year from the making thereof,

6

. . . unless the agreement or promise upon which such action shall be brought, or some note or memorandum thereof shall be in writing and signed by the party to be charged therewith." Fla. Stat. § 725.01. Nevertheless, "[i]f full performance is possible within one year from the inception of the contract, the statute of frauds does not apply." *Taxinet Corp. v. Leon*, 114 F.4th 1212, 1231 (11th Cir. 2024); *see also Butterworth v. Lab'y Corp. of Am. Holdings*, 581 F. App'x 813, 819 (11th Cir. 2014) ("Only if a contract could not possibly be performed within one year would it fall within the statute."). "The primary factor to be utilized in determining whether or not an oral contract is to be performed within the one year limitation of the statute is, of course, the intent of the parties." *First Realty Inv. Corp. v. Gallaher*, 345 So. 2d 1088, 1089 (Fla. Dist. Ct. App. 1977).

MSG's promise to relocate Griffin from Australia to the US could have been accomplished within one year. Indeed, MSG has presented no evidence that Griffin's immigration process to the US, if handled correctly, could not have been completed within one year. The parties' intention for Griffin to complete his relocation within one year is patently clear from the fact that Griffin secured a lease in Miami on or around May 21, 2022, eight months after Kozko and Griffin orally agreed to the terms of Griffin's relocation. AF, ¶¶ 83, 90. While the lease was for a 15-month period, rather than a 12-month period, the election for the 15-month period was a decision based on costs, rather than intended length of stay, because the 15-month lease was $1,000 cheaper than the 12-month option. AF, ¶ 91. In any case, MSG's promise was to bring Griffin and his wife to the US under a work visa, something that could be done in one year. The length of a lease for an apartment to be occupied *after* Griffin and his wife were brought to the US is irrelevant.

Even if we assume that the promise included Griffin's employment in the US, this was also possible to be completed within one year. The case law cited by MSG in support of their proposition that the possibility of termination within a year does not remove an oral contract from the statute

7

of frauds is limited to cases where a contract is only terminable <u>for cause</u>, rendering termination within one year significantly less likely. *See* D.E. 43, p.8; *Butterworth*, 581 F. App'x at 819 ("The Florida Statute of Frauds bars enforcement of an oral contract that was intended by the parties to last longer than a year, even though the contract could have been terminated ***for cause*** within a year.") (emphasis added); *also All Brand Importers, Inc. v. Tampa Crown Distributors, Inc.*, 864 F.2d 748, 749 (11th Cir. 1989) ("We hold that the Florida Statute of Frauds, Fla. Stat. § 725.01, bars enforcement of an oral contract that was intended by the parties to last longer than a year, even though the contract could have been terminated ***for cause*** within a year.") (emphasis added). In contrast, contracts that are terminable at-will, and thus not permanent, can be completed within a year, and not barred by the statute of frauds. *See Cabanas v. Womack & Bass, P.A.*, 706 So. 2d 68, 69 (Fla. Dist. Ct. App. 1998) ("Contracts for employment which are terminable at will by either party for an indefinite period of duration do not fall under the statute of frauds."); *MacIntyre v. Lender Processing Servs. Inc.*, 2014 WL 12689881, at *4 (M.D. Fla. Apr. 29, 2014) ("[E]ven if the intent of the parties was to continue the Agreement for an indefinite period of time, the 'at-will' provision removes the Agreement from the purview of the statute of frauds.").

In this case, Griffin's employment agreement with MSG was at-will, meaning it was far more likely that the agreement could be terminated within the one-year period. The at-will status, with possibility of termination without cause of Griffin's employment is shown by his employment agreement with MSG-Aus, which is a subsidiary of MSG and can be inferred to utilize the same employment practices as MSG. AF, ¶ 79. The employment agreement with MSG-Aus included a clause which allowed termination by MSG-Aus with only eight weeks' notice for "ordinary and customary turnover of business or other operational requirements of the Employer's business." AF, ¶ 79. Moreover, Griffin, during his employment with MSG, was aware of other MSG employment

8

agreements that contained even more severe at-will employment clauses, allowing termination by either the employee or the company "at any time and without notice, for any lawful reason." AF, ¶ 80. Because both of these agreements included the possibility of termination without cause with either eight-weeks' notice, for MSG-Aus, or no notice, for MSG, it is clear that MSG generally practiced at-will employment and when it agreed to an oral agreement with Griffin, that agreement operated under the same at-will status. Additionally, unlike several of the cases cited by MSG, the oral agreement between Griffin and MSG lacked any specific compensation or duties assigned beyond a one-year period. Accordingly, even if the intent of the parties was to continue the oral agreement for an indefinite period of time, the "at-will" nature of Griffin's employment removes the agreement from the statute of frauds.

While MSG also cites statements made by Griffin where Griffin described the relocation as permanent these statements are inconclusive, as they were hopeful statements, based on his belief, not certainty, that he could be employed by MSG for more than one year. This belief is entirely conditioned on neither Griffin nor MSG terminating the agreement in accordance with the at-will status of Griffin's employment. Griffin's lease is equally inconclusive, as the structure of the lease being beyond twelve months was a decision based on costs, rather than Griffin's intended length of stay, as the 15-month lease was $1,000 less than the 12-month lease. AF, ¶ 91. Therefore, MSG has not shown that there is not at least a genuine dispute that the oral agreement between Griffin and MSG could possibly have been completed within one year.

c. **There is a genuine dispute of material fact that the oral promise was not fulfilled.**

MSG also alleges that there is no dispute of material fact that the promise was not breached by MSG. *See* D.E. 43, p.9. Specifically, MSG alleges that it fulfilled its promise by paying Griffin's base salary, negotiating an alternative for the bonus, and providing immigration services through

9

Katsman. *See id.* MSG attempts to quote this Court's statements from its order on the motion to dismiss as support. *See id*. However, these statements were made in evaluating Griffin's breach of oral contract claims, which were dismissed and, thus, no longer at issue in this case. *See* D.E. 22, p.10. Those statements are not relevant to establish the injustice element for promissory estoppel, which does not require the same express repudiation that the element of breach requires. Because Griffin took various actions in reliance on MSG's promise and suffered significant financial losses as a result of the failed relocation, there would be great injustice if the promise was not "enforced," or alternatively, if Griffin was not compensated for his losses. In Florida, "the award of damages in a case utilizing the doctrine of promissory estoppel should be the amount necessary to avoid injustice." *In re Blunt*, 210 B.R. 626, 633 (Bankr. M.D. Fla. 1997).

Regardless, it is undeniable MSG did not fulfill the terms of the promise, as MSG failed to relocate Griffin to the US. While MSG alleges that it fulfilled its promise to assist Griffin in the relocation by paying for the immigration attorney and that it is not responsible for the Department of State's actions, MSG fail to acknowledge that a significant reason for Griffin's inability to acquire a visa is the false advice offered by MSG's self-provided attorney, Katsman. Because MSG undertook the obligation to sponsor and assist Griffin's relocation, including offering an attorney to aid, and the attorney provided by MSG was substantially at fault for Griffin's failed relocation, MSG did not fulfill its obligations under the promise.

II. **There is a genuine dispute of material fact that MSG's promise to compensate Griffin for his expenses was enforceable.**

"In Florida, the doctrine of promissory estoppel applies when there is (1) a promise which the promisor should reasonably expect to induce action or forbearance, (2) action or forbearance in reliance on the promise, and (3) injustice resulting if the promise is not enforced." *Bloch v. Wells Fargo Home Mortg.*, 755 F.3d 886, 889 (11th Cir. 2014).

10

MSG alleges that Griffin did not act in reliance on the alleged "second promise," made in October 2022. *See* D.E. 43, p.11. MSG's basis for such an allegation is solely an answer by Griffin where he stated he "d[id not] recall." *Id.* However, when a witness testifies that they do not recall an event, other evidence can be introduced to affirmatively establish the occurrence of that event. *Cf. Gregory v. Miami-Dade Cnty.*, 2015 WL 12001281, at *5 (S.D. Fla. Aug. 21, 2015) ("[A] witness's statement that he 'does not recall' information is insufficient to refute record evidence unequivocally establishing the matter."); *Avisena, Inc. v. Santalo*, 65 So. 3d 14, 19 (Fla. Dist. Ct. App. 2011) ("Such a statement does not create a cognizable contradiction to clear evidence as to what actually occurred.").

Griffin's reliance on MSG's promise is otherwise proven in the record, which indicates that at all relevant times, Griffin continued to accumulate losses, in reliance on the promise by Kozko to reimburse these losses. This includes payment of his lease, which could not be broken without costs of $20,000 in two months' rent and a $9,600 fee for breaking the lease. AF, ¶ 92. Because of Kozko's promise to reimburse these losses, Griffin opted not to break the lease and continue paying it until August, spending more money than it would have cost to break the lease, had he known his costs were unavoidable. AF, ¶ 92. Griffin's reliance on MSG's promise that his expenses would be reimbursed is also proven by his action in bringing up the issue of Kozko's promised compensation again two months later, on December 28, 2022, when he asked for an update on the compensation. AF, ¶ 107.

Despite Griffin's undisputable reliance, Kozko reneged on his promise by refusing to pay the compensation he agreed to. AF, ¶ 108. While MSG attempted to justify Kozko's breach of the promise as being a result of Kozko asking for obscene requests, the spreadsheet which detailed his losses in the entirety was specifically reviewed together by Kozko and Griffin, after which Kozko

11

made the promise to repay the losses. AF, ¶ 99. If Kozko sincerely had these issues with the losses Griffin was claiming, he could have, and would have, raised those concerns at that meeting with Griffin, which was held for the sole purpose of conducting that review. Thus, there is at the very least a genuine dispute of material fact as to whether Griffin acted in reliance on MSG's promise to reimburse his expenses.

### III. Griffin has standing to recover lost wages for both him and his wife.

To have standing, Griffin must show "(i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021). "An injury in fact consists of an invasion of a legally protected interest that is concrete and particularized and actual or imminent, not conjectural or hypothetical." *Trichell v. Midland Credit Mgmt., Inc.*, 964 F.3d 990, 996 (11th Cir. 2020). "An injury is particularized when it affects the plaintiff in a ***personal and individual way***." *Sierra v. City of Hallandale Beach, Fla.*, 996 F.3d 1110, 1113 (11th Cir. 2021) (emphasis added).

MSG alleges that Griffin lacks standing to recover the loss of his wife's wages as his injury. *See* D.E. 43, p.12. However, here, the loss of his wife's wages affected Griffin in a "personal and individual way," as Griffin and his wife shared living costs, so the loss of his wife's wages forced Griffin to carry her burden of living costs, on top of his own, using his personal funds. AF, ¶ 114. Because Griffin is affected in a "personal and individual way" by the loss of his wife's wages, that loss is an injury-in-fact that Griffin has standing to recover. While MSG additionally claims that Griffin is requesting damages for "personal costs such as his wedding costs," these costs were never expected to be reimbursed and had been deducted from the expected costs, as listed in the spreadsheet shared with Kozko. AF, ¶ 97. Accordingly, Griffin possesses standing to recover all

the damages he is seeking because those damages are a result of injuries which affected him in a "personal and individual way."

## CONCLUSION

WHEREFORE, Plaintiff Zachary Griffin respectfully requests that the Court enter an order denying Defendant Motorsport Games, Inc's Motion for Summary Judgment [D.E. 43], and grant any and all other relief this Court deems just, proper, and equitable.

Dated: April 4, 2025

Respectfully submitted,

By: */s/Eduardo A. Maura*
Eduardo A. Maura, Esq.
Florida Bar No. 91303
eduardo@ayalalawpa.com
Luis F. Quesada Machado, Esq.
Florida Bar No. 1010305
lquesada@ayalalawpa.com
**Ayala Law, P.A.**
2490 Coral Way, Ste 401
Miami, FL 33145
P: (305) 570-2208
F: (305) 503-7206
*Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I certify that on April 4, 2025, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will serve a copy of it by Notice of Electronic Mail to all counsel of record.

By: */s/Eduardo A. Maura*
Eduardo A. Maura, Esq.
Florida Bar No. 91303

13