UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 24-cv-21929-BLOOM/Elfenbein

ZACHARY GRIFFIN,

    Plaintiff,

v.

MOTORSPORT GAMES INC.,

    Defendant.

_____/

**DEFENDANT'S RESPONSE IN OPPOSITION**
**TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

**AXS LAW GROUP, PLLC**
2121 NW 2nd Ave, Suite 201
Miami, Florida 33127
Telephone: (305) 297-1878

By: */s/ Alice Ferot*
-Jeffrey W. Gutchess, Esq.
Florida Bar No. 702641
jeff@axslawgroup.com
Alice Ferot, Esq.
alice@axslawgroup.com
Florida Bar No. 101504
eservice@axslawgroup.com

Plaintiff Zachary Griffin's ("Griffin") seeks to recover from Defendant Motorsport Games Inc. ("MSGM"), the parent company of its former employer, in excess of $325,000 in damages, including preposterous damages such as cost of his wedding ceremony; the income tax difference between Florida and Australia; and other expenses supposedly incurred by Griffin's wife, based on two purported *oral* promises allegedly made by MSGM in connection with Griffin's relocation from Australia to Miami. Despite all evidence showing both the inexistence of Griffin purported oral agreements and the fact that any agreements related to his employment were reflected in written instruments executed between Griffin and his true employer, Motorsport Games Australia Pty Ltd ("MSGM Australia"), MSGM's subsidiary, Griffin boldly argues that he is entitled to summary judgment on his single count of promissory estoppel because there is no dispute of material facts. Of course, the opposite is true: the existence of the oral agreements is disputed. Even if it was not, Griffin failed to prove the elements of its claim, including reliance, and failed to disprove several affirmative defenses that dispose of his case, including the statute of frauds, among others. For these reasons, the Motion should be dismissed.

**BACKGROUND**

MSGM is a publicly traded company and videogames developer, publisher, and e-sports ecosystem provider of official motorsports racing series. Griffin's Statement of Facts ("Pl.'s SOF") ¶1. On March 16, 2021, Griffin was hired by Motorsport Games Australia Pty Ltd ("MSGM Australia"), a subsidiary of MSGM, as Director of Studio. Pl.'s SOF ¶2; *see also* Beckley Decl. ¶3. Griffin and MSGM Australia executed a written employment agreement. Def.' SOF ¶3; DE 42-5 pp. 1-22. The employment agreement requires that any amendment be void, unless in writing and signed by both parties. DE 42-5 at ¶19.3; Beckley Decl. at ¶5. There is no evidence that Dmitry Kozko ("Kozko"), MSGM's former Chief Executive Officer, and Griffin ever had oral agreement

2

regarding the purported terms of Griffin's relocation from Australia to Miami besides the parties agreeing to Griffin's relocation. Beckley's Dec. ¶6 ("I am not aware of any oral agreement between Dmitry Kozko, MSGM's former Chief Executive Officer, and Griffin regarding the alleged terms of Mr. Griffin's relocation to Miami."). Instead, any agreement related to Kozko's employment is reflected by written amendments to his employment agreement with MSGM Australia. *Id.* ¶7. As such, Kozko and MSGM Australia executed an amendment to Griffin's employment agreement on October 7, 2021 promoting Griffin to "Director of Technology and Director of Studio" for MSGM Australia, effective October 4, 2021. DE 42-12 p. 1; Def.' SOF ¶19. All other terms of his employment remained unchanged. DE 42-12 p. 1; *see also* entire agreement clause DE 42-5 ¶19.8. The amendment did not reflect any other terms and did not reference any alleged "relocation agreement." DE 42-12 p. 1; *see also* entire agreement clause DE 42-5 ¶19.9. On May 6, 2022, Griffin and MSGM Australia executed a second amendment to Griffin's employment agreement. DE 42-32 p. 3 of 3. Pursuant to this second amendment, his base annual salary was raised to $240,000 plus an annual bonus of $24,000 paid in two installments. *Id.*; Def.' SOF ¶38; Pl.' SOF ¶18. As a result, his total compensation (i.e. base and bonus) was raised from $240,000 to $264,000. *Id.* All other terms of his employment remained unchanged. DE 42-32 p. 3 of 3. The amendment did not reflect any other terms and did not reference any alleged "relocation agreement." *Id.* Griffin never had any employment relationship with MSGM. Beckley Decl. ¶16. Griffin never entered into any written employment contract with MSGM. Beckley Decl. ¶17. Griffin was never on the payroll of MSGM. Def.' SOF ¶¶7-11. There is no evidence of any oral agreement between Kozko and Griffin regarding Griffin alleged "losses." Beckley Decl. ¶19 ("I am not aware of any oral agreement between Mr. Griffin and MSGM related to Mr. Griffin's purported "losses.").

Griffin moved to Miami on April 5, 2022. Pl's SOF ¶14; I-94 Travel History, DE 42-46 at p. 2 of 3. Shortly thereafter, he applied for a 15-month lease. Pl's SOF ¶21. At the time of its move, Griffin and his wife did not have a visa, even though MSGM had introduced him to an immigration attorney in September 2021. Pl's SOF ¶7; Def.' SOF ¶¶14; 25; 32. Griffin had opted for an L-1 visa because it was a quicker path to a green card, even though he had been told by counsel that would take longer to obtain because he had to wait for his employment anniversary. Def.' SOF ¶21. Then Griffin waited three months to inquire to his immigration counsel about what documents were needed for his visa application. Def.' SOF ¶28. After receiving the information requested, Griffin waited another four months, until end of April 2022, well after the one-year anniversary of his employment, to gather documents. Def.' SOF ¶¶35-36. By December 2022, Griffin, who had become frustrated by his immigration counsel, requested that MSGM pay the retainer for Cammisa Markel, a new counsel immigration of choice, which MSGM did within days. Def.' SOF ¶¶42-43. Ultimately, the visa petition was never filed and there are no records of *any* communications between Griffin and anyone at Cammisa Markel after Griffin had retained the law firm. Def.' SOF ¶45.

On November 2023, MSGM Australia terminated Griffin effective November 3, 2023. DE 42-49 p. 1 of 3. Def.' SOF ¶56; Pl's SOF ¶42. Over the course of his employment, MSGM paid approximately $100,000 in business expenses submitted by Griffin, including $42,000 to cover his Miami lease. Def.' SOF ¶57.

## ARGUMENT

Griffin alleges that MSGM made two oral promises:

The <u>first</u> promise was purportedly made on September 8, 2021. According to Griffin, Kozko promised that in exchange for Griffin's relocation from Australia to Miami, MSGM would

4

(a) promote Griffin as Director of Technology; (b) raise his salary to $240,000 per year with an annual bonus of $70,000; and (c) sponsor his visa.[1] Pl's MSJ; Pl's SOF ¶ p. 1.

The <u>second</u> promise was purportedly made on October 21, 2022, where Kozko allegedly agreed to cover Griffin "losses" suffered in connection with his failed relocation and pay for Griffin's chosen immigration counsel, Cammisa Markel. Pl's MSJ p. 3; Pl's SOF ¶ p. 3.

These promises are not supported by the evidence (I). Even if they were, the first promise is barred by the statute of frauds (II) and was fulfilled by MSGM (III). In addition, Griffin admittedly never detrimentally relied on the second promise (VI). In addition, Griffin lacks standing to claim damages on behalf of his wife (V). Finally, summary judgment is also precluded due to Griffin's failure to mitigate his damages (VI) and neglect in submitting his application (VII). Finally, there are genuine issues of facts as to whether Kozko acted within the scope of his employment.

I. **Disputed Issues of Material Facts Regarding the Alleged Two Oral Promises Preclude Summary Judgment.**

Even though the parties collected close to 35,000 documents in this case, the two purported oral promises underpinning Griffin's promissory claim are supported by *no* objective evidence except for self-serving notes (the "Notes"), which conveniently surfaced in 2023 when Griffin tried to settle his claim, i.e. long after the promises were made. *See* Griffin's Notes, attached to a June 21, 2023 email from Griffin to Potter, DE 45-43 pp. 5-21. Tellingly, there is not one document from MSGM's CEO Dmitry Kozko, the person who supposedly made these promises,

---

[1] In his deposition, Griffin included other terms to the promise, including medical care for Griffin and his wife under MSGM's health care plan; financial guarantees until Griffin would have a credit rating; and coverage of Griffin's accommodation costs until the obtention of his visa. Def's SOF ¶64. However, Griffin seems to have abandoned these terms in the present motion, which further shows that the purported promise, assuming it ever existed, had indefinite and unclear terms. Mot. P. 1; Pl's SOF ¶6.

that corroborates the Notes. To the contrary, Griffin's own Notes show that on January 11th, 2023, Kozko was emphatic that no such promise was ever made, nor could it ever have been made. In short: "**You're asking for stuff we never agreed on**." DE 45-2 p. 19 of 21 (emphasis added).

> We never agreed it would be company's liability to cover these items. Why would you do this?
> So again. I don't agree with your calculation so I think it's unfair to keep referencing your sustaining that loss. That is not the loss that I believe the company cost. So there's the big disagreement we have there. You're more than welcome to stay there if you want because there's no way the company's going to have a half million dollar cost on you. It makes no sense. You'd be the highest paid disclosed officer of the company. You'd be in every disclosure if that was the case. So before we even agreed, I would have had to jump through a whole bunch of legal hoops and double checks
> Look you're not happy with immigration attorney that did probably 15 people for me in my career. I know the guy since I was 11 years old. So he has never failed. He failed for you. Fine. I trust you I believe you. You want to switch to somebody else. I paid for them. You gave me the bill, the moment you gave it, we paid. So you want to deal with somebody else? Deal with somebody else. You need something from us? We'll provide whatever you need from us."
> I get your logic, but I can't agree with it from the company perspective. There's no way I'm going to send a check and tell Jason, accounting and the auditors that this check for Zach is for the delta he would have incurred if he had 21% tax rate in Florida. They will look at me like I'm an idiot. I can't do that[.]
> *Id*.

While Griffin attempts to mischaracterize this communication as Kozko reneging on his promise, the reality is that Kozko himself is telling Griffin that there was never an agreed promise, and that he would not have had authority to make it without disclosing it in MSGM's public financial disclosures and "jump through a whole bunch of legal hoops." *Id.*

6

Also telling is the fact that Kozko never disclosed these purported promises to other MSGM's employees. Beckley Decl. ¶¶6-19 (stating that he not aware that these promises were made).

MSGM disputes that any of these oral promises were ever made. Def.'s SOF.¶¶4-6;29 Because there is a genuine issue of material fact as to whether these promises were made, summary judgment is precluded.

## II. The First Promise Is Barred by the Statute of Frauds.

While MSGM denies making any oral promises to supplement the terms of Griffin's written employment agreement or induce his relocation from Australia to Miami, Griffin alleges an oral promise that accompanied a *permanent* relocation, *permanent* promotion, and *permanent* increase in compensation. Accordingly, by its terms, this so-called oral promise is barred by the statute of frauds because it could not be—and was not intended to be—performed within a year.

Specifically, according to Griffin's deposition testimony, MSGM supposedly made an oral promise based upon his "relocating permanently" from Australia to Miami. Def.'s SOF at ¶ 63 (citing Griffin's Dep. at 68 ("Q Okay. And then you're, you're relocating permanently. A That's correct."); Griffin Dep. 68:23-25 ("Would that be the flight you took with Ms. Holmes to move permanently— A Yes."); Griffin Dep. 74:21-25 ("Q And when you entered into this lease you thought you were going to be in Miami on a permanent— A That's correct. Q -- basis. Okay.")); Def.'s SOF at ¶ 63 MSGM Dep. Tr. 23:6-11 ("Q And the move to Miami . . .was a permanent relocation. It wasn't a temporary thing, was it? . . .10 A My understanding is that it was going to be a permanent relocation.").

Near-contemporaneous emails sent long before the parties' dispute and litigation likewise reflect that MSGM's CEO "asked [Griffin] to come" to Miami, "and he's moving here permanently," albeit without implying the existence of any additional oral promises. Def's SOF at ¶ 63 DE 42-47

(citing Jan. 5, 2022 email from Kozko to Griffin).

The record also reflects that any other so-called oral promises were necessarily linked to permanent promotions and increased compensation terms that were similarly intended to be permanent and not capable of completion within a year. For instance, the parties only dispute whether Griffin's promotion and increased compensation was part of a *quid pro quo* that formed an oral promise. But, the parties do not dispute that Griffin's promotion was permanent, *see* Def.'s SOF at ¶¶18-19 (citing Variation of Employment Agreement Letter ("Your job title has been changed to Director of Technology . . .as of October 4th, 2021.")); as was his increased compensation. *See* Def.'s SOF at ¶ 38 (citing to Employment Amendment Letter amending remuneration without any time restriction). Thus, to the extent that Griffin's promotion and increased compensation were part of an alleged oral promise, they were not intended to expire within a year for purposes of the statute of frauds.

Griffin also expressed his preference for an L-1 visa because it "provided a more straightforward pathway" to a permanent residency, Def.'s SOF at ¶ 21, and stated to Kozko that he would get married in Australia before "coming back early March *for good*." Def.'s SOF at ¶24 (emphasis added).

Also, both Griffin and MSGM understood at the time of the alleged promise, based on advice of immigration counsel, that Griffin could not apply for a visa before March 19, 2022, his first work anniversary, and therefore the process and relocation would take a number of months, if not years, and depended on the fulfillment of a series of contingencies, such as the issuance of a visa, which never transpired. Finally, consistent with a permanent relocation, Griffin entered in a long-term lease of fifteen months, which Kozko personally guaranteed, and testified that because he was moving permanently, he expected to stay for the duration of the lease. Def.'s SOF ¶ 63,

8

Case 1:24-cv-21929-BB   Document 56   Entered on FLSD Docket 04/04/2025   Page 9 of 18

citing to Griffin Dep. 74:21-25 ("Q And when you entered into this lease you thought you were going to be in Miami on a permanent --A That's correct. Q -- basis. Okay. So you thought you would stay for the fifteen months [of the lease]).

Florida Statute of Frauds is designed "to prevent persons from being enmeshed in and harassed by claimed oral promises made in the course of negotiations not ending in contracts reduced to writing." *Al-Babtain v. Banoub*, No. 8:06-CV-1973-T-30TGW, 2009 WL 10670840, at *2 (M.D. Fla. June 26, 2009).

It bars an oral contract even if the parties could have terminated the contract at any time, including within a year. *K3 Enterprises, Inc. v. Sasowski*, No. 20-24441-CIV, 2022 WL 1499894, at *3 (S.D. Fla. Mar. 14, 2022) (finding that a provision allowing for a termination of a contract within a first year did not make the contract "fall outside the ambit of the statute of frauds" because the Eleventh Circuit has long recognize that "permit[ing] a contingency of early termination to remove an oral contract from the statute of frauds would rob the statute of its force."). And because the parties never reduced the oral promise described by Griffin into a writing "signed by the party to be charged therewith," Griffin's claim is not actionable. *K3 Enterprises, Inc. v. Sasowski*, No. 20-24441-CIV, 2022 WL 1499894, at *4 (S.D. Fla. Mar. 14, 2022).

"Florida law is clear that promissory estoppel is not an exception to the statute of frauds." *Doe v. Roe*, 500 F. Supp. 3d 1319, 1326 (S.D. Fla. 2020), *aff'd*, No. 20-14456, 2022 WL 1447378 (11th Cir. May 9, 2022). The Eleventh Circuit has interpreted the Florida's statute of frauds as requiring that "contracts that cannot be performed within a year [] be in writing." *OJ Com., LLC v. Ashley Furniture Indus., Inc.*, 817 F. App'x 686, 690 (11th Cir. 2020); Fla. Stat. § 725.01. The applicability of the statute of frauds necessitates a review of the parties' intent to the agreement. *All*

9

*Brand Importers, Inc. v. Tampa Crown Distribs., Inc.,* 864 F.2d 748, 750 (11th Cir. 1989) ("[Pursuant to] Florida law the intent of the parties with regard to the time of performance (not the possibility of contingent termination) is the key factor in determining whether an oral agreement is enforceable."). The intent of the parties may be inferred from the "surrounding circumstances" or the "object to be accomplished." *Dwight v. Tobin*, 947 F.2d 455, 459 (11th Cir. 1991). In particular, if the contract involves a long-term scheme, the statute of frauds apply. *Id.* (finding that the statute of frauds covered a contract to purchase and develop properties in Florida). The Eleventh Circuit has interpreted these promises in the context of employment and found that the statute of fraud barred promissory estoppel claims similar to Griffin's claim. In *Butterworth v. Lab. Corp. of Am. Holdings*, the plaintiff claimed that her employer had promised her yearly stock options. *Butterworth v. Lab. Corp. of Am. Holdings*, 581 Fed. Appx. 813, 820 (11th Cir. 2014). The Eleventh Circuit found that the promise was a multi-year agreement because the "promise would continue perpetually" and did not apply to only her first year of employment. *Id.* As such the district court could find that that the "[plaintiff]'s intent at the time she negotiated the stock options agreement with [her employer] was to enter into a contract that would be performed over a series of years, and [her employer] had the same intent. *Id.* For this reason, the employer was entitled to summary judgment.

      For these reasons, the statute of Frauds bars Griffin's recovery under the first promise and precludes summary judgment.

### III. Summary Judgment Must Be Denied Because MSGM Fulfilled the Purported First Promise.

      Even if the first oral promise was not covered by the statute of frauds, Griffin admitted that MSGM complied with each term of the promise. Griffin admitted to receiving the $240,000 base compensation. Def.'s SOF at ¶ 66, citing to Griffin Dep. 119:12-17 ("A So the $240,000.00 base

I received."). Regarding the $70,000 bonus, Griffin agreed in writing to reduce it to $48,000 in two payments, one of which would be received earlier on. *Id.*119:17 to 120:5 ("Q Okay. And you agreed to that., A I agreed to the, to that lower amount"); *see also* Def.'s SOF at ¶ 5; DE 42-32 May 6, 2022 Employment Amendment Letter**.** Griffin also obtained the new role as Motorsport Australia's Director of Technology. Both the title and his new duties were "consistent" with what he had "envisioned had the time [MSGM made] the promise." DE 42-1, Griffin Dep. 122:5 to 123:23.

As to the visa sponsorship, MSGM fulfilled his promise to provide immigration services through Katzman and also paid for Griffin's chosen firm, Cammisa Markel. Def.'s SOF at ¶ 15; DE 42-1 Griffin Dep. 38:2-4, Griffin Dep. 97:6-21; Def.'s SOF at ¶ 42, Dec. 30, 2022 Email from Griffin to Kozko; Def.'s SOF at ¶ 43, Jan. 9, 2023 Email from Potter to Griffin. As the Court noted in its Order Granting in Part MSGM's Motion to Dismiss, "[t]he Complaint's conclusory allegation that MSG breached the Relocation Agreement when it failed to relocate Griffin to Miami is not supported by the underlying facts." DE 22 p.10. Specifically, the Court notes "[t]here are no facts to support that MSG did not fulfill its promise to sponsor and pay the attorneys to handle the visa process for Griffin and his wife." *Id.* p. 11. Whether Kastman, the immigration attorney, mishandled the visa petition, is of no relevance because Kastman is not a party to this case and the complaint alleges that "that using Katsman was part of [the promise]." *Id.* "Nor is the Department of State a party to this case, and any failure of the Department of State to issue Griffin a visa does not support a breach by MSG." *Id.*

It is unclear whether Griffin still contends that the first promise included a promise to provide a financial guarantee and medical coverage. See footnote 1 supra p. 10. It appears that Griffin has abandoned these terms. Mot. p. 1; Pl.'s SOF ¶6. To the extent that Griffin has not

11

abandoned these terms, MSGM fulfilled them as well.

With respect to financial guaranty, Griffin testified that he does not recall requesting any guaranty from MSGM that MSGM refused to provide. DE 42-1, Griffin Dep. 124:4-8. In addition, Kozko guaranteed Griffin's lease personally. SOF at ¶ 34.

As to medical care coverage, the alleged promise was to give Griffin and his wife what was standard "for U.S. employees." DE 42-1, Griffin Depo. 120:6 to 121:15. However, MSGM and Griffin never discussed if Griffin and his wife would receive medical coverage before Griffin would become a US employee. DE 42-1, Griffin Dep. 120:19 to 121:7 ("Q Right, after you received the visa. A Well, that wasn't -- that wasn't discussed."). Accordingly, Griffin cannot now allege the promise included medical care coverage before he would become employed by MSGM, when he simultaneously recognizes that it was never discussed with MSGM.

Finally, Griffin unequivocally testified that the alleged September 2021 promise did not cover the reimbursement of any expenses. SOF at ¶ 65 117:7-12 ("Q Okay. And that's September 2021.A Yes. Q So was a promise made regarding a particular expense? A Other than what I've stated there were no particular [expense,] that was their terms.").

Therefore, MSGM fulfilled every aspect of his purported first oral promise and Griffin is *not* entitled to summary judgment on this issue.

IV. **Disputed Issues of Material Facts Regarding the Element of Reliance Preclude Summary Judgment.**

The second oral promise was allegedly made on October 21, 2022. But, by this time, Griffin had already relocated from Australia to Miami and could not move back to Australia because he had committed to a fifteen-month lease in Miami. SOF at ¶ 54, citing Griffin Dep. 166:10 to 167:15 ("Q Okay. And [MSGM] didn't approve the end of the lease. A Yes.").

Indeed in his complaint, Griffin alleges that on January 11, 2023, "Kozko reneged on his

12

prior promise" to pay Griffin's expense. DE 1 ¶36; *see also* SOF at ¶ 76 citing Griffin Dep. 160:8-11 ("Okay. So by January 11th you know [Kozko] doesn't want to reimburse this, the stuff you're asking, right? A Well, he didn't want to"); *see also* Griffin's Notes quoted on page 5 of this Response.

Between mid-October 2022, when Kozko made the second purported promise, to January 2023, when he broke the second alleged promise, Griffin does not recall to have done *any* act in reliance of the so-called promise. Def.'s SOF at ¶77, citing Griffin Dep. 128:20 to 129:23 ("Q So from mid-October 2022 to January 2023 what did you do in reliance of this promise to cover your losses? A What do you mean by that? Q Did you rely on this promise to change anything in your situation? A I don't recall."). Indeed, Griffin was already in Florida and even after the January 11, 2023 conversation stayed for seven more months, until August 16, 2023, in Miami. SOF at ¶ 55. And Griffin's testimony makes sense since the record is devoid of any substantial objective evidence of reliance.

Promissory estoppel applies when "there is (1) a promise which the promisor should reasonably expect to induce action or forbearance, (2) action or forbearance in reliance on the promise, and (3) injustice resulting if the promise is not enforced." *DK Arena, Inc. v. EB Acquisitions I, LLC*, 112 So. 3d 85, 96 (Fla. 2013).

Accordingly, to properly state a claim for promissory estoppel under Florida law, Plaintiff must prove an action or forbearance in reliance on the promise. *Pinnacle Port Cmty. Ass'n, Inc. v. Orenstein*, 872 F.2d 1536, 1543 (11th Cir. 1989) (summary judgment was appropriate when there was no genuine issue of material facts on the issue of absence of detrimental reliance). In addition, Plaintiff's reliance or forbearance must cause "a detrimental change of position." *Eclipse Med., Inc. v. Am. Hydro-Surgical Instruments, Inc.*, 262 F. Supp. 2d 1334, 1351 (S.D. Fla. 1999), *aff'd*

*sub nom. Eclipse Med., Inc. v. Am. Hydro-Surgical*, 235 F.3d 1344 (11th Cir. 2000) (citing *Pinnacle Port Community Ass'n, Inc.,* 872 F.2d at 1543.

In this case, Griffin did not change anything in his situation in reliance of the promise, nor did he suffer a detrimental change of position.[2] For these reasons, summary judgment is precluded on the second promise.

### V.    Summary Judgment Is Precluded Because Griffin Lacks Standing to Bring Claims on Behalf of His Wife.

Griffin requests a variety of damages allegedly incurred from April 2022 to August 2023, which are reflected in an excel spreadsheet produced with his Initial Disclosures. DE 42-52; SOF ¶¶ 59. Among these damages, many relates to his wife, including his wife's loss of income after she resigned from her job in Australia. Griffin's wife, Francesca Holmes, gave her employer her termination notice on November 1, 2021, five months before moving from Australia to Miami and she did not work while in Miami. SOF ¶ 23. Many of the damages are also damages that typically would be paid by both spouses, including the rent, the purchase of furniture, the phones lines both in the US and in Australia. Griffin also requests damages for personal costs such as his wedding costs, even though he admits that Holmes's parents paid for part of it and did not expect to be reimbursed. *Id.* Holmes' parents are also not parties to this action.

Francesca Holmes is not a party to this action and resides in Australia. Therefore, she is outside of any subpoena power. MSGM has not been able to depose her because of her alleged health issues, even though Griffin had agreed to produce her remotely. As a result, MSGM could not compel her testimony.

Damages to be awarded "should be limited to the actual damages sustained by the aggrieved

---

[2] Additionally, Kozko's January 11, 2023 communication makes it clear that from that point on Griffin had knowledge of the "true facts" and could no longer rely of the promise. *See* MSGM Affirmative Defense 9.

14

party." *Hanna v. Martin*, 49 So. 2d 585, 587 (Fla. 1950). Under Florida law, an award of compensatory damages must be based on actual loss, grounded in competent evidence, and proven with some degree of certainty. *See, e.g., In re Xavier's of Beville, Inc.,* 172 B.R. 667, 672 (Bankr. M.D. Fla. 1994). *In re Jet 1 Ctr., Inc.*, 335 B.R. 771, 788 (Bankr. M.D. Fla. 2005). Accordingly, the Court deny Griffin summary judgment as to the damages suffered by Ms. Holmes.

VI. **Summary Judgment Is Precluded Because Griffin Failed to Mitigate His Damages and Assumed the Risk of his Alleged "Losses."**

Griffin failed to mitigate his damages and assumed the risk of his purported "losses" in at least two ways:

First, Griffin agreed to move to Miami before he had obtained a visa. Def.'s SOF ¶¶ 32;45; *see also* DE 42-1, Griffin Dep. 54:3-6 ("Q [I] is that true, that you were trying to go to Miami as soon as you could? A That's correct."). Griffin also testified that he could have refused to move. DE 42-1, Griffin Dep.35:15-20 (Q But later on you agreed to move, right? A That's correct. Q Do you feel you could have said no to the move? . . . A Sure."). Accordingly, Griffin had the ability to wait to obtain a visa before relocating. However, he failed to do so.

Second, Griffin could have returned to Australia as soon as January 2023. By his own admission, on January 11, 2023, Kozko "reneged on his [promise]." Pl.'s. SOF ¶39. During that conversation, Kozko said to Griffin: ("You're more than welcome to stay [in Australia] if you want because there's no way the company's going to have a half million dollar cost on you."). Griffin' Notes, DE 42-43 p. 22 of 23. As such, Griffin had MSGM's blessing to return to Australia and stop incurring these costs. Besides, Griffin's lease had an early termination clause allowing him to breach his lease in exchange of the payment of $9,600 in liquidated damages. *See* Lease early termination clause, DE 42-27 p. 19 of 58. Accordingly, all damages after January 2023 should be capped at $9,600 and there are genuine issues of material facts regarding Griffin's mitigation of damages and

15

assumption of risks.

### VII. Summary Judgment Is Precluded Because Griffin Was Not Diligent with the Handling of his Visa Application.

Griffin was not diligent with the handling of his visa application. Griffin opted for the L-1 visa over the E-3, even though the L-1 took longer to obtain. Def.'s SOF ¶21. Griffin interacted very little with his first immigration counsel. Even though MSGM had introduced Griffin to his counsel in September 2021, Griffin waited three months to inquire about what documents were needed for his visa application. Pl.'s SOF ¶7; Def.'s SOF ¶¶14; 25; 28. After that, Griffin waited another four months, until end of April 2022, to start gathering documents. Def.'s SOF ¶¶35-36. Once he hired his new immigration counsel in January 2023, Griffin never had any substantive communication, never sent counsel documents, and never filed his application. Def.'s SOF ¶35-36; 42-43. There is simply zero record of any communications between Griffin and anyone at Cammisa Markel after MSGM had paid for the retainer. Def.'s SOF ¶45.

Griffin's neglect caused MSGM to cover many unnecessary expenses in connection with Griffin's relocation. Def.' SOF ¶57 (MSGM paid approximately $100,000 in business expenses submitted by Griffin, including $42,000 to cover his Miami lease).

Accordingly, genuine issues of material facts preclude summary judgment regarding Griffin's neglect and whether this neglect constituted unclean hands, waiver or estoppel.

### VIII. Genuine Issues of Material Facts as to Whether Kozko Acted within the Scope of his Employment Preclude Summary Judgment.

Griffin claims that Kozko agreed to make lavish gifts and reimburse extravagant expenses, that typically are not covered by an employer, including a Cadillac Escalade and a $10,000 dollars wedding ceremony. Initial Disclosures, DE 42-52 p.3 of 3 (requesting a "Legal Wedding" as a cost); *see also* Griffin Notes, DE 42-43 p. 7 of 23 (describing an Aug. 18, 2021 where Kozko said

after sending a picture of a Cadillac Escalade: "If you move to Miami, I'll get you one."). An employee acts "within the scope of his employment ... only if the conduct is activated at least in part by a purpose to serve the master." *Morera v Sears Roebuck and Co.*, 652 Fed Appx 799, 801 (11th Cir 2016). Here, it is unclear if the alleged gift of a car or the reimbursement of a wedding ceremony served MSGM. Accordingly, there is a genuine issue of fact as to whether Kozko acted within the scope of his employment.

Now that the parties have had the benefit of discovery, MSGM recognizes that the following affirmative defenses are not supported by the record, and therefore should be withdrawn: Statute of limitations and laches (Eighth Affirmative Defense); Failure to satisfy jurisdictional prerequisites or conditions precedent (Second Affirmative Defense).

For these reasons, this Court should deny Griffin's Motion for Summary Judgment.

Respectfully submitted,

**AXS LAW GROUP, PLLC**
2121 NW 2nd Ave, Suite 201
Miami, Florida 33127
Telephone: (305) 297-1878

By: */s/ Alice Ferot*
Jeffrey W. Gutchess, Esq.
Florida Bar No. 702641
jeff@axslawgroup.com
Alice Ferot, Esq.
alice@axslawgroup.com
Florida Bar No. 101504
eservice@axslawgroup.com

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on April 4, 2025, all parties of record were served via filing of the above Motion on the CM/ECF system.

 */s/ Alice Ferot*
Alice Ferot