UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

**Case No. 24-cv-21929-BLOOM/Elfenbein**

ZACHARY GRIFFIN,

    Plaintiff,

v.

MOTORSPORT GAMES INC.,

    Defendant.

_____

**PLAINTIFF ZACHARY GRIFFIN'S REPLY IN SUPPORT OF
<u>MOTION FOR SUMMARY JUDGMENT</u>**

Eduardo A. Maura, Esq.
Florida Bar No. 91303
eduardo@ayalalawpa.com
Luis F. Quesada Machado, Esq.
Florida Bar No. 1010305
lquesada@ayalalawpa.com
**Ayala Law, P.A.**
2490 Coral Way, Ste 401
Miami, FL 33145
P: (305) 570-2208
F: (305) 503-7206
*Counsel for Plaintiff*

**TABLE OF CONTENTS**

| | | |
|---|---|---|
| I. | MSG's Factual Misrepresentations................................................................................ | 1 |
| | a.  Griffin's oral agreement with MSG....................................................................... | 1 |
| | b.  Griffin's employment with MSG........................................................................... | 2 |
| | c.  Griffin's visa application....................................................................................... | 3 |
| II. | There is no genuine dispute as to whether MSG made a promise to Griffin. ................ | 5 |
| III. | MSG's promise to Griffin is not barred by the statute of frauds. .................................. | 6 |
| IV. | MSG did not fulfill its promise to Griffin. .................................................................... | 8 |
| V. | Griffin relied on MSG's promise to compensate for his expenses. ............................... | 8 |
| VI. | Griffin has standing to recover lost wages for both him and his wife. .......................... | 9 |
| VII. | Griffin did not fail to mitigate or "assume the risk" of his losses. ................................ | 9 |
| VIII. | Griffin was diligent with the handling of his visa application. ..................................... | 10 |
| IX. | Kozko acted within the scope of his employment. ........................................................ | 10 |
| | **CONCLUSION** ........................................................................................................ | 11 |

# **TABLE OF CITATIONS**

### CASES

*Avisena, Inc. v. Santalo*,
  65 So. 3d 14 (Fla. Dist. Ct. App. 2011) ------------------------------------------------------------- 8

*Butterworth v. Lab'y Corp. of Am. Holdings*,
  581 F. App'x 813 (11th Cir. 2014) ---------------------------------------------------------------- 6, 7

*Calicchio v. Oasis Outsourcing Grp. Holdings, L.P.*,
  584 F. Supp. 3d 1215 (S.D. Fla. 2021) -------------------------------------------------------------- 2

*Gomez v. City of Miami*,
  696 F. Supp. 3d 1176 (S.D. Fla. 2023) -------------------------------------------------------------- 2

*Green v. Edmands Co.*,
  639 F.2d 286 (5th Cir. 1981) -----------------------------------------------------------------------10

*Gregory v. Miami-Dade Cnty.*,
  2015 WL 12001281 (S.D. Fla. Aug. 21, 2015) ---------------------------------------------------- 8

*Griffin v. Motorsport Games Inc.*,
  2024 WL 4564330 (S.D. Fla. Oct. 24, 2024) ------------------------------------------------------ 3

*In re Faro Techs. Sec. Litig.*,
  534 F. Supp. 2d 1248 (M.D. Fla. 2007) -----------------------------------------------------------10

*In re Univ. of Miami COVID-19 Tuition & Fee Refund Litig.*,
  649 F. Supp. 3d 1245 (S.D. Fla. 2022) -------------------------------------------------------------- 6

*Lucas v. City of Delray Beach*,
  692 F. Supp. 3d 1271 (S.D. Fla. 2023) -------------------------------------------------------------- 4

*MacIntyre v. Lender Processing Servs. Inc.*,
  2014 WL 12689881 (M.D. Fla. Apr. 29, 2014) --------------------------------------------------- 7

*Marchisio v. Carrington Mortg. Servs., LLC*,
  919 F.3d 1288 (11th Cir. 2019) --------------------------------------------------------------------10

*Poer v. Jefferson Cnty. Comm'n*,
  100 F.4th 1325 (11th Cir. 2024) -------------------------------------------------------------------- 1

*Sierra v. City of Hallandale Beach, Fla.*,
  996 F.3d 1110 (11th Cir. 2021) -------------------------------------------------------------------- 9

*Stryker v. City of Homewood*,
　978 F.3d 769 (11th Cir. 2020) ---------------------------------------------------------------------------- 1

*Taxinet Corp. v. Leon*,
　114 F.4th 1212 (11th Cir. 2024) -------------------------------------------------------------------------- 6

*TransUnion LLC v. Ramirez*,
　594 U.S. 413 (2021) ---------------------------------------------------------------------------------------- 9

S<small>TATUTES</small>

Fla. Stat. § 725.01 ------------------------------------------------------------------------------------------- 6

Plaintiff Zachary Griffin ("Griffin"), through undersigned counsel and pursuant to Fed. R. Civ. P. 56 and S.D. Fla. L.R. 56.1, hereby submits this reply to Defendant Motorsport Games Inc.'s ("MSG") response in opposition to Plaintiff's Motion for Summary Judgment [D.E. 56], and states:

## I.    MSG's Factual Misrepresentations

### a.    Griffin's oral agreement with MSG

MSG alleges "[t]here is no evidence that [Kozko] . . . and Griffin ever had oral agreement regarding the purported terms of Griffin's relocation from Australia to Miami besides the parties agreeing to Griffin's relocation." D.E. 56, pp. 2-3. As support for this contention, MSG cites the declaration of its CFO, Stanley Beckley ("Beckley"), that he is "not aware of any oral agreement between [Kozko] . . . and Griffin regarding the alleged terms of Mr. Griffin's relocation to Miami." *Id.* Of course, Beckley not being aware of the agreement between Kozko and Griffin, even if true, does not disprove the agreement's existence. "[I]nferences that are supported by only speculation or conjecture will not defeat a summary judgment motion." *Poer v. Jefferson Cnty. Comm'n*, 100 F.4th 1325, 1335 (11th Cir. 2024). Griffin's own declaration reveals that on September 8, 2021, he and Kozko orally agreed to the terms of his relocation to MSG's office in Miami (the "Relocation Agreement"). *See* Griffin Decl., D.E. 44-1, ¶ 6. Griffin's unrefuted testimony "cannot be discounted on summary judgment unless it is blatantly contradicted by the record, blatantly inconsistent, or incredible as a matter of law, meaning that it relates to facts that could not have possibly been observed or events that are contrary to the laws of nature." *Stryker v. City of Homewood*, 978 F.3d 769, 776 (11th Cir. 2020). MSG has not presented any evidence contradicting Griffin's testimony.

Furthermore, Beckley's declaration contradicts his earlier deposition testimony:

> **Q.**   Are you familiar with the request to relocate Griffin from Australia to Miami? […]
> **A.**   I'm aware of the discussions and Dmitry and Zach talking about moving to Australia, right. I'm aware of the letter that Motorsport Games provided to

> Zach as part of his visa application […]. It's probably Motorsport Games Inc that signed the letter requesting that he was going to be moving to Miami, right, as part of that application process. So, yeah, I'm aware of discussions about moving to Miami.
>
> \* \* \*
>
> **Q.** So, you have knowledge regarding the sponsorship of Mr. Griffin and his wife, some knowledge of that?
>
> **A.** Yeah, not firsthand knowledge, but I've seen the discussions. I've seen, like, the email chains and some of the documentation.

D.E. 44-2, 12:22-14:1. It is well settled that "[a] party cannot give clear answers to unambiguous questions in a deposition and thereafter raise an issue of material fact in a contradictory affidavit that fails to explain the contradiction." *Gomez v. City of Miami*, 696 F. Supp. 3d 1176, 1198 (S.D. Fla. 2023). The Court may disregard an affidavit which was "submitted solely for the purpose of opposing a motion for summary judgment when that affidavit is directly contradicted by deposition testimony." *Calicchio v. Oasis Outsourcing Grp. Holdings, L.P.*, 584 F. Supp. 3d 1215, 1244 n.9 (S.D. Fla. 2021).

MSG also alleges "[t]here is no evidence of any oral agreement between Kozko and Griffin regarding Griffin alleged losses," citing Beckley's claim that he is "not aware of any oral agreement between Mr. Griffin and MSG[] related to Mr. Griffin's purported losses." D.E. 56, p.3. Once again, even accepting this allegation as true, it does not disprove the existence of the agreement. Griffin's testimony reveals that on October 21, 2022, he and Kozko met to review a spreadsheet that detailed the losses he suffered, and Kozko instructed him to "submit the [losses] as expenses" so that MSG would cover them. *See* D.E. 44-1, ¶¶ 28, 30.

  b. **Griffin's employment with MSG**

MSG argues "any agreement related to Kozko's [*sic*] employment is reflected by written amendments to his employment agreement with MSGM Australia." D.E. 56, p.3. However, this is a red herring since these "amendments" do not relate to MSG's offer to employ Griffin in the U.S.

2

Indeed, the Court already rejected MSG's arguments based on Griffin's Employment Agreement with Motorsport Games Australia Pty Ltd ("MSG-Aus"), finding that "the Employment Agreement should not preclude any claim of promissory estoppel because the Employment Agreement is a contract between Griffin and MSG-Aus—not MSG and Griffin, so it is not applicable here." *Griffin v. Motorsport Games Inc.*, 2024 WL 4564330, at *7 (S.D. Fla. Oct. 24, 2024). MSG also claims that "Griffin never had any employment relationship with MSG[]," citing Beckley's declaration. D.E. 56, p.3. However, this is again contradicted by Beckley's prior deposition testimony:

> **Q.** [W]hy was Mr. Griffin needed here in the US, do you know that?
> **A.** Well, I think he was going to be—or **he was made the director of global technology for the company**.

D.E. 44-2, 23:19-24:1 (emphasis added).

    **c.**    **Griffin's visa application**

Lastly, MSG asserts that when Griffin traveled to Miami on April 5, 2022, he "did not have a visa, even though MSG[] had introduced him to an immigration attorney in September 2021," seemingly arguing that a visa could have been obtained in those seven months. D.E. 56, p.4. MSG also attempts to argue that Griffin was not diligent, claiming he "waited three months to inquire to his immigration counsel about what documents were needed for his visa application." *Id.* Yet, MSG admits that its immigration attorney, Mark Katsman ("Katsman"), "advised [Griffin] that he needed to wait until his first work anniversary with MSGM Australia, i.e. March 16, 2022, to apply for the L-1 [visa]." D's SOMF, D.E. 42, ¶ 26. Hence, Griffin's inquiry in January 2022, two months *before* the supposed earliest date he could obtain a visa, is entirely reasonable. MSG then states "Griffin waited another four months, until [the] end of April 2022, well after the one-year anniversary of his employment, to gather documents." D.E. 56, p.4. However, Griffin did not wait until the end of April 2022 to gather documents. *See* D.E. 42-1, 90:17-21. While MSG tries to blame Griffin for

3

the failure to obtain a visa, MSG leaves a critical fact out of its narrative. Because Griffin sought an employment-based visa, it was MSG's responsibility to submit the visa petition, not Griffin's:

> Q. So, did you ask Dara let's get started with the L-1 visa, like you did with Mr. Katsman?
> A. I don't recall. I believe I had conversations with, with her […].
> Q. Okay. So, it was mostly her fault—go to ask further information to Mr. Katsman before?
> A. What do you mean by that? Sorry.
> Q. You said she was too busy to handle the visa application before.
> A. Yes.
> Q. So, it wasn't because you were busy.
> A. Ultimately it was the company had to file for the, the visa, and the company had to—obviously I could not file the, the petition with, for the company, it was something they needed to do.

*Id.*, 88:13-89:5. MSG also claims that after it paid the retainer for new immigration counsel, "there are no records of any communications between Griffin and anyone at Cammisa Markel." D.E. 56, p.4. As support, MSG cites the following testimony from Griffin: "Nothing. Nothing. They didn't—again, we—we—I—the petition was never filed." D's SOMF, D.E. 42, ¶ 45. First, this statement clearly does not support MSG's allegation that there were no communications between Griffin and Cammisa Markel. "[G]uesses or speculation which raise merely a conjecture or possibility are not sufficient to create even an inference of fact for consideration on summary judgment." *Lucas v. City of Delray Beach*, 692 F. Supp. 3d 1271, 1290 (S.D. Fla. 2023). Second, Griffin's testimony is taken entirely out of context:

> Q. Okay. This—you said part of the promise is a sponsorship for you and your wife.
> A. Yes.
> Q. What was done for your wife?
> A. Why was that, or what was done?
> Q. What was done?
> A. Nothing. Nothing. They didn't—again, we—we—I—the petition was never filed, because, again, I can't file a petition. We—I had all of my documentation, and again, for what I've discussed earlier, earlier, as far as the immigration attorney—they never filed the petition.

4

D.E. 42-1, 124:9-21. Indeed, Griffin testified it was MSG who did not deliver documents required for the visa application to Cammisa Markel:

> Q. So, this application was prepared? Was it prepared?
> A. No.
> Q. It was not prepared by Mr. Katsman?
> A. No.
> Q. Was it prepared by the attorneys at Cassima Markel?
> A. We never got a chance, because at that point, again, Dara had not delivered on the, what she was required to deliver […].

D.E. 42-1, 125:8-17. Thus, MSG's attempt to pass the blame onto Griffin is for the failure to obtain a work visa is completely unfounded.

## II. There is no genuine dispute as to whether MSG made a promise to Griffin.

MSG frames Griffin's claim for promissory estoppel as being based on "two purported oral promises." D.E. 56, p.5. In reality, however, there was a single promise: MSG's promise to relocate Griffin from Australia to the U.S. so that Griffin could work in MSG's Miami office. *See* D.E. 42-1, 105:17-20. Kozko—on behalf of MSG—offered Griffin certain terms as part of their Relocation Agreement, including Griffin's promotion to Director of Technology; a base salary of $240,000.00 per year; an annual bonus of $70,000.00; and visa sponsorship for Griffin and his wife. D.E. 44-1, ¶ 7. While MSG characterizes Kozko's later agreement to reimburse Griffin's losses as a second, separate promise, Kozko's undertaking to reimburse Griffin's losses was done in substitution of the original promise. Therefore, Kozko's actions are closer to a proposed settlement of a potential dispute related to the original promise rather than an entirely separate promise.

In any case, MSG "disputes that any of these oral promises were ever made." D.E. 56, p.7. MSG claims the alleged promise is "supported by no objective evidence." *Id.*, p.5. Not so. Besides the testimony of MSG's CFO/corporate representative quoted above, there is ample documentary evidence of several MSG agents corroborating Kozko's promise to Griffin. *See*, e.g., P's SOMF,

5

D.E. 44, ¶¶ 7-9, 11, 13. Indeed, there appears never to have been a dispute as to the relocation until this case began. Still, MSG argues that Kozko's statements on January 11, 2023, when he reneged on his prior agreement for MSG to pay for Griffin's losses, demonstrate "no such promise was ever made, nor could it ever have been made." D.E. 56, p.6. According to MSG, when Kozko made statements like "We'll provide whatever you need from us," he was, in reality, "telling Griffin that there was never an agreed promise." D.E. 56, p.6. Needless to say, this Court is not "constrained to accept all the nonmovant's factual characterizations and legal arguments." *In re Univ. of Miami COVID-19 Tuition & Fee Refund Litig.*, 649 F. Supp. 3d 1245, 1249 (S.D. Fla. 2022). The Court may note that while Kozko references his "disagreement" with Griffin's calculation of his losses, the promise to relocate Griffin and the terms attached to it were never disclaimed. D.E. 56, p.6.

### III.    MSG's promise to Griffin is not barred by the statute of frauds.

MSG argues that since its promise to Griffin included "a permanent relocation, permanent promotion, and permanent increase in compensation," it is barred by the statute of frauds. D.E. 56, p.7. Florida's statute of frauds provides, in pertinent part, that "[n]o action shall be brought . . . upon any agreement that is not to be performed within the space of 1 year from the making thereof, . . . unless the agreement or promise upon which such action shall be brought, or some note or memorandum thereof shall be in writing and signed by the party to be charged therewith." Fla. Stat. § 725.01. "If full performance is possible within one year from the inception of the contract, the statute of frauds does not apply." *Taxinet Corp. v. Leon*, 114 F.4th 1212, 1231 (11th Cir. 2024).

MSG's promise to relocate Griffin from Australia to the US could have been accomplished within one year. Indeed, MSG has presented no evidence that Griffin's immigration process to the U.S., if handled correctly, could not have been completed within one year. Even if we assume that the promise included Griffin's future employment in the U.S., this could also be completed within

6

a year. The case law cited by MSG in support of their proposition that the possibility of termination within a year does not remove an oral contract from the statute of frauds is limited to cases where a contract is only terminable <u>for cause</u>. *See* D.E. 56, p.9; *cf. Butterworth v. Lab'y Corp. of Am. Holdings*, 581 F. App'x 813, 819 (11th Cir. 2014) (statute of frauds bars oral contract intended by parties to last longer than a year, "even though the contract could have been terminated ***for cause*** within a year") (emphasis added). In contrast, contracts terminable at-will can be completed within a year and are not barred by the statute of frauds. *See Cabanas v. Womack & Bass, P.A.*, 706 So. 2d 68, 69 (Fla. Dist. Ct. App. 1998) ("Contracts for employment which are terminable at will by either party for an indefinite period of duration do not fall under the statute of frauds."); *MacIntyre v. Lender Processing Servs. Inc.*, 2014 WL 12689881, at *4 (M.D. Fla. Apr. 29, 2014) ("[T]he 'at-will' provision removes the Agreement from the purview of the statute of frauds.").

      Here, Griffin's employment with MSG was at-will, so the agreement could be terminated within one-year. Unlike the cases cited by MSG, the agreement between Griffin and MSG lacked any compensation or duties specifically designed beyond a one-year period. While MSG relies on some statements made by Griffin where he described the relocation as permanent, these statements are merely hopeful declarations, based on his belief, not certainty, that he would be employed by MSG for more than a year. This "permanent" relocation was in fact not truly permanent, since it was conditioned on neither Griffin nor MSG terminating the agreement in accordance with the at-will status of Griffin's employment. Similarly, MSG's argument that its promise was "necessarily linked to permanent promotions and increased compensation terms that were . . . intended to be permanent," holds no water. D.E. 56, p.8. Unless Griffin could not be fired or he was guaranteed a salary for life, these terms were not truly "permanent" either. Lastly, Griffin's lease is also non-determinative, as the structure of the lease being beyond 12 months was a decision based on costs,

rather than Griffin's intended length of stay, since the 15-month lease was $1,000 less than the 12-month lease. *See* Griffin Decl., D.E. 52-1, ¶ 15.

## IV.     MSG did not fulfill its promise to Griffin.

MSG also alleges it "complied with each term of the promise." D.E. 56, p.10. Specifically, MSG claims it fulfilled its promise by paying Griffin's base salary, negotiating a reduced bonus, and "provid[ing] immigration services" through Katzman and Cammisa Markel. *Id.*, p.11. While MSG quotes this Court's statement that "[t]here are no facts to support that MSG did not fulfill its promise to sponsor and pay the attorneys to handle the visa process for Griffin and his wife," from the order on MSG's motion to dismiss, the factual record now lends to a different conclusion. *Id.* As shown above, it was MSG's responsibility to submit the visa petition, and MSG did not contact either Katzman or Cammisa Markel to submit the visa petition. *See* D.E. 42-1, 88:13-89:5, 125:8-17. Due to MSG's own actions (or omissions) Griffin was unable to obtain a work visa and relocate to the U.S. It is thus undeniable that MSG did not fulfill the terms of its promise to Griffin.

## V.      Griffin relied on MSG's promise to compensate for his expenses.

MSG alleges that Griffin did not act in reliance of the "second promise," made in October 2022. *See* D.E. 56, p.13. MSG's basis for such an allegation is solely an answer by Griffin where he stated that he "d[id not] recall." *Id.* However, when a witness testifies that they do not recall an event, other evidence may be introduced to establish the event. *Cf. Gregory v. Miami-Dade Cnty.*, 2015 WL 12001281, at *5 (S.D. Fla. Aug. 21, 2015) (holding that "a witness's statement that he 'does not recall' information is insufficient to refute record evidence unequivocally establishing the matter"); *Avisena, Inc. v. Santalo*, 65 So. 3d 14, 19 (Fla. Dist. Ct. App. 2011) ("Such a statement does not create a cognizable contradiction to clear evidence as to what actually occurred.").

8

Griffin's reliance on MSG's promise is otherwise proven in the record, which indicates that at all relevant times, Griffin continued to accumulate losses, in reliance on the promise by Kozko to reimburse these losses. This includes payment of his lease, which could not be broken without costs of $20,000 in two months' rent and a $9,600 fee for breaking the lease. *See* D.E. 52-1, ¶ 16. Due to Kozko's promise to reimburse these losses, Griffin opted not to break the lease and continue paying it until August. Griffin's reliance on MSG's promise is also proven by him bringing up the issue again two months later, when he asked for an update on the compensation. *See id.*, ¶ 31.

VI. **Griffin has standing to recover lost wages for both him and his wife.**

To have standing, Griffin must show "(i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021). "An injury is particularized when it affects the plaintiff in a ***personal and individual way***." *Sierra v. City of Hallandale Beach, Fla.*, 996 F.3d 1110, 1113 (11th Cir. 2021) (emphasis added). MSG alleges that Griffin lacks standing to recover the loss of his wife's wages. *See* D.E. 56, p.14. However, here, the loss of his wife's wages affected Griffin in a "personal and individual way," as Griffin and his wife shared living costs. *See* D.E. 52-1, ¶ 38. Because Griffin is affected in a "personal and individual way" by the loss of his wife's wages, that loss is an injury-in-fact that Griffin has standing to recover. While MSG claims Griffin is requesting damages for "personal costs such as his wedding costs," these were never expected to be reimbursed and were deducted from the spreadsheet shared with Kozko. *See id.*, ¶ 21.

VII. **Griffin did not fail to mitigate or "assume the risk" of his losses.**

MSG argues that Griffin failed to mitigate his damages and assumed the risk of his losses when he "agreed to move to Miami before he had obtained a visa." D.E. 56, p.15. As noted in the

9

Motion for Summary Judgement, MSG has presented no authority that assumption of risk is a valid defense to promissory estoppel. *See* D.E. 45, p.15. Even if it were, acceptance of the risk is not voluntary, if the defendant's conduct leaves plaintiff "no reasonable alternative course of conduct." *Green v. Edmands Co.*, 639 F.2d 286, 290 (5th Cir. 1981). Here, Kozko urged Griffin to travel to Florida as soon as possible. *See* D.E. 42-1, 54:10-11. MSG also claims "Griffin could have returned to Australia as soon as January 2023," since Griffin "had MSGM's blessing to return to Australia and stop incurring these costs." D.E. 56, p.15. However, Griffin testified that they could not just pack up and leave. *See* D.E. 42-1, 165:18-21. Because Griffin could not reasonably avoid his damages, they are not barred under the mitigation of damages doctrine.

## VIII. Griffin was diligent with the handling of his visa application.

MSG argues that "Griffin was not diligent with the handling of his visa application." D.E. 56, p.16. As discussed in section I.c., *supra*, this is simply not true. As shown above, it was MSG who was not diligent with the handling of Griffin's visa petition, since MSG did not contact either Katzman or Cammisa Markel to submit it. *See* D.E. 42-1, 88:13-89:5, 125:8-17.

## IX. Kozko acted within the scope of his employment.

According to MSG, "Griffin claims that Kozko agreed to make lavish gifts and reimburse extravagant expenses, that typically are not covered by an employer, including a Cadillac Escalade and a $10,000 dollars wedding ceremony." D.E. 56, p.16. This is yet another red herring. In reality, Griffin claim for damages includes neither of these things. It is well settled law that "the principal is bound by the acts of his agent." *Marchisio v. Carrington Mortg. Servs., LLC*, 919 F.3d 1288, 1313 (11th Cir. 2019). While the law may distinguish between "the mail room clerk and the CEO with respect to the legal authority to act for or bind the corporation," Kozko was the CEO of MSG. *In re Faro Techs. Sec. Litig.*, 534 F. Supp. 2d 1248, 1262 (M.D. Fla. 2007).

10

## CONCLUSION

WHEREFORE, Plaintiff Zachary Griffin respectfully requests that the Court enter an order granting Plaintiff's Motion for Summary Judgment [D.E. 45]; enter judgment against Defendant Motorsport Games Inc.; and grant all other relief this Court deems just, proper, and equitable.

Dated: April 11, 2025

                                                 Respectfully submitted,

By: */s/Eduardo A. Maura*
       Eduardo A. Maura, Esq.
       Florida Bar No. 91303
       eduardo@ayalalawpa.com
       Luis F. Quesada Machado, Esq.
       Florida Bar No. 1010305
       lquesada@ayalalawpa.com
       **Ayala Law, P.A.**
       2490 Coral Way, Ste 401
       Miami, FL 33145
       P: (305) 570-2208
       F: (305) 503-7206
       *Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I certify that on April 11, 2025, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will serve a copy of it by Notice of Electronic Mail to all counsel of record.

                                                 By: */s/Eduardo A. Maura*
                                                       Eduardo A. Maura, Esq.
                                                       Florida Bar No. 91303