UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 24-cv-21929-BLOOM/Elfenbein

ZACHARY GRIFFIN,

    Plaintiff,

v.

MOTORSPORT GAMES INC.,

    Defendant.
_____/

**DEFENDANT'S RESPONSE TO**
**PLAINTIFF'S ADDITIONAL FACTS**

**AXS LAW GROUP, PLLC**
2121 NW 2nd Ave, Suite 201
Miami, Florida 33127
Telephone: (305) 297-1878

By: */s/ Alice Ferot*
Jeffrey W. Gutchess, Esq.
Florida Bar No. 702641
jeff@axslawgroup.com
Alice Ferot, Esq.
alice@axslawgroup.com
Florida Bar No. 101504
eservice@axslawgroup.com

Defendant Motorsport Games Inc. ("MSGM") files this Response to Plaintiff, Zachary Griffin's ("Griffin") Additional Facts, DE 52.

## RESPONSE TO GRIFFIN'S STATEMENT OF FACTS

78. Disputed. Griffin was hired by MSGM Australia and not MSGM. Acker Decl. ¶¶2-4, attached as **Exhibit A,** Employment Agreement between Griffin and MSGM Australia, DE 42-5 pp. 1; 15; Beckley Decl., DE 55-1 ¶3. Otherwise undisputed.

79. Undisputed as to the language quoted. However, disputed that this is material and relevant or that the quoted language applies to Griffin's termination by MSGM Australia. DE 42-1, Griffin Dep. 177: 18-22 ("Q And here the company is telling you the Company has unfortunately concluded your role is redundant effective as of Friday number, November 3,2023. Is this the day you were terminated? A I was made redundant on that day, yes."); 82:7-9 ("Q And that you were terminated in November2023; is that correct? A I wasn't terminated, I was made redundant.").

80. Undisputed that MSGM's employment agreements are in writing and at will. For purposes of clarification however, MSGM's employment agreements are in the form of letters rather than contracts.

81. Undisputed.

82. Disputed. Even though Griffin and Kozko may have had an ongoing conversation about Griffin's relocation to Miami, there is no evidence of the purported oral agreements between Kozko and Griffin, besides Griffin's self-serving testimony. MSGM Dep.13:2-16 DE 42-1. To the contrary, all agreements with respect to Griffin's employment relationship are reflected in the written amendments to his employment contract with MSGM Australia. Beckley Decl. DE 55-1 ¶¶6; 19; First Amendment to Employment Agreement DE 42-12 p. 1; Second Amendment to Employment Agreement, DE 42-32 p. 3; DE 42-5. And MSGM never made an offer of employment to Griffin. Acker Decl. ¶¶2-4.

83. Disputed. There was never an oral "Relocation Agreement" between MSGM and Griffin. Acker Decl. ¶2; Beckley Decl., DE 55-1 ¶6. All agreements with respect to Griffin's employment are reflected in his employment contract with MSGM Australia and its written amendments. Beckley Decl., ¶¶6;19; Employment Agreement DE 42-5 p. 1; 14 of 22, which contained a clause ¶19.3 stating that any "amendement . . .to this [employment] Agreement is void unless in writing and signed by both parties"); Employment Agreement Amendments DE 42-12 p. 1 and DE 42-32 p. 3; Acker Decl. ¶¶2-4.

84. Disputed. There was never an oral "Relocation Agreement." *See* paragraph 83 above and incorporated by reference here. MSGM Australia, not MSGM, promoted Griffin to Director of Technology. DE 42-12 p. 1, Employment Agreement Amendment, executed by Griffin and MSGM Australia ("Your job title has been changed to Director of Technology and Director of Studio, Motorsport Games Australia as of October 4th, 2021."). MSGM Australia raised Griffin's compensation. DE 42-32 p. 3, Employment Agreement Amendment. Undisputed that MSGM agreed to sponsor Griffin's visa application by providing the services of immigration counsel. DE 42-1, Griffin Dep. 106-18 to 108-13 ("Q: What . . . was the exact promise regarding the visa? A That they would pay for the sponsorship of, or get, pay for and give sponsorship for my wife and myself. . . Q So when you said pay for it, meaning the fee to apply or the immigration attorney's fees? . . . A It was the -- the -- the costs associated with, with the sponsorship. So it was a pretty simple promise.").

85. Undisputed.

86. Disputed. Dara Malavolta did not refer to Griffin as a Director of MSGM but only as "on[sic] of our Directors." Feb. 7, 2022 email, DE 55-2 p. 1. Otherwise undisputed.

87. Undisputed as quoted. However, Kozko misspoke as Griffin became *MSGM Australia's* Director of Technology. *See* Employment Agreement Amendment executed by Griffin a few days before the email, DE 42-12 p. 1.

88. Disputed. DE 42-32 p. 2 of 3 (not referencing any paycheck).

89. Undisputed that Malavolta sent Griffin an Amendment to his Employment Agreement with MSGM Australia, otherwise disputed. DE 42-32 p. 3. The date of the agreement, May 6, 2022, reflected the date of the agreement between MSGM Australia and Griffin regarding Griffin's increased remuneration: i.e. a $240,000 base salary with a $48,000 bonus. *Id.*

90. Undisputed. To clarify, Griffin only received paystubs from MSGM Australia, who was Griffin's employer. DE 42-6, Compilation of all Paystubs from MSGM Australia; DE 42-1, Griffin Dep. 28:9-11 ("Q Did you ever receive any paystubs from Motorsport US? A No.").

91. Disputed. Griffin testified that he entered in the fifteen-month lease because he intended to stay in Miami permanently and therefore would stay for the entire duration of the lease. DE 42-1, Griffin Dep. 74:21-25 ("Q And when you entered into this lease you thought you were going to be in Miami on a permanent— A That's correct. Q -- basis. Okay. So you thought you would stay for the fifteen months. A That's correct.").

92. Disputed. The lease speaks for itself. Lease, DE 42-27 p. 19 of 58. The lease requires $9,600 as liquidated damages plus payment of rent for the month during which the landlord retake possession. As such Griffin can surrender possession or abandon the unit on the last day of the month and only pay $9,600.

93. Undisputed.

94. Disputed. Katsman offered the E-3 visa option, which could be filed immediately, and Griffin rejected it and opted for the L-1 instead. Email from Kastman to Griffin, DE 42-13 p. 2 of 3 ("The E-3 visa can be filed at any time since itis not related to the Australian or any other company."); *id.* at p. 1 of 3, Email from Griffin to Kastman ("My preference is to proceed with the L-1 visa as it as it is also *my* understanding that it provides a quicker, more straightforward pathway to a Green Card."); DE 42-1, Griffin Dep. 45:16-19 ("Q So you're giving Mr. Katsman your preference to the L-1. A Yes, based on the information that I was provided.").

95. Disputed. *See* paragraph 94 above incorporated here by reference.

96. Disputed. Communications between Griffin and Katsman show a pattern of neglect and lack of diligence by Griffin in preparing his visa application. Indeed, Katsman had sent all information about the visa by September 21, 2021, DE 42-13 p. 1-2, and the list of documents necessary to file the application by January 6, 2022, Griffin SOF ¶19; DE 42-20 p. 1. Griffin did not gather any document until April 27, 22, when he asked Kastman to "advise what you require to start this." DE 42-30 p. 2, to which Kastman responded: "A few months back, I sent you the list of docs I would need. I am attaching it again." *Id.* at p.1. Therefore, it was Griffin who did not follow up with Katsman after the call and neglected his visa application well beyond the March 16, 2022 anniversary date of his employment. Once Griffin hired his chosen immigration firm, Cammisa Markel, MSGM immediately paid the deposit and there is no record of any communication between Cammisa Markel and Griffin after that payment occurred. DE 42-35 p. 1, Email from Potter to Griffin confirming payment of deposit for Cammisa Markel; DE 42-1, Griffin Dep. 99:19-22 ("Q So the, the selection of the firm Cammisa Markel was your choice. A Yes, that's correct.; *Id.* at 102:2-5 ("Q Okay. Did you give your counsel, your new counsel now Cammisa Markel, all the documentation needed for your visa application? A No, we didn't get to that point."); *id.* at 103:24 104:1 ("Q So did you ever submit the visa application for the E-3? A No"). Dara Acker, in charge of HR for MSGM, requested that Griffin introduced her to his new counsel but *Griffin never followed through.* Acker Decl. ¶¶5-6. After MSGM paid for Griffin's

4

chosen immigration counsel, he never asked Ms. Acker for any document in support of his visa application. *Id.* ¶7.

97. Disputed that Griffin had any "losses." He was the highest paid individual at MSGM Australia with an initial base salary of $170,000 and $70,000 yearly bonus for the first three years (i.e. $240,000 yearly compensation in total). DE 42-5 p. 19 of 22, Employment Agreement; DE 42-1, Griffin Tr. 24:13-15 ("Q Was it the highest compensation at Motorsport Australia? A Yes, it was."). In May 2025, a month after Griffin's attempted relocation to Miami, MSGM Australia increased his compensation to $240,000 annual base compensation plus a $48,000 bonus in two installments (i.e. $288,000 yearly compensation in total). DE 42-31 p. 3 of 3, Amendment to Employment Agreement DE 42-1, Griffin Tr. 96:4-6 ("Q So was it the highest compensation for Motorsport Games Australia at the time? A Yes, it was."). Disputed that MSGM failed to relocate Griffin to Miami, instead Griffin neglected his visa application. See paragraph 96 above. Undisputed that Griffin shared a spreadsheet with Kozko. Disputed that the cost of Griffin's damages were deducted from Griffin's damages calculation. Initial Disclosures, DE 42-52 p. 4 of 4 (referencing $10,000 in wedding costs).

98. Disputed. Katsman offered the E-3 visa option, which could be filed immediately, and Griffin rejected it and opted for the L-1 instead. *See* SOF ¶24 above and incorporated by reference here.

99. Disputed. Kozko only agreed to pay Cammisa Markel's retainer and instructed Griffin to "submit" his expenses so they could be reviewed. DE 42-43 p. 17 of 23; Griffin's own notes of communications with Kozko, at row 72 of the table ("Kozko" Submit these as expenses"); *see also id.* at p. 21 of 23, row 94 ("You're asking for stuff we never agreed on. We never agreed it would be company's liability to cover these items. Why would you do this?").

100. Undisputed but also not material and irrelevant.
101. Undisputed but also not material and irrelevant.
102. Undisputed but also not material and irrelevant.
103. Undisputed but also not material and irrelevant.
104. Undisputed but also not material and irrelevant.
105. Undisputed but also not material and irrelevant.
106. Undisputed but also not material and irrelevant.
107. Disputed that Griffin ever had any "losses." See paragraph 97 above and

incorporated by reference here. Disputed that Kozko agreed to compensate any loss. DE 42-43 p. 21 of 23, row 94; Griffin own notes of communications with Kozko, ("You're asking for stuff we never agreed on. We never agreed it would be company's liability to cover these items. Why would you do this?").

108. Disputed that Griffin ever had any "losses" or that Kozko agreed to compensate them. See paragraphs 97 and 99 above and incorporated by reference here.

109. Disputed that Griffin had any "losses" that the parties attempted to settle. See paragraphs 97 and 99 above and incorporated by reference here. Undisputed that Kozko sent an offer regarding Griffin's compensation and not for alleged losses, however Griffin rejected the offer and Griffin and Kozko never reached any agreement as to a compensation or bonus increase. DE 42-38 p. 2 of 3, Email from Kozko proposing bonuses; *id.* at p. 1 of 3, Email from Griffin rejecting the offer ("I've provided an alternative to your proposed incentive structure."). Additionally, Kozko and Griffin never agreed on the terms of the compensation. DE 42-39 p. 1, Email from Griffin to Kozko negotiating; DE 42-40 Email from Griffin to Kozko frustrated with the negotiation and requesting that "someone else [than Kozko] . . . step in to help resolve [these negotiations]."

110. Undisputed. DE 42-41 p.6 of 7. However, Acker's proposal was part on the ongoing negotiations and Kozko January 14, 2023's proposal had been rejected by Griffin. *Id*. pp. 2-6, Email chain showing ongoing negotiations; DE 42-38 p. 1 of 3, Email from Griffin rejecting Kozko's January 14, 2023 offer ("I've provided an alternative to your proposed incentive structure."). Ultimately, the negotiations stalled. See Griffin SOF ¶42, DE 44.

111. Undisputed that negotiations stalled. Disputed that only Griffin attempted to negotiate in good faith. DE 42-38 p. 2 of 3, Email from Kozko proposing bonuses; *id.* at p. 1 of 3, Email from Griffin rejecting the offer ("I've provided an alternative to your proposed incentive structure."). Additionally, Kozko and Griffin never agreed on the terms of the compensation. DE 42-39 p. 1, Email from Griffin to Kozko negotiating; DE 42-40 Email from Griffin to Kozko frustrated with the negotiation and requesting that "someone else [than Kozko] . . . step in to help resolve [these negotiations]."

112. Disputed. On November 2, 2023, MSGM Australia notified Griffin that he was terminated effective November 3, 2023 because his role had become redundant. **DE 42-1**, Griffin Tr. 170:4-19; **DE 42-45,** November 2, 2023 Email from Acker to Griffin pp. 1-3**.**

113. Undisputed that Griffin still holds a position with respect to the entity MSGM Australia. Griffin Dep. 178:1 to 179:15. However, Griffin is no longer an employee of MSGM Australia and did not cooperate with MSGM to shut down the entity. Griffin Dep. 180:22 to 179:15("Q [H]ere the letters states that it refers to your employment with Motorsport Games Australia, right? So that's a termination of your employment with Motorsport, with Motorsport Australia, effective November 3, 2023. A Mm-hmm. Yes, that's correct. ").; *Id* at 181:17-23 ("Q So if Motorsport Australia, or Motorsport US asked you to help them shutting it down, remove yourself from their bank accounts, you would assist them with that? A If, and only if there were certain conditions to that to protect my own, I guess credit rating.").

114. Disputed. Griffin's wife had no incomeand could not share Griffin's costs of living. DE 42-1, Griffin Tr. 54:21-56-3 (discussing Ms. Holmes giving her employer her notice around November 1, 2021); DE 42-16, Nov. 1, 2021 Teams message from Griffin to Kozko.

Respectfully submitted,

**AXS LAW GROUP, PLLC**
2121 NW 2nd Ave, Suite 201
Miami, Florida 33127
Telephone: (305) 297-1878

By: */s/ Alice Ferot*
-Jeffrey W. Gutchess, Esq.
Florida Bar No. 702641
jeff@axslawgroup.com
Alice Ferot, Esq.
alice@axslawgroup.com
Florida Bar No. 101504
eservice@axslawgroup.com

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on April 11, 2025, all parties of record were served via the CM/ECF system.

                                              */s/ Alice Ferot*
                                              Alice Ferot